JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Lisa G. Laukitis

 - and -

77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Brad B. Erens
Robert E. Krebs
David A. Hall

Proposed Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                             :

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| Penton Business Media Holdings, Inc., *et al.*,[1] | : Case No. ___-_____ (___) |
| | : |
| Debtors | : (Jointly Administered) |
| | : |

-------------------------------------------------------------x

**AFFIDAVIT OF JEAN B. CLIFTON IN SUPPORT OF**
**THE CHAPTER 11 PETITIONS AND REQUESTS FOR FIRST DAY**
**RELIEF FILED PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

STATE OF NEW YORK       )
                               )   ss:
COUNTY OF NEW YORK   )

      Jean B. Clifton, being duly sworn, deposes and says:

---

[1] The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Penton Business Media Holdings, Inc. (9837); Penton Media, Inc. (5386); Penton Business Media, Inc. (1277); Duke Communications International, Inc. (7904); Duke Investments, Inc. (2160); DVGM & Associates (5363); Internet World Media, Inc. (5519); Penton Business Media Internet, Inc. (8290); and Penton Business Media Publications, Inc. (8292).

1.     I am the Chief Financial Officer of Penton Business Media Holdings, Inc., a debtor in the above-captioned chapter 11 case ("Holdings") and of each of its debtor-affiliates (collectively with Holdings, the "Debtors").  In this capacity, I am familiar with the day-to-day operations, business and financial affairs of the Debtors.

2.     The Debtors commenced these chapter 11 cases in order to implement a consensual financial restructuring agreement between the Debtors' first and second lien lenders and the equity sponsors of the Debtors' proposed "pre-packaged" plan of reorganization (the "Plan").  Prior to commencing these chapter 11 cases, the Debtors solicited and obtained the requisite votes to confirm the Plan.  The Plan provides the financial stability to allow the Debtors to continue their efforts to maintain and enhance their position as a leading business-to-business media company in the United States.  Notably, neither the Plan, nor any of the motions or applications filed on the Petition Date, seeks to alter any of the Debtors' obligations or relationships with the Debtors' other creditors or stakeholders.  The sole purpose of the Plan and the Debtors' chapter 11 cases, therefore, is to implement the terms of the agreement among the Debtors, the Debtors' first and second lien lenders and the Plan sponsors.  The Debtors are seeking to confirm the Plan and emerge from these chapter 11 within 30 days after the Petition Date.  Nonetheless, it is essential that the Debtors assure their other creditors and stakeholders that the Debtors have the authority to continue to honor their obligations to these key constituents during the short duration of these Chapter 11 cases.

3.     I submit this Affidavit, pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), in support of (a) the Debtors' petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the date hereof (the "Petition Date") and (b) the "first-day" relief, in the form of various motions and applications, that the Debtors have

requested of the Court (collectively, the "First-Day Pleadings"), and to assist the Court and other interested parties in understanding the circumstances that compelled the commencement of these chapter 11 cases.

4.      The First Day Pleadings are intended to enable the Debtors to operate effectively and avoid potential adverse consequences that might otherwise result from the commencement of these chapter 11 cases.  The First Day Pleadings seek relief aimed at maintaining customer loyalty, vendor and supplier confidence and employee morale.  Gaining and retaining the support of these key constituencies is critical to the Debtors' chapter 11 strategy and their overall strategy to remain one of the leading business-to-business media and information companies in the United States.  I have reviewed the First Day Pleadings, and it is my belief that the relief sought therein is essential to ensure the uninterrupted and continued operation of the Debtors' businesses and to ensure the success of the Debtors' chapter 11 strategy.  Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant First Day Pleading.

5.      Except as otherwise indicated, all facts set forth in this Affidavit are based upon personal knowledge, my review of relevant documents or my opinion, based upon experience, knowledge and information concerning the operations of the Debtors.  If called upon to testify, I would be able to do so competently with respect to the facts set forth in this Affidavit.  I am authorized to submit this Affidavit on behalf of the Debtors.

6.      Part I of this Affidavit provides an overview of the Debtors' businesses. Part II provides a description of the Debtors' organizational structure, capital structure and stockholder equity.  Part III provides a discussion of the events that compelled the commencement of these chapter 11 cases.  Part IV affirms and incorporates the facts that support

the relief requested in the First Day Pleadings.  Part V contains information required by Local

Bankruptcy Rule 1007-2.

## Part I

### The Debtors' Businesses

7.     The Debtors are one of the leading business-to-business media companies

in the United States, delivering proprietary business information to owners, operators, managers

and professionals in a number of industries.  The current company was formed in February 2007

out of the acquisition by Prism Business Media Holdings, Inc. of Penton Media, Inc., which

created one of the largest business-to-business media companies in the United States.  The

Debtors provide a diverse platform of media products across 15 industry clusters, including:

publishing 113 trade magazines and associated web brands, hosting approximately 35 trade

shows, conferences and roadshows and providing electronic media offerings, including websites,

electronic newsletters, web conferences and other web-based media products.  The Debtors offer

25 data products and applications. The Debtors' products reach more than 6 million business

professionals.

8.     On November 1, 2006, Prism Business Media Holdings, Inc. entered into

a definitive agreement to acquire Penton Media, Inc. for an aggregate consideration payable to

Holdings' stockholders of $194.2 million.  The total value of the transaction, including the

assumption or repayment of debt at closing and transaction fees, was approximately $530 million

(the "Acquisition").  The Acquisition closed in February, 2007.  The combination of the Prism

and Penton companies created one of the largest business-to-business media companies in the

United States.  Following the Acquisition, Prism Business Media Holdings, Inc. and Prism

Business Media, Inc. became Penton Business Media Holdings, Inc. and Penton Business Media,

Inc., respectively. Penton Business Media, Inc. and Penton Media, Inc. are the Debtors' principal operating entities.

9. In support of the Acquisition, Penton Media, Inc. and Prism Business Media, Inc., as borrowers, and Prism Business Media Holdings, Inc. and certain subsidiary loan parties as guarantors, obtained the following secured financing, which is described in greater detail below:

a. an $80 million first lien revolving credit facility;

b. a $620 million first lien term loan; and

c. a $266 million second lien term loan.

10. Following the Acquisition, the Debtors had a total capitalization in excess of $1.1 billion. Since the time of the Acquisition, the revolving credit facility has been used to fund working capital and for general corporate purposes. The first and second lien term loans were used to fund the Acquisition, pay fees and expenses and refinance existing company debt.

11. The result of the Acquisition was to significantly expand the post-Acquisition company's diversity and presence among industry clusters, build greater presence in certain strategic markets and provide greater exposure to certain higher-growth industry clusters, including natural products. The Acquisition also resulted in operating efficiencies and significant cost savings in the way of headcount reductions, vendor savings due to enhanced purchase volumes and eliminating duplicative operating facilities.

12.     The Debtors' primary industry clusters include:

| | |
|---|---|
| Agriculture | Information Technology |
| Automotive, Trucking and Aviation | Lifestyle |
| Commercial Real Estate and Finance | Manufacturing & Supply Chain |
| Design Engineering | Marketing & Meetings |
| Digital Media and Communication | Mechanical Systems |
| Electrical Systems, Energy & Construction | Public Infrastructure |
| Electronics | Wealth Management |
| Food and Food Service | |

13.     The Debtors deliver content through an integrated product offering including publications, exhibitions and digital media.

### ***Publications***

14.     The Debtors produce 113 specialized business magazines that are published periodically throughout the year, primarily in the United States, with a monthly cumulative circulation of more than five million.

15.     The Debtors' publications are routinely recognized for the quality of their editorial content, amassing more than 260 publication awards since 2000.  The Debtors' #1 or #2 ranked titles represent approximately 75% of their service markets.  The Debtors' publications generate revenues primarily from the sale of advertising space and are chiefly distributed through opt-in qualified subscribers free of charge in the Debtors' target industries.  The Debtors also publish print and online industry directories and buyers' guides, which are respected sources of purchasing information for professionals in the markets the Debtors serve.  The publishing division leverages its powerful print brands to develop content for and drive customers to the Debtors' exhibitions and digital businesses.

CHI-1726262

*__Digital: Websites, Electronic Newsletters, Web Conferences__*

16.     Online media has continued to expand rapidly as marketers shift spending into digital marketing strategies that compliment their print marketing strategies or integrate into broad, multi-media marketing programs.  In step with these trends, the Debtors' digital product line is the fastest growing part of the Debtors' business, and will continue to be developed as the Debtors look to the future.  The Debtors' digital portfolio includes websites, branded newsletters, Web conferences, topic-specific micro sites, digital magazines and electronic books.

17.     Websites are the most significant source of revenue for the Debtors in the digital segment.  As the Debtors continue expanding their digital product line, they continue aggressively building vertical search capabilities into appropriate websites and developing dedicated vertical search websites.  Vertical search capabilities allow users to execute productive searches for professional information that is specific to their targeted vertical markets, eliminating wasted time in sifting through extensive, unrelated search results that are produced by general search engine websites.

18.     In addition to websites, in the fiscal year 2009, the Debtors produced branded newsletters, conducted numerous conferences and published digital magazines, microsites and electronic books.  These products are designed to provide timely and focused information to highly targeted professionals, and typically are sponsored by advertisers interested in delivering marketing information to these professionals because of their product/service purchasing or specifying responsibilities.  Revenue in the digital business segment is derived primarily from web and email advertising, but also includes webcasts, email list rental and sales. The Debtors also have a growing digital custom-publishing business producing e-letters, websites, web events and on-line education for sponsoring companies.

CHI-1726262

19.     The Debtors recognize the future of the business-to-business media industry, like many others, is dependent on maximizing technological advances.  To that end, the Debtors intend to grow their digital products over the next five years, to help offset expected declines in print.

### *Exhibitions: Tradeshows, Conferences and Roadshows*

20.     The Debtors produce approximately 35 exhibitions, including tradeshows, conferences and roadshows, which attract professionals and managers in the industries that the Debtors serve who have purchasing and specifying responsibility.  The Debtors' tradeshows include extensive conference programs, which provide a forum for the exchange and dissemination of information relevant to attendees' professional roles and responsibilities.

21.     Tradeshows and conferences allow exhibiting and sponsoring customers to prospect and sell directly to qualified buyers, offer educational opportunities to attendees, and foster networking, which assists in building desired relationships between buyers and sellers in the Debtors' targeted markets.

22.     The Debtors derive revenue from exhibitions primarily through fees paid for booth space, attendee fees and exhibitor sponsorships of promotional media, with sponsorship fees representing the greatest source of revenue in this segment.

### *Custom Media/Data Products*

23.     The Debtors' custom media business provides customers with integrated media and marketing solutions designed to address customers' specific business needs and opportunities.  Specific products include sponsored magazines, newsletters, websites, eBooks, internal communications programs for corporations, catalogs, education and training materials and custom communications.  The Debtors also offer a variety of custom data products that their customers use in their direct marketing and promotional efforts, including article reprints and

electronic re-use rights of editorial content, industry directories and rental use of magazine subscriber and event attendee databases.

24.     As of the Petition Date, the Debtors employ approximately 1,204 full-time and part-time hourly and salaried employees (collectively, the "Employees").  The Employees perform a variety of critical functions for the Debtors' businesses, including editorial and content creation, accounting, administration, planning, finance, human resources, sales and marketing, product development, production and operations, management and distribution.  The Employees' skills and specialized knowledge of the Debtors' operations and infrastructure are essential to the Debtors' continuing operations and to their ability to reorganize.

25.     In addition to their regular workforce, in any given month the Debtors employ approximately 275 independent contractors to perform essential employee functions on a cost-effective basis (collectively, the "Independent Contractors").  The Independent Contractors fall generally into two categories:  (a) Independent Contractors that submit articles for publication, photography and art in one or more of the Debtors' media products (collectively, the "Freelance Staff"); and (b) Independent Contractors that serve as sales representatives for the Debtors' media products (collectively, the "Sales Representatives").  The Employees and Independent Contractors' knowledge and skills are essential to maintaining the Debtors' ability to provide a diverse platform of quality media products across the 15 industry clusters the Debtors serve.

## Part II

## Organizational Structure, Capital Structure and Stockholder Equity

### *Organizational Structure*

26.     Holdings owns 100% of the stock of Debtors Penton Business Media, Inc. and Penton Media, Inc.  Debtors Penton Business Media, Inc. and Penton Media, Inc.

collectively own directly or indirectly 100% of the stock in each of the remaining Debtor subsidiaries. Holding's stock is 99.96% owned by non-debtor Penton Business Media Holdings, LLC ("Penton LLC"), a Delaware limited liability company.[2] Penton LLC's largest shareholders are various funds held by MidOcean Partners and Wasserstein & Co., L.P. Lexington Partners, Blackrock Kelso Capital Corporation and Apollo Investment Corporation own the remaining minority shares in Penton LLC.

### *Capital Structure*

    a.    First Lien Indebtedness

    27.    In connection with the Acquisition, the Debtors entered into that certain First Lien Credit Agreement (the "First Lien Credit Agreement") dated as of February 1, 2007 among Penton Media, Inc. and Prism Business Media Inc. (as borrowers, the "Borrowers"), Prism Business Media Holdings Inc. and certain related subsidiaries (as guarantors), General Electric Capital Corporation (as administrative agent) and the other first lien lenders party thereto (the "First Lien Lenders"). The First Lien Credit Agreement, all amendments thereto and all security agreements and instruments related thereto are collectively referred to herein as the "First Lien Loan Documents".

    28.    The loans under the First Lien Credit Agreement consist of:

    a.    an $80 million first lien revolving credit facility (the "First Lien Revolver"); and

    b.    a $620 million first lien term loan (the "First Lien Term Loan" and together with the First Lien Revolver, collectively, the "First Lien Loans").

    29.    As of the Petition Date, the principal amount outstanding in respect of the First Lien Loans was approximately $668 million, exclusive of accrued and unpaid interest, fees

---

[2]     Two individuals, Margaret Pederson and Don Soetart own 0.03% and 0.01% of Holdings, respectively.

and expenses of the First Lien Lenders (the amount of the First Lien Revolver is approximately $65 million). Holdings and its other Debtor subsidiaries (other than the Borrowers) executed guaranties of the First Lien Obligations. The obligations owing under the First Lien Credit Agreement and related guaranties are secured by first priority liens and security interests in substantially all of the tangible and intangible assets of the Debtors, with the exception of certain cash and copyrights, pursuant to a First Lien Collateral Agreement dated February 1, 2007. Absent the Amended and Restated Credit Agreement (as defined in the Disclosure Statement), the First Lien Loans are due to mature in February 2013.

30.     In August, 2009, a potential non-compliance event occurred under the First Lien Credit Agreement with respect to the total debt-to-EBITDA and first lien debt-to-EBITDA leverage covenant for the second quarter ending June 30, 2009. The potential non-compliance event was cured on August 21, 2009 by the Debtors' equity sponsors with a capital infusion of $13.7 million, which was funded from a $22.5 million dividend paid in June, 2009. The Debtors would have been in non-compliance with the same leverage ratio covenant under the First Lien Credit Agreement for the third quarter ending September 30, 2009, except that on November 25, 2009, the Debtors and the Required Lenders (as defined in the First Lien Credit Agreement) entered into an agreement (the "Consent and Amendment Agreement") pursuant to which the First Lien Lenders waived such potential non-compliance event under the First Lien Credit Agreement subject to numerous conditions.

31.     The Consent and Amendment Agreement (as supplemented) added numerous conditions, and amendments to the First Lien Credit Agreement, including a requirement that the Debtors either commence prepackaged bankruptcy proceedings, or consummate an out of court restructuring of their balance sheets on the terms contemplated in the Plan, by February 10, 2010. The Consent and Amendment Agreement also added to the First

Lien Credit Agreement additional restrictions on the Debtors' ability to incur indebtedness, grant liens on their assets, enter into sale leaseback transactions and investments, carry out sales of assets and issue dividends. As part of the Lock-Up Agreement attached as Exhibit VI to the Debtors' Plan of Reorganization Filed Concurrently herewith (the "Lock-Up Agreement"), the First Lien Lenders also agreed that the non-compliance by the Debtors of the Financial Performance Covenants (as defined in the First Lien Credit Agreement) for the reporting periods ending December 31, 2009 and March 31, 2010 would not be a termination event under the Lock-Up Agreement.

32.     The First Lien Credit Agreement will be completely amended and restated as provided in the Amended and Restated Credit Agreement described in Section VI.B of the Debtors' First Amended Disclosure Statement Dated February 4, 2010 for the First Amended Joint Prepackaged Plan of Reorganization of Penton Business Media Holdings, Inc. and its Debtor Subsidiaries (the "Disclosure Statement").

b.     ***Second Lien Indebtedness***

33.     In addition to the First Lien Loans, at the time of the Acquisition, the Debtors incurred $266 million in second lien indebtedness under the Second Lien Credit Agreement (the "Second Lien Credit Agreement") dated as of February 1, 2007 among Penton Media, Inc. and Prism Business Media Inc. (as borrowers), Prism Business Media Holdings Inc. and certain related Debtor subsidiaries (as guarantors), General Electric Capital Corporation (as administrative agent) and the second lien lenders party thereto (the "Second Lien Lenders" and, together with the First Lien Lenders, the "Prepetition Secured Creditors"). The Second Lien Credit Agreement, all amendments thereto and all security agreements and instruments related thereto are collectively referred to herein as the "Second Lien Loan Documents". Wells Fargo Bank, N.A. became successor agent to General Electric Capital Corporation in November, 2009.

CHI-1726262

34.     The obligations owing under the Second Lien Documents, inclusive of all accrued but unpaid interest and fees, was approximately $270 million.  The obligations owing under the Second Lien Credit Agreement and related guaranties are as of the Petition Date secured by second priority liens and security interests in the same collateral that secures the First Lien Loans pursuant to a Second Lien Collateral Agreement dated February 1, 2007.  In connection with the First and Second Lien Credit Agreements, the First and Second Lien Lenders executed an intercreditor agreement dated February 1, 2007.

35.     Between February 2007 and May 2009, the Debtors' equity sponsors, including various MidOcean and Wasserstein Funds, acquired collectively approximately 57.7% of the indebtedness outstanding under the Second Lien Credit Agreement.  As Second Lien Lenders, substantially all of these equity sponsors have executed the Lock-Up Agreement in support of the Plan and have elected therein to receive their Second Lien Distributions (as defined in the Disclosure Statement) under the Plan in the form of stock of Reorganized Holdings (as defined in the Disclosure Statement).

### *Stockholders' Equity*

36.     As of the Petition Date, the following entities are projected to have the following percentage interests in Penton, LLC, which, in turn, owns 99.96% of the stock of Holdings:

| Holder | Percentage Ownership |
|---|---|
| MidOcean Partners Funds | 50.00% |
| Wasserstein & Co., L.P. Funds | 34.07% |
| Lexington Partners | 4.27% |
| Blackrock Kelso Capital Corporation | 5.83% |
| Apollo Investment Corporation | 5.83% |

37.     Holdings owns 100% of the stock of both Debtors Penton Business Media, Inc. and Penton Media, Inc., who, in turn, collectively own directly or indirectly 100% of the stock in each of the Debtor subsidiaries.

## Part III

## Events Leading to the Commencement of the Chapter 11 Cases

38.     Over the past year, the global economy has suffered a prolonged recession, the impact of which has been felt in virtually every key part of the United States economy, including business-to-business media spending.  In this environment, the Debtors have faced a challenging operating environment, like many other business-to-business media companies.

39.     This global economic downturn has amplified and accelerated already existing cyclical and structural shifts in the industry, and in particular, a decline in advertising spending and a shift from print to digital mediums.  Business-to-business media spending is expected to have declined approximately 15% during 2009, with spending in print declining approximately 28%.  And although the business-to-business media industry is expected to recover, print media — the Debtors' primary business segment — is expected to experience a permanent downsizing as a result of secular industry shifts.

40.     With the decline in the industry environment, the Debtors' primary source of revenue — advertising — has been materially affected.  The industry has witnessed a significant decrease in advertising budgets in the wake of the larger economy-wide recession.  Consequently, given the softening of the business-to-business media industry over the last two years, the Debtors' revenue has steadily decreased, with revenue declining 7.5% between 2007 and 2008 and an estimated decline of 26.2% between 2008 and 2009.

CHI-1726262

41.     As a result of the reduction in revenue and operating income, the delevering of the Debtors' balance sheet expected at the time of the February 2007 combination has not occurred.  Instead, the Debtors continue to operate with a levered capital structure.  This created a significant cash interest expense of approximately $41.9 million during 2009.  This is further augmented by the Debtors' interest rate hedging positions, which cost an additional $24.7 million during 2009, for a total interest expense burden of $66.6 million for the year.

42.     In the face of difficult operating conditions and a levered capital structure, the Debtors previously initiated an internal review of their operating strategy and business plan.  The review was commenced under the leadership of new management, Sharon Rowlands, CEO and Jean Clifton, CFO, who joined the company in November 2008 and June 2008, respectively.  As a result of the review, the Debtors implemented a number of cost cutting measures and repositioned operations to capitalize on developing industry trends.  The Debtors also began realigning their businesses in light of secular changes to the business-to-business industry and expected permanent declines in print media.

43.     The Debtors would have again been in default with respect to the first lien leverage ratio covenant under the First Lien Credit Agreement for the reporting period ending September 30, 2009.  However, in connection with negotiations leading to the formulation of the Plan, this financial covenant was waived by the First Lien Lenders.

44.     These efforts, however, have not been sufficient to address the Debtors' capital structure and liquidity position in light of the expectation that a full recovery in the business media industry may still take some time.

45.     In order to avoid a "free-fall" bankruptcy process, and the resulting impact such a bankruptcy filing would have on the Debtors' businesses, and to avoid significant impact on the Debtors' core constituents — including their employees, vendors, customers and lenders

-15-

— the Debtors, their equity sponsors, and their First and Second Lien Lenders have engaged in constructive negotiations leading to the development of the Plan, and its related agreements, including:

a.   the elimination of the Debtors' second lien debt in exchange for (1) 15% of the principal amount (not including accrued but unpaid interest) of such debt in cash or (2) at the election of a second lien lender, stock in the reorganized Debtors valued at 15% of such debt (based on the stock value used in the Debtors' rights offering described below), with the Debtors' equity sponsors agreeing to take distributions on the second lien debt they hold solely in such stock;

b.   an agreement from the Debtors' equity sponsors to backstop a rights offering to the Debtors' Second Lien Lenders whereby the sponsors have committed to ensure that the Debtors will receive between $38.9 million and $51.2 million in cash in the rights offering in connection with the Plan for liquidity and to fund cash distributions to the second lien lenders under the Plan who elect to take their distributions in cash; and

c.   an Amended and Restated Credit Agreement with the Debtors' First Lien Lenders, which, among other things, provides the Debtors with various covenant and other relief and extends the maturity of the Debtors' first lien facility by approximately 18 months to August, 2014.

46.      Prior to commencing these chapter 11 cases, the Debtors solicited and obtained the requisite votes to confirm the Plan. On January 21, 2010, the Debtors distributed the Plan and related disclosure statement and commenced solicitation of votes on the Plan from their first lien lenders, Classes 2 and 3 under the Plan, and their second lien lenders, Class 4 under the Plan. Classes 2, 3 and 4 are the only impaired classes under the Plan that are entitled to vote. In connection with such solicitation, the Debtors established a voting record date of 5:00 p.m. eastern time on January 19, 2010 (the "Voting Record Date"). The Debtors also established a Plan voting deadline of 5:00 p.m. eastern time on January 28, 2010 (the "Voting Deadline"), which was subsequently extended on multiple occasions. As set forth in the affidavit

CHI-1726262

of Alison M. Tearnen attached as Exhibit A to the Motion of the Debtors for an Order

(I) Scheduling a Combined Hearing to Approve Disclosure Statement and Confirm Plan of

Reorganization, (II) Approving Form, Manner and Sufficiency of Notice of Such Combined

Hearing and of the Commencement of These Chapter 11 Cases, (III) Approving Solicitation and

Voting Procedures and (IV) Granting Related Relief filed contemporaneously herewith, the

Debtors obtained the requisite votes for purposes of section 1129(a)(8) of the Bankruptcy Code

from Classes 2, 3 and 4.  The Debtors filed the Plan and related disclosure statement on the

Petition Date and, by means of a separate motion filed on the Petition Date, the Debtors seek

approval of the disclosure statement and solicitation procedures and confirmation of the Plan as

soon as practically possible.

**Part IV**

**<u>Affirmation of Facts in Support of First Day Papers</u>**

47.     Concurrently with the filing of their chapter 11 cases, the Debtors also

filed a number of First Day Pleadings.  The Debtors anticipate that the Court will conduct a

hearing soon after the commencement of the Debtors' chapter 11 cases (the "<u>First Day Hearing</u>"),

at which the Court will consider the relief requested in certain First Day Pleadings.

48.     Generally, the First Day Pleadings have been designed to meet the goals

of:  (a) continuing the Debtors' operations in chapter 11 with as little disruption and loss of

productivity as possible; (b) maintaining the confidence and support of customers, employees,

vendors and service providers and certain other key constituencies; (c) permitting use of cash

collateral; and (d) establishing procedures for the smooth and efficient administration of these

chapter 11 cases.

49.     I have read each of the First Day Pleadings filed contemporaneously

herewith, and incorporate by reference the factual statements set forth in the First Day Pleadings.

CHI-1726262

I believe that the relief sought in each of the First Day Pleadings is tailored to meet the goals described above and, ultimately, will be critical to the Debtors' ability to achieve a successful reorganization.

50.     It is my further belief that, with respect to those First Day Pleadings requesting the authority to pay discrete prepetition claims or continue selected prepetition programs (e.g., those First Day Pleadings seeking relief related to the Debtors' obligations to their employees, customers, shippers and other distribution network providers, taxing authorities and insurers), the relief requested is essential to the Debtors' reorganization and necessary to avoid immediate and irreparable harm to the Debtors and their employees, customers and affected vendors.  Impairment of the Debtors' business operations, or of their relationships with their employees, customers or vendors — at the very time when the smooth operation of the Debtors' businesses and the dedication, confidence and/or cooperation of the Debtors' key constituencies is most critical — would clearly imperil the Debtors' chances of a quick and successful reorganization.  Any diminution in the Debtors' ability to maintain their operations in the ordinary course could have an immediate and irreparable harmful impact upon the ability of the Debtors to confirm the Plan.  The Debtors believe that payment of the prepetition claims identified in the First Day Pleadings will forestall such irreparable harm and that all creditors of the Debtors will ultimately benefit from the relief requested therein.

51.     The Debtors also have filed a motion seeking an order (the "Cash Collateral Order") authorizing them to use the cash collateral of their Prepetition Secured Creditors ("Cash Collateral") to ensure that the Debtors have ample liquidity going forward to pay vendors and meet their other financial obligations.  Court approval of the Cash Collateral Motion, which was the product of extensive arm's length negotiations between the Debtors and their advisors on the one hand, and the Prepetition Secured Creditors on the other hand, is

absolutely vital to the Debtors' efforts to reorganize and confirm the Plan. I participated in the negotiation of the terms of the Cash Collateral Order and it is my informed view as Executive Vice President and Chief Financial Officer that the terms and covenants on the use of the Cash Collateral provided thereunder was the best the Debtors could receive given the current credit markets and the Debtors' financial position.

52.     The Debtors' reorganization depends in large part on maintaining vendor, customer and employee confidence and maintaining the operation of their business as the Debtors seek confirmation of the Plan. Accordingly, the Debtors have an immediate need to access the Cash Collateral in order to, among other things, permit the orderly operation of their business by securing supplies and paying employees, preserve the value of their estates by maintaining vendor and customer confidence, and fund their reorganization. The Debtors believe that such use of Cash Collateral will enable them to maintain stable operations and ultimately, in conjunction with the confirmation of the Plan, strengthen their businesses.

## Part V

## Information Required by Local Rule 1007-2

53.     Local Bankruptcy Rule 1007-2 requires certain information related to the Debtors, which is set forth below on a consolidated basis. Unless otherwise indicated, the financial information contained herein is unaudited.

54.     Pursuant to Local Bankruptcy Rule 1007-2(a)(4), Schedule 1 hereto lists the following information — to the extent available — with respect to each of the holders of the Debtors' 50 largest unsecured claims, excluding claims of insiders and deficiency claims of the Second Lien Lenders:  the creditor's name, address (including the number, street, apartment or suite number and zip code, if not included in the post office address); telephone number; the

name(s) of persons(s) familiar with the Debtors' accounts; the amount of the claim; and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

55. Pursuant to Local Bankruptcy Rule 1007-2(a)(5), Schedule 2 hereto provides the following information — to the extent available — with respect to each of the holders of the five largest secured claims against the Debtors: the creditor's name and address (including the number, street, apartment or suite number and zip code, if not included in the post office address); the amount of the claim; a brief description of the claim; an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

56. Pursuant to Local Bankruptcy Rule 1007-2(a)(6), Schedule 3 hereto provides a summary of the Debtors' assets and liabilities as of November 30, 2009.

57. Pursuant to Local Bankruptcy Rule 1007-2(a)(7), Schedule 4 hereto provides the following information: the number and classes of shares of stock, debentures and other securities of the Debtors that are publicly held and the number of holders thereof; and the number and classes of shares of stock, debentures and other securities of the Debtors that are held by the Debtors' officers and directors and the amounts so held.

58. Pursuant to Local Bankruptcy Rule 1007-2(a)(8), Schedule 5 hereto provides a list of all of the Debtors' property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, giving the name, address and telephone number of such entity and the court in which any proceeding relating thereto is pending.

59. Pursuant to Local Bankruptcy Rule 1007-2(a)(9), Schedule 6 hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtors operate their businesses.

60.     Pursuant to Local Bankruptcy Rule 1007-2(a)(10), Schedule 7 hereto provides the location of the Debtors' substantial assets, the location of its books and records, and the nature, location and value of any assets held by the Debtors outside the territorial limits of the United States.

61.     Pursuant to Local Bankruptcy Rule 1007-2(a)(11), Schedule 8 provides a list of the nature of present actions or proceedings, pending or threatened, against the Debtors or their property where a judgment against the Debtors or a seizure of their property is imminent.

62.     Pursuant to Local Bankruptcy Rule 1007-2(a)(12), Schedule 9 hereto provides a list of the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors and a brief summary of their relevant responsibilities and experience.

63.     Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2)(A), Schedule 10 hereto provides the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors and stockholders) and the estimated amount to be paid to officers, stockholders, directors and financial and business consultants retained by the Debtors, for the thirty (30) day period following the filing of the Debtors' chapter 11 petitions.

64.     Pursuant to Local Bankruptcy Rule 1007-2(b)(3), Schedule 11 hereto provides, for the thirty (30) day period following the filing of the chapter 11 petition, a list of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

CHI-1726262

I respectfully request that all of the relief requested in the First-Day Pleadings be granted, along with such other and further relief as is just.

> Penton Business Media Holdings, Inc.
> Penton Media, Inc.
> Penton Business Media, Inc.
> Duke Investments, Inc.
> Duke Communications International, Inc.
> Internet World Media, Inc.
> DVGM & Associates
> Penton Business Media, Internet, Inc.
> Penton Business Media Publications, Inc.
>
> By: _Jean B. Clifton_
> Jean B. Clifton,
> Chief Financial Officer

Sworn to and subscribed before me, a notary public for the State of New York, County of New York, this 10th day of February, 2010.

_Alicia Farrington_
Notary Public, State of New York
No.
Qualified in
Commission Expires

ALICIA FARRINGTON
NOTARY PUBLIC, State of New York
No. 01FA4968424
Qualified in Kings County
Commission Expires June 25, 2010

# Schedule 1

## Largest Unsecured Claims (Excluding Insiders)[3]

Pursuant to Local Bankruptcy Rule 1007-2(a)(4), the following lists the Debtors' largest unsecured claims on a consolidated basis,[4] excluding claims of insiders as defined in 11 U.S.C. § 101.

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **Worldcolor USA Corp** | Worldcolor USA Corp<br>Kathleen Ashworth<br>PO Box 98668<br>Chicago, IL 60693-8668<br>E: kathleen.ashworth@worldcolor.com<br><br>Worldcolor USA Corp<br>Worldcolor Premedia Chicago<br>1201 E Wiley Rd Ste 120<br>Schaumburg, IL 60173<br>P: 847-839-1260<br>F: 847-839-1058 | Trade Debt | n/a | $1,595,825.30 |
| **R R Donnelley Receivables Inc** | R R Donnelley Receivables Inc<br>James Mallaney<br>PO Box 905151<br>Charlotte, NC 28290-5151<br>P: 775-829-4403<br>F: 775-829-0164<br>E: james.r.mallaney@rrd.com<br><br>R R Donnelley Receivables Inc<br>RR Donnelley Global HQ<br>111 S Wacker Dr<br>Chicago, IL 60606-4301<br>P: 312-326-8000 | Trade Debt | n/a | $1,412,827.50 |

---

[3] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. All claims are subject to customary offsets, rebates, discounts, reconciliations, credits and adjustments, which are not reflected on this schedule.

[4] The amounts outstanding for trade indebtedness represent estimated amounts as of the Petition Date.

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **A T Clayton And Company Inc** | A T Clayton And Company Inc<br>Ted Quinlan<br>14822 Collections Center Drive Inc.<br>Chicago, IL 60693<br>P: 203-658-1280<br>F: 203-658-1299<br><br>A T Clayton And Company Inc<br>300 Atlantic St 7th Fl<br>Stamford, CT 06901<br>P: 203-658-1200<br>F: 203-658-1299 | Trade Debt | n/a | $574,806.12 |
| **Hallmark Data Systems LLC** | Hallmark Data Systems LLC<br>Debbie Stone<br>7300 Linder Avenue<br>Skokie, IL 60077<br>P: 847-983-2000<br>F: 847-763-9593<br>E: dstone@halldata.com | Trade Debt | n/a | $532,661.38 |
| **American Pacesetters Enterprises LLC** | American Pacesetters Enterprises LLC<br>Keith Strehle<br>PO Box 749558<br>Los Angeles, CA 90074-9558<br>P: 480-784-2270<br>F: 480-858-0540<br>E: kstrehle@americanpacesetters.com<br><br>American Pacesetters Enterprises LLC<br>1280 S Country Club Dr No 110<br>Mesa, AZ 85210-5145<br>P: 480-784-2270<br>F: 480-858-0540 | Trade Debt | n/a | $340,393.62 |

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **Three Z Printing Company** | Three Z Printing Company<br>Attn: President or Legal Department<br>PO Box 840007<br>Kansas City, MO 64184-0007<br>P: 217-857-3153<br>F: 217-857-3010<br><br>Three Z Printing Company<br>902 W Main St<br>Teutopolis, IL 62467 | Trade Debt | n/a | $296,336.45 |
| **Georgia World Congress Center** | Georgia World Congress Center<br>Kevin Duvall, Chief Operating Officer<br>285 Andrew Young Blvd NW<br>Atlanta, GA 30313-1591<br>P: 404-223-4200<br>F: 404-223-4211<br>E: kduvall@gwcc.com;<br>sspinks@gwcc.com;<br>mzimmerm@gwcc.com;<br>pskaggs@gwcc.com | Trade Debt | n/a | $229,608.00 |
| **Brown Printing Company** | Brown Printing Company<br>Attn: President or Legal Department<br>GPO Box 5110<br>New York, NY 10087-5110<br>P: 215-679-4451<br>F: 507-835-0420<br><br>Brown Printing Company<br>2300 Brown Ave<br>Waseca, MN 56093 | Trade Debt | n/a | $207,814.64 |
| **Bleuchip International** | Bleuchip International<br>Eric Beier<br>1025 N Hilltop Drive<br>Itasca, IL 60143<br>P: 630-735-8000<br>F: 630-735-0144<br>E: ebeier@bleuchipintl.com | Trade Debt | n/a | $162,851.42 |

| (1) Name of creditor | (2) Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contracts, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5) Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **City of Anaheim Convention Center** | City of Anaheim Convention Center<br>Attn: President or Legal Department<br>200 South Anaheim Blvd<br>Attn: City Clerk<br>Anaheim, CA 92805<br>P: 714-765-4104<br>F: 714-765-4105 | Trade Debt | n/a | $119,830.55 |
| **On24 Inc** | On24 Inc<br>Attn: President or Legal Department<br>799 Market Street<br>6th Floor<br>San Francisco, CA 94103-2033<br>P: 415-369-8000<br>F: 415-369-8388<br>E: billing@on24.com | Trade Debt | n/a | $114,577.00 |
| **Unisfair** | Unisfair<br>Attn: President or Legal Department<br>149 Commonwealth Drive<br>Menlo Park, CA 94025<br>P: 866-354-4030<br>E: corpaccounting@unisfair.com | Trade Debt | n/a | $111,750.00 |
| **United Parcel Service** | United Parcel Service<br>Patrick Casalbore<br>28013 Network Place<br>Chicago, IL 60673-1280<br>E: pcasalbore@ups.com | Trade Debt | n/a | $109,858.88 |
| **City of Tampa** | City of Tampa<br>Attn: President or Legal Department<br>333 South Franklin Street<br>Tampa, FL 33602<br>P: 813-274-8422<br>F: 813-274-8472; 813-274-8918 | Trade Debt | n/a | $109,140.00 |

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **Anaheim Convention Center** | Anaheim Convention Center<br>Attn: President or Legal Department<br>800 W. Katella<br>Anaheim, CA 92802<br>P: 714-765-8950<br>F: 714-765-8965<br>E: info@anaheimconventioncenter.net | Trade Debt | n/a | $107,225.00 |
| **Biocompare** | Biocompare<br>Attn: President or Legal Department<br>395 Oyster Point Blvd Suite 405<br>San Francisco, CA 94080<br>P: 650-873-9031<br>F: 650-873-9038 | Trade Debt | n/a | $104,000.00 |
| **Quadgraphics Inc** | Quadgraphics Inc<br>Leann Raasch<br>75 Remittance Drive Suite 6400<br>Chicago, IL 60675-6400<br>P: 414-566-2403<br>F: 414-566-4650<br><br>Quadgraphics Inc<br>Corporate HQ<br>N63 W23075 State Hwy 74<br>Sussex, WI 53089-2827<br>F: 414-566-9930 | Trade Debt | n/a | $81,885.48 |
| **CDW Direct LLC** | CDW Direct LLC<br>Eve Todd<br>PO Box 75723<br>Chicago, IL 60675-5723<br>P: 847-465-6000; 703-621-8217<br>F: 847-465-6800<br>E: evetodd@cdw.com<br><br>CDW Direct LLC<br>200 N Milwaukee Ave<br>Vernon Hills, IL 60061-1577<br>P: 847-465-6000; 703-621-8217<br>F: 847-465-6800 | Trade Debt | n/a | $74,109.50 |

| (1) Name of creditor | (2) Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contracts, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5) Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **California Marketing** | California Marketing<br>Jennifer Heydelaar<br>8352 Clairemont Mesa Blvd<br>San Diego, CA 92111<br>P: 858-279-5585<br>F: 858-279-2079<br>E: jenniferh@calmarketing.com | Trade Debt | n/a | $71,138.71 |
| **Infousa** | Infousa<br>Vickie Miller<br>Donnelley Marketing Division<br>225 W 34th St<br>21st Floor<br>New York, NY 10122<br>P: 402-593-4565<br>F: 402-596-8996<br>E: vickie.miller@infousa.com<br><br>P: 727-524-1916<br>F: 727-524-1749 | Trade Debt | n/a | $69,999.99 |
| **Neospire Inc** | Neospire Inc<br>Attn: President or Legal Department<br>1807 Ross Ave Ste 300<br>Dallas, TX 75201<br>P: 214-292-8100<br>F: 214-855-5095 | Trade Debt | n/a | $66,962.25 |
| **Aramark Corporation** | Aramark Corporation<br>Attn: President or Legal Department<br>240 Peachtree St Suite 2200<br>Atlanta, GA 30303<br>P: 404-220-2275<br>F: 404-220-2270<br><br>Aramark Corporation<br>1101 Market Street<br>Philadelphia, PA 19107<br>P: 215-238-3000<br>F: 215-238-3333 | Trade Debt | n/a | $64,800.00 |

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **Inquiry Management Systems Inc** | Inquiry Management Systems Inc<br>Attn: President or Legal Department<br>3145 East Warm Springs Bldg 11 Suite 200<br>Las Vegas, NV 89120<br>P: 800-263-0669<br>F: 416-620-9790<br><br>Inquiry Management Systems Inc<br>55 Horner Ave<br>Toronto, ON M8Z 4X6<br>Canada<br>P: 416-620-1965 | Trade Debt | n/a | $64,043.34 |
| **Yesmail Canada** | Yesmail Canada<br>Vickie Miller<br>PO Box 3603<br>Omaha, NE 68103-0603<br>P: 905-338-8355<br>F: 905-815-9605<br>E: vickie.miller@infousa.com<br><br>Yesmail Canada<br>1155 N Service Rd West Unit No 13<br>Oakville, ON L6M 3E3<br>Canada<br>P: 402-593-4500<br>F: 402-331-1505 | Trade Debt | n/a | $63,571.01 |
| **Walter Karl Inc** | Walter Karl Inc<br>Christine Rivera<br>2 Blue Hill Plaza, 3rd Floor<br>Pearl River, NY 10965<br>P: 313-396-3000<br>F: 313-396-3618 | Trade Debt | n/a | $63,273.72 |
| **TMS Transportation Management Services** | Tms Transportation Management Services<br>Attn: President or Legal Department<br>17810 Meeting House Road Suite 200<br>Sandy Springs, MD 20860<br>P: 301-260-2070<br>F: 301-260-1124 | Trade Debt | n/a | $58,583.39 |

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **Riverbend Executive Center Inc** | Riverbend Executive Center Inc<br>Attn: President or Legal Department<br>One Omega Dr<br>PO Box 4047<br>Stamford, CT 06907<br>P: 203-359-7744<br>F: 203-359-7997<br>E: info@riverbend1.com | Trade Debt | n/a | $58,428.35 |
| **Delta Printing Solutions Inc** | Delta Printing Solutions Inc<br>Bang Printing<br>28210 N Ave Stanford<br>Valencia, CA 91355<br>P: 661-257-0584<br>F: 661-295-4358 | Trade Debt | n/a | $56,888.56 |
| **ESP Computer Services** | ESP Computer Services<br>Attn: President or Legal Department<br>12444 Victory Blvd  Ste 400<br>North Hollywood, CA 91606<br>P: 818-487-4500<br>F: 818-487-4501 | Trade Debt | n/a | $50,549.19 |
| **Convention Data Services Inc** | Convention Data Services Inc<br>Mary Straub<br>720 Main Street<br>PO Box 1837<br>Hyannis, MA 02601<br>P: 508-743-0188<br>F: 508-759-7497 | Trade Debt | n/a | $49,569.43 |
| **Cerberus Associates LLC** | Cerberus Associates LLC<br>Seth P Plattus<br>299 Park Avenue<br>New York, NY 10171<br>P: 212-739-1225<br>E: plindenbaum@cerberuscapital.com | Bank Debt Deficiency Claim | n/a | Unliquidated |

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **UBS AG Stamford Branch** | UBS AG Stamford Branch<br>April Varner Nanton & Marie A Haddad<br>677 Washington Blvd 6th Fl<br>Stamford, CT 06901<br>P: 203-719-5274<br>E: april.varner@ubs.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Plainfield Asset Management LLC** | Plainfield Asset Management LLC<br>Jack Neumark<br>100 West Putnam Avenue<br>Greenwich, CT 06830<br>P: 203-302-1700<br>E: jack.neumark@pfam.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Riversource Investments LLC** | Riversource Investments LLC<br>Robin C Stancil<br>100 N Sepulveda Blvd Ste 650<br>El Segundo, CA 90245<br>P: 310-744-2425<br>E: robin.c.stancil@ampf.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **BlackRock Financial Management, Inc.** | Blackrock Financial Manamgement, Inc.<br>Gina Forziati<br>40 East 52nd Street<br>New York, NY 10022<br>E: gina.forziati@blackrock.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Orix Finance Corp** | Orix Finance Corp<br>Christopher Smith<br>1717 Main St Ste 1100<br>Dallas, TX 75201<br>E: glenn.johnson@orix.com | Bank Debt Deficiency Claim | n/a | Unliquidated |

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **Apidos Capital Management LLC** | Apidos Capital Management LLC<br>Gretchen Bergstresser<br>712 Fifth Avenue 10th Fl<br>New York, NY 10019<br>P: 212-506-3828<br>E: gbergstresser@apidos.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Hartford Investment Management Co** | Hartford Investment Management Co<br>Clifford M Abramsky<br>55 Farmington Avenue<br>Hartford, CT 06105<br>P: 860-297-6774<br>E: clifford.abramsky@himco.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Hillmark Capital** | Hillmark Capital<br>Mark Gold<br>1 Penn Plaza 45th Floor<br>New York, NY 10119<br>P: 212-710-1880<br>E: sonia.berrios@hillmarkcapital.com;<br>mgold@hillmarkcapital.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Satellite Asset Management** | Satellite Asset Management<br>Simon Raykher<br>623 Fifth Avenue 21st Fl<br>New York, NY 10022<br>P: 212-209-2000<br>E: genevieve.ortiz@satellite-ny.com;<br>simon.raykher@satellite-ny.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Symphony Asset Management LLC** | Symphony Asset Management LLC<br>James Kim<br>555 California St Ste 2975<br>San Francisco, CA 94104<br>P: 415-676-4000<br>E: james.kim@symphonyasset.com | Bank Debt Deficiency Claim | n/a | Unliquidated |

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **Pioneer Investment Management Inc** | Pioneer Investment Management Inc<br>Maggie Begley<br>60 State St<br>Boston, MA 02109<br>P: 617-742-7825<br>E: maggie.begley@pioneerinvestments.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Credit Suisse** | Credit Suisse<br>Gil Golan Douglas Dibella<br>11 Madison Avenue<br>New York, NY 10010<br>P: 212-325-2175<br>E: gil.golan@credit-suisse.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **GE Capital Debt Advisors** | GE Capital Debt Advisors<br>John Campos<br>201 Merritt 7<br>PO Box 5201<br>Norwalk, CT 06851<br>P: 203-956-4177<br>E: john.campos@ge.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Alcentra NY LLC** | Alcentra NY LLC<br>William Lemberg<br>200 Park Ave<br>New York, NY 10166<br>P: 212-922-6533<br>E: william.lemberg@alcentra.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Callidus Capital Management** | Callidus Capital Management<br>Ira Ginsburg<br>520 Madison Ave<br>New York, NY 10022<br>P: 212-893-6980<br>E: jginsburg@calliduscapital.com | Bank Debt Deficiency Claim | n/a | Unliquidated |

| (1)<br>Name of creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Indicate if claim is contingent, unliquidated, disputed or subject to set off | (5)<br>Amount of claim (secured also state value of security) |
|---|---|---|---|---|
| **Halbis Distressed Opportunity Master Fund Ltd** | Halbis Distressed Opportunity Master Fund Ltd<br>Peter Sakun<br>452 Fifth Avenue 10Th Fl<br>New York, NY 10018<br>P: 212-525-6780<br>E: peter.j.sakun@halbis.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **MJX Asset Management LLC** | MJX Asset Management LLC<br>Simon Yuan<br>12 E 49Th St 29Th Fl<br>New York, NY 10017<br>P: 212-705-5308<br>E: simon.yuan@mjxam.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Knightsbridge Clo 2008-1 Ltd c/o ACKB LLC** | Knightsbridge Clo 2008-1 Ltd<br>c/o ACKB LLC<br>Thomas D'Amaro<br>520 Madison Ave<br>New York, NY 11795<br>P: 212-822-7843<br>E: tdamaro@alliedcapital.com | Bank Debt Deficiency Claim | n/a | Unliquidated |
| **Primus CLO II Ltd** | Primus CLO II Ltd<br>Nicholas J Campbell Jr<br>PO Box 1093<br>Queensgate House S Church St<br>Georgetown<br>Cayman Islands<br>E: ncampbell@primusfinancial.com | Bank Debt Deficiency Claim | n/a | Unliquidated |

## Schedule 2

## Largest Secured Claims

Pursuant to Local Bankruptcy Rule 1007-2(a)(5), the following lists the Debtors' largest secured claims.[5]

| Creditor | Contact | Mailing Address & Phone Number | Amount of Claim | Type of Collateral |
|---|---|---|---|---|
| Cerberus Series Four Holdings LLC | Bob Davenport and Eric Wright | Cerberus Associates 11812 San Vincente Boulevard Suite 300 Los Angeles, California 90049 Ph: (310) 826-9200 | $104,677,590 | Blanket Liens on the Debtors' Property |
| General Electric Capital Corporation | Ellen D. Weaver | GE Corporate Financial Services, Inc. 2325 Lakeview Parkway Suite 700 Alpharetta, Georgia 30009 Ph: (678) 624-7973 | $92,449,235 | Blanket Liens on the Debtors' Property |
| BLT V, LLC | Bob Davenport and Eric Wright | Cerberus Associates 11812 San Vincente Boulevard Suite 300 Los Angeles, California 90049 Ph: (310) 826-9200 | $63,009,070 | Blanket Liens on the Debtors' Property |
| Credit Suisse Loan Funding LLC | Mark Heron | Credit Suisse Loan Funding Eleven Madison Ave. New York, New York 10010 Ph: (212) 325-2000 | $42,673,118 | Blanket Liens on the Debtors' Property |
| AZB CLO 2 Limited | Bryant Lau | Aozora 1-3-1 Kudan-minami, Chiyoda-ku Tokyo, 102-8660 Japan | $26,000,000 | Blanket Liens on the Debtors' Property |
| Oppenheimer Senior Floating Rate Fund | Myk Pleet | Oppenheimer Funds 6801 S. Tuscon Way (1-HYCDT) Centennial, CO 80112 Ph: (303) 768-2260 | $24,624,518 | Blanket Liens on the Debtors' Property |
| Natixis | Tefta Ghilaga | Natixis 9 West 57th Street, 35th Floor New York, NY 10019 Ph: (212) 872-5195 | $24,312,500 | Blanket Liens on the Debtors' Property |

---

[5] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.

**Balance Sheet of Penton Media, Inc.**
**as of**
**November 30, 2009**

**(dollars in thousands)**
**(UNAUDITED)**

**ASSETS**[6]

|  | **November 30** **2009** (Unaudited) |
|---|---|
| CURRENT ASSETS: |  |
| Cash and cash equivalents | $26,405 |
| Net Receivables | 46,749 |
| Net Inventory | 4,933 |
| Deferred tax assets | 859 |
| Prepaid Expenses and Other | 5,179 |
| Total Current Assets | $84,125 |
|  |  |
| Net PP&E | $16,155 |
| Other Assets | 740,750 |
| **TOTAL ASSETS** | $841,030 |

(continued)

---

[6] The "book" values referenced herein do not reflect the impairment adjustment for fiscal year 2009, and are not intended to be a representation of fair market value, which fair market value may be materially different.

# LIABILITIES AND SHAREHOLDERS' (DEFICIT) EQUITY

|  | November 30 2009 (Unaudited) |
|---|---|
| **CURRENT LIABILITIES:** | |
| Senior Secured Notes | $6,200 |
| Accounts Payable | 12,611 |
| Accrued Expenses | 23,012 |
| Customer deposits | 44,866 |
| Total current liabilities | 86,688 |
| **LONG TERM LIABILITIES** | |
| Revolving Line | $65,000 |
| Second Lien | 266,000 |
| First Lien | 598,300 |
| Net deferred pension | 15,445 |
| Deferred tax liability | 44,248 |
| Hedge liability long term | 45,391 |
| Other non-current liabilities | 6,629 |
| Total Long Term Debt | $1,041,013 |
| **TOTAL LIABILITIES**[7] | $1,127,701 |
| **EQUITY (DEFICIENCY):** | |
| Common Stock | $10 |
| Capital in excess of par value | 101,235 |
| Retained earnings | (354,106) |
| Dividend | (22,500) |
| Accumulated other comprehensive income | (11,311) |
| Total Equity | $(286,671) |
| **TOTAL EQUITY AND LIABILITIES**[8] | $841,030 |

---

[7] All First and Second Lien Debt set forth herein has been classified as non-current other than scheduled amortization.

[8] The "book" values referenced herein do not reflect the impairment adjustment for fiscal year 2009, and are not intended to be a representation of fair market value, which fair market value may be materially different.

## Schedule 4

### Publicly Held Securities

Local Bankruptcy Rule 1007-2(a)(7) requires the Debtors to identify the number and classes of shares of stock, debentures and other securities of the Debtors that are publicly held ("<u>Securities</u>") and the number of holders thereof. The Debtors' Securities are not publicly held.

## <u>Schedule 5</u>

### **Debtors' Property Not in the Debtors' Possession**

        Pursuant to Local Bankruptcy Rule 1007-2(a)(8), the following lists the Debtors' property that is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor or agent for any such entity.

        Certain of the Debtors' landlords hold security deposits during the term of their leases.

        Certain of the Debtors' utilities providers also hold security deposits.

        The Debtors' printers hold substantially all of the Debtors' inventory of paper, work in process and finished printed media prior to shipping.

        The stock certificates representing the capital stock in each of the Debtors has been pledged pursuant to the First Lien Loan Documents and are currently held by the agent to the First Lien Lenders.

        In addition to the properties listed above, in the ordinary course of business, property of the Debtors is likely to be in the possession of various other persons, including, without limitation, printers, maintenance providers, shippers, common carriers and materialmen. Through these arrangements, the Debtors' ownership interests are not affected.  In light of the movement of this property, providing a comprehensive list of the persons or entities in possession of the property, their addresses and telephone numbers, and the location of any court proceeding affecting such property would be impractical, if not impossible.

## Schedule 6

### Debtors' Property

Pursuant to Local Bankruptcy Rule 1007-2(a)(9), the following lists the property or premises owned, leased or held under other arrangement from which the Debtors operate their businesses.

### Owned Property

| Address | City | State | Zip |
|---|---|---|---|
| 14920 US Highway 61 PO Box 1420 | Clarksdale | MS | 38614 |

### Leased Property[9]

| Address | City | State | Postal Code |
|---|---|---|---|
| 9801 Industrial Boulevard | Lenexa | KS | 66215 |
| 16815 Von Karman Ave Suite 150 | Irvine | CA | 92606 |
| 166 North Gay Street Office 9 | Auburn | AL | 36830 |
| 6400 Hollis Street Suite 12 | Emeryville | CA | 94608 |
| 1801 Ave of the Stars Suite 404 | Los Angeles | CA | 90067 |
| 17383 Sunset Blvd Suite A-220 | Pacific Palisades | CA | 90272 |
| 181 Metro Suite 410 | San Jose | CA | 95110 |
| 11 River Bend XI | Stamford | CT | 06907 |
| 6151 Powers Ferry Road Building 12, Suite 200 | Atlanta | GA | 30339 |
| 330 N Wabash Ave Suite 2300 | Chicago | IL | 60611 |
| 7355 N Woodland Dr | Indianapolis | IN | 46278 |
| 9800 Metcalf | Overland Park | KS | 66212 |
| 11700 W 91st St | Overland Park | KS | 66214 |
| 10 Fawcett Street Suite 500 | Cambridge | MA | 02138 |

---

[9] The classification of the contractual agreements listed herein as real property leases or property held by other arrangements is not binding upon the Debtors. In addition, due to the size and complexity of the Debtors' business operations, this list may not be inclusive of all of the real property leased by the Debtors.

| Address | City | State | Postal Code |
|---|---|---|---|
| 2 Central Street<br>Unit 14 | Ipswich | MA | 01938 |
| 3000 Town Center<br>Suite 2750 | Southfield | MI | 48075 |
| 7900 Int'l Drive<br>Suite 300 | Bloomington | MN | 55425 |
| 249 West 17th Street | New York | NY | 11214 |
| 4200 South Shepherd<br>Suite 200 | Houston | TX | 77098 |
| 500 Lafayette<br>Suite 230 | Fredericksburg | VA | 22401 |
| 13190-101 Centerpointe Way | Woodbridge | VA | 22193 |
| 37114 Ave 12<br>Suite 101 | Madera | CA | 93636 |
| 1645 Falmouth Road<br>Suite 26 | Centerville | MA | 02632 |
| 1300 East Ninth Street | Cleveland | OH | 44114 |
| 2498 Superior Ave | Cleveland | OH | 44114 |
| 8380 Colesville Road<br>Suite 700 | Silver Spring | MD | 20910 |
| 45 Eisenhower Drive<br>5th Floor | Paramus | NJ | 07652 |
| 2700 River Road, Suite 418<br>Suite 109 | Des Plaines | IL | 60018 |
| Two Greenwood Square<br>3331 State Rd, Suite 410, 410A | Bensalem | PA | 19020 |
| 1401-1421 Pear Street<br>2010 14th Street | Boulder | CO | 80302 |
| 2510 N 47th Street #N | Boulder | CO | 80301 |
| 221 East 29th Street | Loveland | CO | 80538 |
| 731 Main Street<br>Unit 1C3 | Monroe | CT | 06768 |
| 61 Southwark Street<br>4th Floor | London | SEI,<br>UK | EC4YODJ |
| 16 Thorndal Circle | Darien | CT | 06820 |

## Schedule 7

### Location of Debtors' Substantial Assets

The Debtors' assets are located primarily within the territorial United States with the Debtors' printers, at their warehouses or in-transit to their customers in the form of inventory.

### Debtors' Assets Outside the United States

The Debtors do not have assets outside the territorial United States, with the exception of certain assets consisting primarily of fixtures, furniture and equipment in their locations outside the territorial United States.

### Location of Debtors' Assets, Books and Records

Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the Debtors' books and records are located in New York, New York, at the Debtors' headquarters, and the Debtors' locations in Cleveland, Ohio, Chicago, Illinois, and Overland Park, Kansas. In addition, due to the nature of the Debtors' business, the Debtors have assets in every location from which they operate their businesses.

# Schedule 8

## Litigation

Pursuant to Local Bankruptcy Rule 1007-2(a)(11), the following is a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their properties where a judgment against a Debtor or a seizure of the Debtors' property may be imminent.

The Debtors believe that they have no action or proceeding, pending or threatened, against the Debtors or their properties where a judgment against a Debtor or a seizure of the Debtors' property may be imminent. A non-exclusive schedule of litigation is included below.

| Action or Proceeding | Nature of the Action |
|---|---|
| *CE Design Ltd. V. Prism Business Media, Inc.;*<br>*U.S. District Court for the Northern District of Illinois*<br>*Case No.: 07 C 5838* | Class Action for alleged violations of Telephone Consumer Protection Act; summary judgment entered on behalf of Penton Business Media, Inc.; currently on appeal. |
| *Eugene I. Davis, as Litigation Trustee for the Quebecor World Litigation Trust*<br>*U.S. Bankruptcy Court for the Southern District of New York*<br>*Adversary Proceeding No.: 10-01162* | Preference Avoidance Action for $113,000 filed on Jan. 11, 2010. |

# Schedule 9

## Senior Management

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following provides the names of the individuals who comprise the Debtors' existing senior management, a description of their tenure with the Debtors and a brief summary of their relevant responsibilities and experience.

| Name / Position | Experience / Responsibilities |
|---|---|
| *Sharon Rowlands*<br><br>Chief Executive Officer | Sharon Rowlands has been CEO of the Debtors since November of 2008. Previous to her role with the Debtors, Sharon worked at The Thomson Corporation for 13 years serving as President and CEO for Thomson Financial until May 2008. As the head of Thomson Financial, she transformed the company from 45 disparate corporate entities to a global financial information and technology powerhouse completing numerous strategic acquisitions including Primark and Trade web and forming a ground breaking joint venture with the Depository Trust Company to create OMGEO, the global straight through processing leader. Ms. Rowlands serves on the Board of Directors ADP, a NYSE listed company and America Business Media. In 2005, she received the Women's Bond Club Merit Award. Ms. Rowlands received her B.A. Honors degree from Newcastle University in the United Kingdom in 1980 and her Post Graduate Certificate of Education (with distinction) from London University (Goldsmiths College) in 1982. |
| *Jean B. Clifton*<br><br>Chief Financial Officer | Jean B. Clifton is Executive Vice President and Chief Financial Officer of Penton Business Media Holdings, Inc. and a member of Penton's Executive Committee. Ms. Clifton joined Penton from Reader's Digest where she was Senior Vice President and Chief Financial Officer. Prior to that, Ms. Clifton spent 20 years with Journal Register Company serving as President and Chief Operating Officer and previously served as Chief Financial Officer, Executive Vice President and Treasurer. She was also a member of Journal Register Company's Board of Directors. Ms. Clifton received her bachelor's degree in business administration from the University of Michigan. Ms. Clifton is a CPA and began her financial career as an auditor at Arthur Young & Co. |

| | |
|---|---|
| *Elise Zealand*<br><br>General Counsel and Secretary | Elise Zealand joined the Debtors on February 11, 2008 from Gibson, Dunn & Crutcher LLP, where she served as a senior associate.  While at Gibson's New York office, her practice focused on the media and entertainment, publishing, and financial services industries, representing clients in a range of intellectual property and other commercial matters.  She serves on Penton Media, Inc.'s Executive Committee.  Ms. Zealand received her bachelor's degree from Loyola College of Maryland and her law degree from Columbia Law School. |

In addition, Anup Bagaria, Michael Struble, Tyler Zachem, Barrett Gilmer, Beverly Chell, Sharon Rowlands and William T. Kerr make up the boards of directors of Debtors Penton Business Media Holdings, Inc., Penton Media, Inc., Penton Business Media, Inc., Penton Business Media Internet, Inc. and Penton Business Media Publications, Inc.  Anup Bagaria and Tyler Zachem make up the boards of directors of Debtors Duke Investments, Inc., Duke Communications International, Inc., Internet World Media, Inc. and DVGM & Associates.

## **Schedule 10**

### **Payroll**

       Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2)(A) and (C), the following provides the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors and stockholders) and the estimated amount to be paid to officers, stockholders, directors and financial and business consultants retained by the Debtor, for the thirty (30) day period following the filing of the chapter 11 petitions.

| | |
|---|---|
| **Payments to Employees (Not Including Officers, Directors and Stockholders)** | $7,056,000 |
| **Payments to Officers, Directors and Stockholders** | $115,000 |
| **Payments to Financial and Business Consultants** | $400,000 |

## Schedule 11

**Cash Receipts and Disbursements,
Net Cash Gain or Loss, Unpaid Obligations and Receivables**

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides, for the thirty (30) day period following the filing of the chapter 11 petition, the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

| | |
|---|---|
| **Cash Receipts** | $23 million |
| **Cash Disbursements** | $20 million |
| **Net Cash Loss** | $0 million |
| **Unpaid Obligations** | $0 million |
| **Unpaid Receivables** | $0 million |