JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Lisa G. Laukitis

 - and -

77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Brad B. Erens
Robert E. Krebs
David A. Hall

Proposed Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                           :
In re                                      :   Chapter 11
                                           :
Penton Business Media Holdings, Inc., et al.,[1]  :   Case No. 10-10689 (AJG)
                                           :
                    Debtors                :   (Jointly Administered)
                                           :
------------------------------------------------------------x
```

## APPLICATION OF DEBTORS TO RETAIN
## AND EMPLOY ROTHSCHILD INC. AS FINANCIAL ADVISOR AND
## <u>INVESTMENT BANKER *NUNC PRO TUNC* AS OF THE PETITION DATE</u>

---

[1]     The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Penton Business Media Holdings, Inc. (9837); Penton Media, Inc. (5386); Penton Business Media, Inc. (1277); Duke Communications International, Inc. (7904); Duke Investments, Inc. (2160); DVGM & Associates (5363); Internet World Media, Inc. (5519); Penton Business Media Internet, Inc. (8290); and Penton Business Media Publications, Inc. (8292).

TO THE HONORABLE
UNITED STATES BANKRUPTCY JUDGE:

Penton Business Media Holdings, Inc. and 8 of its domestic direct and indirect subsidiaries, as debtors (collectively, the "Debtors"), respectfully represent as follows:

### Background

1.      On the date hereof (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[2]  The Debtors are one of the leading business-to-business media companies in the United States, delivering proprietary business information to owners, operators, managers and professionals in a number of industries.  The current company was formed in February 2007 out of the acquisition by Prism Business Media Holdings, Inc. of Penton Media, Inc., which created one of the largest business-to-business media companies in the United States.  The Debtors provide a diverse platform of media products across 15 industry clusters, including: publishing 113 trade magazines and associated web brands, hosting approximately 35 trade shows, conferences and roadshows and providing electronic media offerings, including websites, electronic newsletters, web conferences and other web-based media products.  The Debtors offer 25 data products and applications.  The Debtors' products reach more than 6 million business professionals.  In further support of this Motion, the Debtors incorporate the statements contained in the Declaration of Jean B. Clifton in Support of First-Day Pleadings (the "Clifton Declaration") filed contemporaneously herewith.

2.      Prior to commencing these chapter 11 cases, the Debtors solicited and obtained the requisite votes to confirm a "pre-packaged" plan of reorganization (the "Plan").  On

---

[2]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

January 21, 2010, the Debtors distributed the Plan and related disclosure statement and commenced solicitation of votes on the Plan from their first lien lenders, Classes 2 and 3 under the Plan, and their second lien lenders, Class 4 under the Plan.  Classes 2, 3 and 4 are the only impaired classes under the Plan that are entitled to vote.  In connection with such solicitation, the Debtors established a voting record date of 5:00 p.m. eastern time on January 19, 2010 (the "Voting Record Date").  The Debtors also established a Plan voting deadline of 5:00 p.m. eastern time on January 28, 2010 (the "Voting Deadline"), which was subsequently extended on multiple occasions.  As set forth in the affidavit of Alison M. Tearnen attached as Exhibit A to the Motion of the Debtors for an Order (I) Scheduling a Combined Hearing to Approve Disclosure Statement and Confirm Plan of Reorganization, (II) Approving Form, Manner and Sufficiency of Notice of Such Combined Hearing and of the Commencement of These Chapter 11 Cases, (III) Approving Solicitation and Voting Procedures and (IV) Granting Related Relief filed contemporaneously herewith, the Debtors obtained the requisite votes for purposes of section 1129(a)(8) of the Bankruptcy Code from Classes 2, 3 and 4.  The Debtors filed the Plan and related disclosure statement on the Petition Date and, by means of a separate motion filed on the Petition Date, the Debtors seek approval of the disclosure statement and solicitation procedures and confirmation of the Plan at a combined hearing on March 5, 2010.

### Relief Requested

3.      By this Application, the Debtors seek the entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules") (a) authorizing the employment and retention of Rothschild Inc.  ("Rothschild") as their financial advisor and

investment banker in accordance with the terms and conditions set forth in that certain engagement letter dated as of August 1, 2009 (the "Engagement Letter"),[3] a copy of which is attached hereto as Exhibit A, (b) approving the terms of Rothschild's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter, (c) waiving certain informational requirements of Local Bankruptcy Rule 2016-2 and (d) granting such other and further relief as is just and proper.  In support of this Application, the Debtors submit the Declaration of Neil A. Augustine, a Managing Director of Rothschild (the "Augustine Declaration"), which is attached hereto as Exhibit B and incorporated herein by reference.

4.      The terms of this Application, as well as the terms of the order requested by this Application and entered pursuant thereto, shall apply to any and all affiliates of the Debtors that have not yet filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code as of the Petition Date, but which subsequently file such a petition during the pendency of these chapter 11 cases.

## Rothschild's Qualifications

5.      The Debtors seek to retain Rothschild as their financial advisor and investment banker because, among other things, Rothschild has extensive experience and an excellent reputation in providing high quality investment banking services to debtors and creditors in chapter 11 cases and other restructurings.

---

[3]      Any references to, or summaries of, the Engagement Letter in this Application are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and such summaries or references herein.  Additionally, any initially capitalized terms used in this Application and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

6.      Rothschild is a member of one of the world's leading independent investment banking groups, with more than forty (40) offices in more than thirty (30) countries, including an office located at 1251 Avenue of the Americas, New York, New York 10020. Rothschild has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises and other financial advisory services, and with particular experience in providing high-quality financial advisory services to financially troubled companies.  Rothschild is an experienced bankruptcy and restructuring advisor to debtors, bondholders, creditors' committees, single creditor classes and secured creditors in a variety of industries.  Rothschild is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operating restructurings.  Moreover, Rothschild is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

7.      Rothschild and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases.  Rothschild's business reorganization professionals have served as financial advisor and investment banker and strategic advisors in numerous cases, including, among others:  In re Fairpoint Communications, Inc., Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan. 11, 2010); In re MIG, Inc., Case No. 09-12118 (KG) (Bankr. D. Del. Sept. 4, 2009); In re Sea Launch Co., LLC, Case No. 09-12153 (BLS) (Bankr. D. Del. Aug. 8, 2009); In re Visteon Corp., Case No. 09-11786 (CSS) (Bankr. D. Del. July 1, 2009); In re Sun-Times Media Group, Inc., Case No. 09-11092 (CSS) (Bankr. D. Del. May 11, 2009); In re Tronox Inc., Case No. 09-10156 (ALG) (Bankr. D. Del. Apr. 7, 2009); In re PPI Holdings, Inc., Case No. 08-13289 (KG) (Bankr. D. Del. Feb. 4, 2009); In re Recycled Paper Greetings Inc., Case No. 09-

10002 (KG) (Bankr. D. Del. Jan. 2, 2009); <u>In re Milacron Inc.</u>, Case No. 09-11235 (JVA) (Bankr. S.D. Ohio Apr. 6, 2009); <u>In re Circuit City Stores, Inc.</u>, Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008); <u>In re VeraSun Energy Corp.</u>, Case No. 08-12606 (BLS) (Bankr. D. Del. Oct. 31, 2008); <u>In re Motor Coach Industries International, Inc.</u>, Case No. 08-12136 (BLS) (Bankr. D. Del. Sept. 15, 2008); <u>In re BHM Technologies</u>, Case No. 08-04413 (SWD) (Bankr. W.D. Mich. May 19, 2008); <u>In re Hilex Poly Co. LLC</u>, Case No. 08-10890 (KJC) (Bankr. D. Del. May 6, 2008); <u>In re Werner Holding Co. (DE), Inc.</u>, Case No. 06-10578 (KJC) (Bankr. D. Del. June 12, 2006) <u>In re Delphi Corp.</u>, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Nov. 30, 2005); <u>In re Northwest Airlines Corp.</u>, Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sept. 14, 2005); <u>In re Solutia Inc.</u>, Case No. 03-17949 (PCB) (Bankr. S.D.N.Y. Mar. 11, 2005); <u>In re Int'l Wire</u>, Case No. 04-11991 (BRL) (Bankr. S.D.N.Y. July 1, 2004); <u>In re James River Coal Co.</u>, Case No. 03-04095 (MFH) (Bankr. M.D. Tenn. May 23, 2003); <u>In re Superior TeleCom Inc., et al.</u>, Case No. 03-10607 (KJC) (Bankr. D. Del. Apr. 10, 2003); <u>In re WestPoint Stevens, Inc.</u>, Case No. 03-13532 (RDD) (Bankr. S.D.N.Y. June 6, 2003); <u>In re UAL Corp.</u>, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002); <u>In re Viasystems Group, Inc.</u>, Case No. 02-14867 (ALG) (Bankr. S.D.N.Y. Nov. 21, 2002); <u>In re Guilford Mills, Inc.</u>, Case No. 02-40667 (BRL) (Bankr. S.D.N.Y. June 26, 2002).

8.    The resources, capabilities and experience of Rothschild in advising the Debtors are crucial to the Debtors' chapter 11 strategy.  A financial advisor and investment banker with a deep bench of experience, such as Rothschild, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  The Debtors require the services of a capable and experienced financial advisor and investment banker such as Rothschild.

CHI-1726230

9.     Since its retention on August 1, 2009 and up to the Petition Date, Rothschild provided extensive pre-petition services to the Debtors in preparation for the Debtors' restructuring efforts, including assisting management in developing a long-range business plan, conducting extensive meetings and negotiations with the various parties in interest, facilitating extensive diligence for the various parties in interest, developing the Debtors' prepackaged plan of reorganization (the "Plan"), assisting in developing a communications plan and providing additional financial advisory and investment banking services in preparation for the filing of these chapter 11 cases.

10.     As a result of the prepetition work performed on behalf of the Debtors, Rothschild has acquired significant knowledge of the Debtors and its businesses and is intimately familiar with the Debtors' financial affairs, debt structure, operations and related matters.  In providing prepetition services to the Debtors, Rothschild has worked closely with the Debtors' senior management and their other advisors and has familiarity with the other major stakeholders that will be involved in these chapter 11 cases.  Accordingly, Rothschild has developed relevant experience and expertise regarding the Debtors that (a) make Rothschild a natural selection as the Debtors' financial advisor and investment banker and (b) will assist Rothschild in providing effective and efficient services in these chapter 11 cases.

**Services to Be Provided**

11.     The parties have entered into the Engagement Letter, which governs the relationship between the Debtors and Rothschild.  The terms and conditions of the Engagement Letter were negotiated between the Debtors and Rothschild and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Under the Engagement Letter, in consideration for the compensation contemplated thereby, Rothschild has

provided and has agreed to provide the following financial advisory and investment banking

services:[4]

    a.      Identify and/or initiate potential Transactions;

    b.      Review and analyze the Debtors' assets and the operating and financial strategies of the Debtors;

    c.      Review and analyze the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those assumptions to historical trends of the Debtors and their industry;

    d.      Evaluate the Debtors' debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Debtors;

    e.      Assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

    f.      Determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction;

    g.      Advise the Debtors on the risks and benefits of considering a Transaction with respect to the Debtors' intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors;

    h.      Review and analyze any proposals the Debtors receive from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

    i.      Assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction;

---

[4]    Capitalized terms that are used in this summary or the summary in paragraph 12 below, but that are not otherwise defined herein, shall have the meanings set forth in the Engagement Letter. To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

j.      Advise the Company with respect to, and attend, meetings of the Debtors' Board(s) of Directors, creditor groups, official constituencies and other interested parties, as necessary;

k.      If requested by the Debtors, participate in hearings before this Court and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan; and

l.      Render such other financial advisory and investment banking services customary for similar engagements as agreed upon by Rothschild and the Debtors.

12.     The services that Rothschild will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, Rothschild will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

## Professional Compensation

13.     In consideration of the services to be provided by Rothschild, and as more fully described in the Engagement Letter, subject to this Court's approval the Debtors have agreed to pay Rothschild the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"):[5]

a.      Monthly Fee.  A Monthly Fee of $200,000, payable on the first day of each month;

b.      Recapitalization Fee.  Upon the consummation of a Transaction equal to $4.5 million; provided that the Recapitalization Fee shall equal $3.5 million, in the event that such Transaction is consummated "out-of-court" or as part of a "prepackaged" Plan in which the necessary votes were solicited and obtained in order to confirm a Plan prior to the commencement of a Bankruptcy Case; and

---

[5] The Credit Facility Amendment Fee described in the Engagement Letter is no longer earnable.

c.   <u>New Capital Fee</u>.  A fee equal to (i) 1.0% of the face amount of any senior secured debt raised by the Debtors including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any junior secured debt raised by the Debtors; (iii) 3.0% of the face amount of any unsecured debt raised by the Debtors and (iv) 5.0% of any equity capital, or capital convertible into equity, raised by the Debtors.  The New Capital Fee will be payable upon the closing of the transaction by which the new capital is committed.  Rothschild will be entitled to the New Capital Fee only if it acts as an underwriter, placement agent or arranger of, or manages an organized process for a New Capital Raise.  A New Capital Fee will be earned and payable only on debt where the Debtors receive new liquidity from parties who are not, and whose affiliates are not, currently existing equity holders, lenders or other creditors of the Debtors.

14.   Rothschild will credit against the Recapitalization Fee:  (a) 100% of the Monthly Fees paid for periods commencing on January 1, 2010 and thereafter; (b) 50% of any New Capital Fees paid; and (c) 100% of any Credit Facility Amendment Fee paid, provided that the sum of any such credits shall not exceed the Recapitalization Fee.  The Monthly Fee Credit, to the extent not otherwise credited, will be applied to the New Capital Fee.  No credit will reduce any fee otherwise payable below zero.

15.   In addition to the fees described above, the Debtors agree to reimburse Rothschild for all out-of-pocket expenses reasonably incurred by Rothschild in connection with the matters contemplated by the Engagement Letter, including, without limitation, reasonable fees, disbursements, and charges of Rothschild's counsel.  Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research, and courier services.  The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Rothschild for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed, monthly fee, and a

contingency amount which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and Rothschild in the Engagement Letter.

16.     The Fee and Expense Structure described above is consistent with Rothschild's normal and customary billing practices for comparably sized and complex cases, both in and out-of-court, involving the services to be provided in these chapter 11 cases.  The Fee and Expense Structure is consistent with and typical of arrangements entered into by Rothschild and other financial advisors and investment bankers of comparable standing in connection with the rendering of similar services to clients such as the Debtors.  Rothschild and the Debtors believe that the Fee and Expense Structure is both reasonable and market-based.

17.     To induce Rothschild to do business with the Debtors, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Rothschild has undertaken and expects to undertake and to account for the potential for an unfavorable outcome as a result of factors outside of Rothschild's control.

18.     Rothschild's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Rothschild's engagement hereunder, were important factors in determining the Fee and Expense Structure, and that the ultimate benefit to the Debtors derived from the services provided by Rothschild hereunder can not be measured by a reference to the number of hours expended by Rothschild's professionals.

19.     It is not the general practice of investment banking firms, including Rothschild, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d).   Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (.10) increments or provide or conform to a

schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(g), Rothschild should be excused from compliance with such requirements and should only be required to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

20. Rothschild will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Rothschild's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

21. The Fee and Expense Structure (including the Recapitalization Fee) has been agreed upon in anticipation that a substantial commitment of professional time and effort will be required of Rothschild and its professionals and in light of the fact that (a) such commitment may foreclose other opportunities for Rothschild and (b) the actual time and commitment required of Rothschild and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Rothschild.

22. In light of the foregoing and given the numerous issues that Rothschild may be required to address in the performance of its services hereunder, Rothschild's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Rothschild's services for engagements of this nature both in the in and out-of-court contexts, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

**Payments Prior to the Petition Date**

23.     Upon reliance of the Augustine Declaration, the Debtors believe that, as of the Petition Date, Rothschild was not a creditor of the Debtors.  In connection with the prepetition engagement, the Debtors were required to pay Rothschild certain monthly fees.  Upon reliance of the Augustine Declaration, the Debtors believe that during the 90 days immediately preceding the Petition Date, Rothschild received the following payments in connection with both the prepetition engagement and Rothschild's current engagement under the Engagement Letter:  Rothschild received fee payments totaling $1,400,000.00 and expense reimbursement payments totaling $53,347.80, which includes $25,000 paid on account of anticipated expenses.  Other than as set forth herein, Rothschild did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

24.     Upon reliance of the Augustine Declaration, the Debtors believe that within one year prior to the Petition Date, the Debtors paid Rothschild $1,500,000.00 in fees and $62,453.96 in expense reimbursements for services rendered in connection with both the prepetition engagement and with Rothschild's engagement under the Engagement Letter.[6]

### Indemnification Provisions

25.     Pursuant to Exhibit A to the Engagement Letter, the Debtors have agreed, among other things, to indemnify, hold harmless and provide contribution and reimbursement to Rothschild and its affiliates and their respective directors, officers, members, employees, agents and controlling persons under certain circumstances.[7]

---

[6]     The amounts in this paragraph include $100,000.00 in fees and $9,106.16 in expense reimbursements for preliminary financial advisory services rendered prior to the date of the Engagement Letter.

[7]     Exhibit A to the Engagement Letter provides, in part, that the Debtors will indemnify and hold harmless Rothschild and each Indemnified Person (as defined in the Engagement Letter) from and against any losses, claims, damages, liabilities or expenses to which they may become subject, related to, arising out of or in connection with Rothschild's engagement, except to the extent that any such loss, claim, damage, liability or expense is finally judicially determined to have resulted primarily from such Indemnified Person's willful misconduct, fraud or gross negligence.  To the extent that the description in this Application and the

26.     The Debtors and Rothschild believe that the indemnification provisions contained in Exhibit A of the Engagement Letter are customary and reasonable for financial advisory and investment banking engagements, both in and out-of-court, and reflects the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.  See, e.g., In re FairPoint Commc'ns, Inc., Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan 11, 2010); In re Charter Commc'ns, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009); In re Movie Gallery, Inc., Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 2, 2006); In re Foamex Int'l, Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005); In re Spiegel, Case No. 03-11540 (CB) (Bankr. S.D.N.Y. Aug. 7, 2003); In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del. Jul. 21, 2003); In re Acterna, Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. Jun. 24, 2003).

27.     The terms and conditions of the Engagement Letter were negotiated by the Debtors and Rothschild at arm's-length and in good faith.  The Debtors respectfully submit that the indemnification, contribution, exculpation, reimbursement and other provisions contained in Exhibit A to the Engagement Letter, viewed in conjunction with the other terms of Rothschild's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require Rothschild's services to successfully reorganize.  Accordingly, as part of this Application, the Debtors request that the Court approve the Engagement Letter.

---

terms of Exhibit A to the Engagement Letter are inconsistent, the terms of Exhibit A of the Engagement Letter shall control.

## Basis for Relief

28.     The Debtors seek authority to retain and employ Rothschild as their financial advisor and investment banker under section 327 of the Bankruptcy Code, which provides that a debtor in possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

29.     In addition, the Debtors seek approval of the Engagement Letter (including, without limitation, the Fee and Expense Structure and the indemnification provisions in Exhibit A) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a).  Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrett Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be

> subject to the uncertainties of what a judge thought the work was
> worth after it had been done. That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the
> court award to professional consultants "reasonable compensation"
> based on relevant factors of time and comparable costs, etc. Under
> present § 328 the professional may avoid that uncertainty by
> obtaining court approval of compensation agreed to with the
> trustee (or debtor or committee).

Id. at 862 (citations omitted), cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v Official

Comm. of Unsecured Creditors (In re Smart World Techs. LLC), 83 B.R. 869, 874

(S.D.N.Y. 2008). Owing to this inherent uncertainty, courts have approved similar arrangements

that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.

See, e.g., In re U.S. Airways, Inc., Case No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002);

see also In re J.L. French Auto. Castings, Inc., Case No. 06-10119 (MFW) (Bankr. D. Del.

Mar. 24, 2006).

    30.    Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection

Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this
> title, with the court's approval, may employ or authorize the
> employment of a professional person under section 327 or 1103 of
> this title, as the case may be, on any reasonable terms and
> conditions of employment, including on a retainer, on an hourly
> basis, on a fixed or percentage fee basis, or on a contingent fee
> basis.

11 U.S.C. § 328(a) (amendment underlined). This change makes clear that the Debtors are able

to retain a professional on a fixed or percentage fee basis, such as the Fee and Expense Structure,

with bankruptcy court approval.

    31.    The Engagement Letter appropriately reflects (a) the nature and scope of

services to be provided by Rothschild, (b) Rothschild's substantial experience with respect to

financial advisory and investment banking services and (c) the fee structures typically utilized by

Rothschild and other leading financial advisors and investment bankers that do not bill their clients on an hourly basis.

32.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases.  See, e.g., In re FairPoint Commc'ns, Inc., Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan 11, 2010); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 2, 2006); In re Tower Auto., Inc., Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Jun. 15, 2005); In re Spiegel, Case No. 03-11540 (CB) (Bankr. S.D.N.Y. Aug. 7, 2003); In re NextWave Pers. Commc'ns, Inc., Case No. 98-21529 (ASH) (Bankr. S.D.N.Y. Oct. 1, 2001); In re Casual Male Corp., Case No. 01-41404 (REG) (Bankr. S.D.N.Y. Jul. 20, 2001); see also In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007).  Accordingly, the Debtors believe that Rothschild's retention on the terms and conditions proposed herein is appropriate.

### Rothschild's Disinterestedness

33.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Augustine Declaration:  (a) Rothschild is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors' estates; and (b) Rothschild has no connection to the Debtors, their creditors or other parties in interest in these chapter 11 cases.

34.     As set forth in further detail in the Augustine Declaration, Rothschild has certain connections with creditors, equity security holders and other parties in interest in these chapter 11 cases.  All of these matters, however, are unrelated to these chapter 11 cases. Rothschild does not believe that any of these matters represent an interest materially adverse to

the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

## Notice

35.    Notice of this Motion has been provided to: (a) the United States Trustee for the Southern District of New York; (b) counsel to the agent for the Debtors' first lien lenders; (c) counsel to the agent for the Debtors' second lien lenders; and (d) those creditors holding the 50 largest unsecured claims against the Debtors' estates.  The Debtors submit that no other or further notice need be provided.

## No Prior Request

36.    No prior request for the relief sought in this Application has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit D:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Respectfully submitted,

Dated:  February 12, 2010
           New York, New York

 /s/ Jean B. Clifton
Jean B. Clifton
Chief Financial Officer

# EXHIBIT A

## Engagement Letter

As of August 1, 2009

Ms. Sharon Rowlands
Chief Executive Officer
Penton Media, Inc.
249 West 17th Street
New York, New York 10011



Dear Ms. Rowlands:

This letter (the "Agreement") will confirm the terms and conditions of the agreement between Penton Media, Inc. (collectively with its direct and indirect subsidiaries, the "Company") and Rothschild Inc. ("Rothschild") regarding the retention of Rothschild as financial advisor and investment banker to the Company in connection with a possible Transaction (as defined below) involving the Company.

Section 1    Services to be Rendered. In connection with the formulation, analysis and implementation of various options for a Transaction or any series or combination of Transactions, Rothschild will perform the following services to the extent Rothschild reasonably deems customary and feasible and as reasonably requested by the Company:

(a)    identify and/or initiate potential Transactions;

(b)    review and analyze the Company's assets and the operating and financial strategies of the Company;

(c)    review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(d)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(e)    assist the Company and its other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(f)    determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Transaction;

(g)    advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(h)    review and analyze any proposals the Company receives from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Neil A. Augustine
Managing Director
Telephone 212 403-5411
Facsimile 212 403-3734
Email neil.augustine@rothschild.com



(i)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction;

(j)     advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(k)     in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(l)     render such other financial advisory and investment banking services customary for similar engagements as agreed upon by Rothschild and the Company.

As used herein, the term "Transaction" shall mean any one or more of the following, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code") or otherwise: (a) any transaction or series of transactions that effects or proposes to effect material changes in any of the Company's outstanding indebtedness held by any party other than the Sponsors (as defined below) for borrowed money ("Indebtedness") and which also involves (i) the payment, retirement or discharge of such Indebtedness at a discount, (ii) the extension of maturity of such Indebtedness beyond its current maturity date, or (iii) the exchange of Indebtedness for equity or gives the Company the right to pay Indebtedness or interest thereon at the current contract rate in equity or other securities instead of cash (collectively, a "Debt Compromise"), including, without limitation, pursuant to any exchange, equitization, payment of interest in kind, repurchase, tender offer or forgiveness involving any portion thereof (other than a transaction that solely involves an amendment to any of the financial or other covenants (excluding covenants pertaining to the payment of principal or interest) of the Company's First Lien Credit Agreement (the "Credit Facility Agreement") dated as of February 1, 2007 among Penton Media, Inc., Prism Business Media Inc., General Electric Capital Corporation, as administrative agent, UBS Securities LLC and TD Securities (USA) LLC, as co-syndication agents, and JPMorgan Chase Bank, N.A. and CIT Lending Services Corporation, as co-documentation agents and Second Lien Credit Agreement dated as of February 1, 2007 among Penton Media, Inc., Prism Business Media Inc., General Electric Capital Corporation, as administrative agent, UBS Securities LLC, as syndication agent and JPMorgan Chase Bank, N.A., as documentation agent (a "Credit Facility Amendment")); (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an

Penton Media, Inc.
As of August 1, 2009
Page 3

※ R

"Acquirer") in a Transaction which requires and has received approval of lenders holding the requisite amount of the Indebtedness outstanding under the Credit Facility Agreement required for such approval; or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions, of (x) other than in the ordinary course of business, any material portion of the assets or operations of the Company or (y) any outstanding or newly issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company whether or not pursuant to a transaction involving a Debt Compromise; (c) any restructuring, reorganization, exchange offer, tender offer, refinancing or similar transaction whether or not pursuant to a Plan and whether or not pursuant to a transaction involving a Debt Compromise; or (d) any transaction similar to any of the foregoing whether or not involving a Debt Compromise, provided, however, that any such transaction that affects only the rights of the holders of equity securities of the Company or affiliates of such holders (collectively, the "Sponsors"), whether in their capacity as such, as debtholders or otherwise, will not be deemed to be a "Transaction" hereunder.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

Section 2    Information Provided by the Company.

(a)    The Company will furnish to, or cause to be furnished to, Rothschild any and all information as is reasonably available to the Company and as Rothschild reasonably deems appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same, (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the knowledge of its executive officers, will be true and correct in all material respects, will be prepared in good faith and will not contain any material misstatement of fact or omit to state any material fact. The

#393491

Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b) The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission arising from or in connection with: (i) the electronic communication of information to the Company or (ii) the Company's reliance on such information; provided that Rothschild acts in good faith and employs customary procedures in connection with the foregoing.

(c) Rothschild covenants that all Information furnished or made available to it by the Company or its representatives that is designated or marked as confidential, and the financial terms of this Agreement, will be kept in confidence by Rothschild and its employees or other agents pursuant to customary confidentiality procedures and, except as provided in Section 3 hereof, will not knowingly be furnished to any third person without the Company's prior written consent, given or withheld in its sole discretion.

Section 3    Application for Retention of Rothschild. In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 6 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use reasonable best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use reasonable best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Upon written notice to the Company, Rothschild shall have no obligation to provide any services under this Agreement after a Bankruptcy Case has been commenced unless Rothschild's retention under the terms of this

Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects. During any period in which Rothschild has given such notice and such notice remains operative, Rothschild shall not be entitled to Monthly Fees hereunder and, if such period continues for more than 60 calendar days, the Company may terminate this Agreement without further liability to Rothschild hereunder except under Sections 6, 7 and 8 hereof. Any submission or testimony made by or on behalf of Rothschild in good faith relating to the matters referred to in this Section 3 will not constitute a breach of Rothschild's obligations under Section 2(c) hereof.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.

In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee, the Recapitalization Fee, the Credit Facility Amendment Fee and the New Capital Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4    Fees of Rothschild.  As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)    Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $200,000 per month. The initial Monthly Fee shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

※ R

(b)     A recapitalization fee (the "Recapitalization Fee") payable upon the consummation of a Transaction equal to $4.5 million; provided, that (i) the Recapitalization Fee shall equal $3.5 million, in the event that such Transaction is consummated "out-of-court" or as part of a "prepackaged" Plan in which the necessary votes were solicited and obtained in order to confirm a Plan prior to the commencement of a Bankruptcy Case, (ii) the Recapitalization Fee shall equal $4.0 million in the event that such transaction is effected as part of a "prearranged" Plan in which (x) the necessary votes were solicited and obtained in order to confirm a Plan after the commencement of a Bankruptcy Case but prior to commencement, (y) the Plan was supported by written undertakings by key stakeholders of the Company, and (z) the Plan is confirmed within 150 days after commencement of the Bankruptcy Case, and (iii) except as expressly provided in Section 4(d) hereof, Rothschild shall be entitled to only a single Recapitalization Fee if more than one Transaction is consummated and no Credit Facility Amendment Fee will be payable in respect of any Transaction for which a Recapitalization Fee is payable.

(c)     A credit facility amendment fee (the "Credit Facility Amendment Fee") equal to $0.75 million payable upon the consummation of any Credit Facility Amendment. For avoidance of doubt, (i) no Recapitalization Fee shall be payable solely upon the consummation of a Credit Facility Amendment, (ii) only one Credit Facility Amendment Fee shall be payable hereunder regardless of the number of Credit Facility Amendments, (iii) in the event that a Recapitalization Fee is triggered, only a Recapitalization Fee shall be payable, and (iv) in the event that a New Capital Fee of not less than $2.0 million is triggered, no Credit Facility Amendment Fee will be payable.

(d)     A new capital fee (the "New Capital Fee") equal to (i) 1.0% of the face amount of any senior secured debt raised by the Company including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any junior secured debt raised by the Company; (iii) 3.0% of the face amount of any unsecured debt raised by the Company and (iv) 5.0% of any equity capital, or capital convertible into equity, raised by the Company (each, a "New Capital Raise"). The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, (i) the term "raised" shall include the amount committed or otherwise made available to the Company pursuant to definitive documentation providing therefor, whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company and (ii) Rothschild shall only be entitled to a New Capital Fee if it acts as an underwriter, placement agent or arranger of, or manages an organized process for, a New Capital Raise. Without limiting the generality or effect of the foregoing, the New Capital Fee shall not be earned or payable for (a) any new capital provided by existing equity holders, lenders or other creditors (including, without limitation, the Sponsors) or (b) any debt, equity or other securities issued to existing stakeholders pursuant to a Plan or rolled into new debt in an out-of-court transaction (i.e., the New Capital Fee shall only be payable on

Penton Media, Inc.
As of August 1, 2009
Page 7

debt where the Company receives new liquidity from parties (or their affiliates) who are not currently existing equity holders, lenders or other creditors of the Company).

(e)     It shall be a condition to Rothschild's obligation to provide additional services not specified in this Agreement that the Company and Rothschild shall have entered into an agreement as to the additional fees to which Rothschild shall be entitled therefor.

(f)     For the avoidance of doubt, the parties agree that Rothschild shall not be entitled to a Recapitalization Fee, Credit Facility Amendment Fee or New Capital Fee as a result of (i) a waiver or forbearance (for a period not longer than 91 calendar days at any one time) of any default in respect of any Indebtedness that does not also involve a material amendment of the terms of such Indebtedness or a Debt Compromise or (ii) any payment, retirement or discharge of Indebtedness out of the Company's cash, cash equivalents, capital resources or proceeds of sale of any business or asset that is not part of a Transaction.

The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

Section 5     Credit.  Rothschild shall credit against the Recapitalization Fee: (a) 100% of the Monthly Fees paid for periods commencing on January 1, 2010 and thereafter (the "Monthly Fee Credit"); (b) 50% of any New Capital Fees paid (the "New Capital Fee Credit"); and (c) 100% of any Credit Facility Amendment Fee paid (the "Credit Facility Amendment Fee Credit"), provided that the sum of any Monthly Fee Credit, New Capital Fee Credit and Credit Facility Amendment Fee Credit shall not exceed the Recapitalization Fee.  The Monthly Fee Credit, to the extent not otherwise credited hereunder, shall be applied to any New Capital Fee, provided that no credits contemplated hereby will reduce the fee otherwise payable hereunder below zero.

Section 6     Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its customary and reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel(without the requirement that the retention of such counsel be approved by the Bankruptcy Court), provided, however, that Counsel Charges prior to commencement of any Bankruptcy Case in excess of $25,000 (the "Counsel Amount") shall be subject to the Company's prior approval, not to be unreasonably withheld or delayed (except that, in the event that the Company commences a Bankruptcy Case, up to $25,000 of reasonable Counsel Charges for the preparation of papers supporting Rothschild's retention as herein contemplated shall not count against the Counsel Amount).  Customary and reasonable expenses shall also include, but not be limited to, reasonable expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.  If a

#393491

Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.

Section 7    Indemnity.    The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons. Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8    Term.    The term of Rothschild's engagement shall commence on the date hereof and shall extend until the consummation of a Transaction. This Agreement may be terminated by either party at any time by thirty (30) days advance notice in writing. If terminated, (a) Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 6 and (b) Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(a) hereof); provided, that the final Monthly Fee will be pro-rated to the termination date for any incomplete monthly period of service. Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A. Without limiting any of the foregoing, the Recapitalization Fee, the Credit Facility Amendment Fee and the New Capital Fee shall be payable in the event that (a) as applicable, a Transaction, a Credit Facility Amendment or a New Capital Raise, is consummated at any time prior to the expiration of nine (9) months after such termination, or (b) a letter of intent or definitive agreement with respect thereto is executed at any time prior to nine (9) months after such termination (which letter of intent or definitive agreement subsequently results in the consummation of a Transaction, Credit Facility Amendment or a New Capital Raise, as applicable, at any time), in each case (x) as to which Rothschild advised the Company hereunder prior to the termination of this Agreement or (y) which involves a party identified to the Company by Rothschild or with whom the Company had discussions regarding a Transaction, a Credit Facility Amendment or a New Capital Raise, as applicable, in each case during the term of Rothschild's engagement hereunder, provided, however, that no Recapitalization Fee, Credit Facility Amendment Fee or New Capital Fee shall be payable under this Section 8 if Rothschild terminates its engagement hereunder for any reason other than the Company's material breach hereof or if the Company terminates Rothschild's engagement hereunder for Rothschild's bad faith or gross negligence.

Section 9    Miscellaneous.

(a)    *Administrative Expense Priority*.    In a Bankruptcy Case of the Company or any of its direct or indirect subsidiaries, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and

indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use reasonable best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)     *Survival, Successors & Assigns.* Sections 4 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns. The Company shall use reasonable best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)     *Benefit of Agreement; No Reliance by Third Parties; Etc.* The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild. In addition, the Company agrees that it will not, and will not permit any of its affiliates to, make any public reference to Rothschild except with the prior consent of Rothschild or as otherwise provided in this Agreement. No person other than the Company (or its successors or assigns), including without limitation the Present Shareholders or any of their respective affiliates or representatives, will have any liability or obligation to Rothschild or any Indemnified Party hereunder.

(d)     *Nature of Relationship.* The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary



capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e)    *Rothschild Affiliates.*    Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities").    None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby. The Affiliated Entities are involved in a wide range of investment banking and other activities.  Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities.  Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's responsibilities to the Company hereunder.  None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f)    *Required Information.*    Since Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may request, to enable it to comply with applicable law.  For your information, Rothschild may also screen the Company against various databases to verify its identity.

(g)    *Public Announcements.*    The Company acknowledges that Rothschild may at its option and expense, after public announcement of a Transaction, a Credit Facility Amendment or a New Capital Raise, place announcements and advertisements or otherwise publicize the Transaction or the New Capital Raise in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the Company in connection with such transaction.    The Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities.

(h)    *CHOICE OF LAW: JURISDICTION.*    THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICT OF LAWS.    REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL



PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT ITS GENERAL COUNSEL SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF AT THE ADDRESS INDICATED ON PAGE 1 HEREOF.

(i)     *Waiver of Jury Trial.*  Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(j)     *Entire Agreement.*  This Agreement, including the exhibit(s) hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(k)     *Authority.*  Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A attached hereto and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given

Penton Media, Inc.
As of August 1, 2009
Page 12



by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

(l)     *Counterparts.* This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

(m)     *Notices.* Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth on Page 1 above, Attn: General Counsel, and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Neil A. Augustine with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: General Counsel.

***** ***** *****



If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _____

Neil A. Augustine
Managing Director

Date:_____

Accepted and Agreed to as of
the date first written above on
behalf of itself and its direct
and indirect subsidiaries:

PENTON MEDIA, INC.

By: _____

Sharon Rowlands
Chief Executive Officer

Date:____2.03.10_____

# Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction or other transaction; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose because of the gross negligence, willful misconduct or fraud of any Indemnified Party. If multiple claims are brought against an Indemnified Party, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or award against such Indemnified Party shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that it, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of an Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such Action or

(b) unless and only to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses. The Company shall, if requested by Rothschild, and in all events may (subject to the limitations set forth herein) assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use reasonable best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

## EXHIBIT B

## Declaration of Neil A. Augustine

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11
                                        :
Penton Business Media Holdings, Inc., *et al.,*[1]  :  Case No. 10-10689 (AJG)
                                        :
                      Debtors           :    (Jointly Administered)
                                        :
-------------------------------------------------------------x
```

### DECLARATION OF NEIL A. AUGUSTINE IN SUPPORT OF THE APPLICATION OF DEBTORS TO RETAIN AND EMPLOY ROTHSCHILD AS FINANCIAL ADVISOR AND INVESTMENT BANKER *NUNC PRO TUNC* AS OF THE PETITION DATE

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), Neil A. Augustine declares:

1.      I am a Managing Director of the firm Rothschild ("Rothschild" or

the "Firm"),[2] which has its principal office at 1251 Avenue of the Americas, New York, New

York 10020.  I am authorized to execute this declaration on behalf of Rothschild.  Unless

otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.[3]

2.      This declaration is being submitted in connection with the proposed

employment and retention of Rothschild as financial advisor and investment banker to the above-

captioned debtors and debtors in possession (collectively, the "Debtors") to perform services as

set forth in the Application of Debtors to Retain and Employ Rothschild as Financial Advisor

---

[1]     The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Penton Business Media Holdings, Inc. (9837); Penton Media, Inc. (5386); Penton Business Media, Inc. (1277); Duke Communications International, Inc. (7904); Duke Investments, Inc. (2160); DVGM & Associates (5363); Internet World Media, Inc. (5519); Penton Business Media Internet, Inc. (8290); and Penton Business Media Publications, Inc. (8292).

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

[3]     Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Rothschild and are based on information provided by them.

and Investment Banker <u>Nunc</u> <u>Pro</u> <u>Tunc</u> as of the Petition Date (the "<u>Application</u>").  I submit this Declaration in compliance with sections 105, 327, 328 and 1107(a) of the Bankruptcy Code and to provide the disclosure required under Rule 2014(a), 2016 and 5002 of the Bankruptcy Rules and Rule 2014-1 of the Local Rules.

### <u>Rothschild's Qualifications</u>

3.      Rothschild has extensive experience and an excellent reputation in providing high quality financial advisory and investment banking services to debtors and creditors in chapter 11 cases and other restructurings.

4.      Rothschild is a member of one of the world's leading independent investment banking groups, with more than forty (40) offices in more than thirty (30) countries, including an office located at 1251 Avenue of the Americas, New York, New York 10020. Rothschild has expertise in domestic and cross-border restructurings, mergers and acquisitions, privatization advice, and other investment banking and financial advisory services.  A private firm with approximately 220 employees in the United States and offices in New York and Washington, D.C., Rothschild is experienced in providing high quality investment banking and financial advisory services to financially troubled companies.  Rothschild is an experienced bankruptcy and restructuring advisor to debtors, bondholders, creditors' committees, single creditor classes and secured creditors in a variety of industries.  Rothschild is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operating restructurings.  Moreover, Rothschild is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

5.      Rothschild and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases.  Rothschild's business reorganization professionals

have served as financial advisor and investment banker in numerous cases, including, among others:  Atlantic Express Transportation Group, Barney's, Inc., Bedford Fair Industries, BHM Technologies Holdings, Inc., Bradlees', Inc., Cadence Innovation LLC, Circuit City Stores, Inc., Comdisco, Inc., Crown Vantage, Inc., Delphi Corporation, Edison Brothers Stores, Inc., Fairpoint Communications, Inc., Federal Mogul Corp., Friedman's, Inc., Geneva Steel Company, Globe Manufacturing, Guilford Mills, Inc., Heartland Steel, HomePlace, Inc., Hilex Poly Co. LLC, International Wire Group, James River Coal Company, Key Plastics LLC, La Roche Industries, Inc., Leiner Health Products, Inc., Metromedia International Group, Inc., Milacron Inc., Motor Coach Industries, Inc., Mpower Holdings Corp., New World Pasta Company, Northwest Airlines, Inc., Oxford Automotive, Inc., Pacific Gas & Electric Company, PPI Holdings, Inc., Recycled Paper Greetings, Inc., Remy Worldwide Holdings, Inc., Sea Launch Co., LLC, Service Merchandise Corp., Special Metals Corporation, Solutia, Inc., Superior Telecom Inc., Sun-Times Media Group, Inc., The FINOVA Group Inc., Thermadyne Holdings Corp., Thorn Apple Valley, Inc., Tower Automotive, Trans World Airlines, Trident Resources Corp., Today's Man, Inc., Tronox Inc., UAL Corporation, VeraSun Energy Corporation, Viasystems Group, Inc., Visteon Corp., WestPoint Stevens, Inc., Werner Holding Company, Wilcox & Gibbs, Inc. and Zenith Electronics, Inc.

6.     The resources, capabilities and experience of Rothschild in advising the Debtors are crucial to the Debtors' chapter 11 strategy.  An experienced financial advisor and investment banker fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  The Debtors require the services of a capable and experienced financial advisor and investment banker such as Rothschild.

7.    Since its retention on August 1, 2010 and up to the Petition Date, Rothschild provided extensive pre-petition services to the Debtors in preparation for the Debtors' restructuring efforts, including assisting management in developing a long-range business plan, conducting extensive meetings and negotiations with the various parties in interest, facilitating extensive diligence for the various parties in interest, developing the Debtors' prepackaged plan of reorganization (the "Plan"), assisting in developing a communications plan and providing additional financial advisory and investment banking services in preparation for the filing of these chapter 11 cases.

8.    As a result of the prepetition work performed on behalf of the Debtors, Rothschild has acquired significant knowledge of the Debtors and its businesses and is intimately familiar with the Debtors' financial affairs, debt structure, operations and related matters.  In providing prepetition services to the Debtors, Rothschild has worked closely with the Debtors' senior management and their other advisors and has familiarity with the other major stakeholders that will be involved in these chapter 11 cases.  Accordingly, Rothschild has developed relevant experience and expertise regarding the Debtors that (a) make Rothschild a natural selection as the Debtors' financial advisor and investment banker and (b) will assist Rothschild in providing effective and efficient services in these chapter 11 cases.

9.    Rothschild believes that the services will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 Cases.  Specifically, Rothschild will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

### Professional Compensation

10.    In consideration of the services to be provided by Rothschild, and as more fully described in the Engagement Letter, subject to this Court's approval the Debtors have

agreed to pay Rothschild the proposed compensation set forth in the Engagement Letter (the

"Fee and Expense Structure"):[4]

> a. Monthly Fee. A Monthly Fee of $200,000, payable on the first day of each month;
>
> b. Recapitalization Fee. Upon the consummation of a Transaction equal to $4.5 million; provided that the Recapitalization Fee shall equal $3.5 million, in the event that such Transaction is consummated "out-of-court" or as part of a "prepackaged" Plan in which the necessary votes were solicited and obtained in order to confirm a Plan prior to the commencement of a Bankruptcy Case; and
>
> c. New Capital Fee. A fee equal to (i) 1.0% of the face amount of any senior secured debt raised by the Debtors including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any junior secured debt raised by the Debtors; (iii) 3.0% of the face amount of any unsecured debt raised by the Debtors and (iv) 5.0% of any equity capital, or capital convertible into equity, raised by the Debtors. The New Capital Fee will be payable upon the closing of the transaction by which the new capital is committed. Rothschild will be entitled to the New Capital Fee only if it acts as an underwriter, placement agent or arranger of, or manages an organized process for a New Capital Raise. A New Capital Fee will be earned and payable only on debt where the Debtors receive new liquidity from parties who are not, and whose affiliates are not, currently existing equity holders, lenders or other creditors of the Debtors.

11.     Rothschild will credit against the Recapitalization Fee: (a) 100% of the

Monthly Fees paid for periods commencing on January 1, 2010 and thereafter; (b) 50% of any

New Capital Fees paid; and (c) 100% of any Credit Facility Amendment Fee paid, provided that

the sum of any such credits shall not exceed the Recapitalization Fee.

12.     Pursuant to the Engagement Letter, the Debtors have agreed to reimburse

Rothschild for all out-of-pocket expenses reasonably incurred by Rothschild in connection with

the matters contemplated by the Engagement Letter, including, without limitation, reasonable

fees, disbursements, and charges of Rothschild's counsel. Reasonable expenses will also include,

---

[4] The Credit Facility Amendment Fee described in the Engagement Letter is no longer earnable.

but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research, and courier services. Rothschild believes that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Rothschild for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and Rothschild in the Engagement Letter.

13. The Fee and Expense Structure summarized above and described fully in the Engagement Letter is consistent with Rothschild's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out-of-court, involving the services to be provided in connection with these chapter 11 cases. The Fee and Expense Structure is consistent with and typical of arrangements entered into by Rothschild and other financial advisors and investment bankers firms of comparable standing in connection with the rendering of similar services to clients such as the Debtors. Rothschild and the Debtors believe that the Fee and Expense Structure is both reasonable and market-based.

14. To induce Rothschild to do business with the Debtors, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Rothschild has undertaken and expects to undertake and to account for the potential for an unfavorable outcome as a result of factors outside of Rothschild's control.

15. Rothschild's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Rothschild's engagement hereunder, were important factors in determining the Fee and Expense Structure, and that the ultimate benefit to the Debtors

derived from the services provided by Rothschild hereunder can not be measured by a reference to the number of hours expended by Rothschild's professionals.

16.     It is not the general practice of investment banking firms, including Rothschild, to keep detailed time records similar to those customarily kept by attorneys. Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for its professionals, Rothschild should, pursuant to Local Rule 2016-2(g), be excused from compliance with such requirements and should only be required to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

17.     Rothschild will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Rothschild's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

18.     The Fee and Expense Structure (including the Recapitalization Fee) has been agreed upon in anticipation that a substantial commitment of professional time and effort will be required of Rothschild and its professionals and in light of the fact that (a) such commitment may foreclose other opportunities for Rothschild and (b) the actual time and commitment required of Rothschild and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for Rothschild.

## Rothschild's Disinterestedness

19.     In connection with its proposed retention by the Debtors in these chapter 11 cases, Rothschild undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse

to the Debtors.  Specifically, Rothschild obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest"), and such parties are listed on Schedule 1 annexed hereto.

20.     To the best of my knowledge and belief, Rothschild has not represented any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these Chapter 11 Cases except as set forth herein and in Schedule 2 attached hereto.

21.     During the 90 days immediately preceding the Petition Date, Rothschild received the following payments in connection with both the prepetition engagement and Rothschild's current engagement under the Engagement Letter:  Rothschild received fee payments totaling $1,400,000.00 and expense reimbursement payments totaling $53,347.80, which includes $25,000 paid on account of anticipated expenses.  Other than as set forth herein, Rothschild did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

22.     Within one year prior to the Petition Date, the Debtors paid Rothschild $1,500,000.00 in fees and $62,453.96 in expense reimbursements for services rendered in connection with both the prepetition engagement and with Rothschild's engagement under the Engagement Letter.[5]

23.     Rothschild provides financial advice and investment banking services to an array of clients in the areas of restructuring and distressed debt.  As a result, Rothschild has represented, and may in the future represent, certain Potential Parties in Interest in matters

---

[5]     The amounts in this paragraph include $100,000.00 in fees and $9,106.16 in expense reimbursements for preliminary financial advisory services rendered prior to the date of the Engagement Letter.

unrelated to these Chapter 11 Cases, either individually or as part of representation of a committee of creditors or interest holders. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these representations are adverse to the Debtors' interests.

        24.     To the best of my knowledge and belief, neither Rothschild nor I, nor any other employee of Rothschild that will work on the Debtors' engagement has any connection with or holds any interest adverse to the Debtors, their estates or the Potential Parties in Interest in matters related to Rothschild retention in these Chapter 11 Cases, except (i) as set forth in Schedule 2 and (ii) as otherwise set forth below:

      a.     Rothschild is a large investment banking firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors, and who may be creditors of the Debtors. To the best of my knowledge, information and belief, Rothschild's services to these parties were and are wholly unrelated to the Debtors, their estates or these Chapter 11 Cases.

      b.     As part of its practice, Rothschild appears in numerous cases, proceedings, and transactions involving many different professionals, some of which may represent claimants and parties in interest in the Debtors' Chapter 11 Cases. Furthermore, Rothschild has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to the Debtors herein in matters upon which Rothschild is to be engaged.

      c.     Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities"). However, none of the Affiliated Entities is being retained in connection with this engagement and none of the professionals or employees of the Affiliated Entities will provide services to the Debtors in connection with this engagement. None of the professionals or employees of Rothschild has discussed or will discuss the Debtors' cases with any professional or employee of the Affiliated Entities. Thus, there has not been and will not be any flow of information between Rothschild and any

Affiliated Entity with respect to any matter pertaining to the Debtors or their Chapter 11 Cases. Rothschild can make no representation as to the disinterestedness of the professionals or employees of the Affiliated Entities in respect of the Debtors' Chapter 11 Cases.

25.     To the best of my knowledge, no individual assignment referenced on Schedule 2 currently accounts for more than 1.5% of Rothschild's gross annual revenues.

26.     To the best of my knowledge, information, and belief, except as described herein, Rothschild has not been retained to assist any entity or person other than the Debtors on matters relating to these Chapter 11 Cases. Rothschild will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or Interested Parties in these Chapter 11 Cases; provided that such services do not relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

27.     If any new relevant facts or relationships are discovered or arise during the pendency of these Chapter 11 Cases, Rothschild will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit as required by Bankruptcy Rule 2014.

28.     I am not related or connected to and, to the best of my knowledge, no other professional of Rothschild who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Southern District of New York, any of the District Judges for the Southern District of New York who handle bankruptcy cases, or any employee in the Office of the United States Trustee for the Southern District of New York.

29.     To the best of my knowledge, Rothschild has no agreement with any other entity to share with such entity any compensation received by Rothschild in connection with the Debtors' bankruptcy cases.

30.     Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of Rothschild, I, nor any employee of Rothschild who will work on the engagement holds or represents any interest adverse to the Debtors or their estates, and Rothschild is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14), as modified by § 1107(b) of the Bankruptcy Code, in that Rothschild, and its professionals and employees who will work on the engagement:

a.     are not creditors, equity security holders, or insiders of the Debtors;

b.     were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

c.     do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors, or for any other reason.

31.     If Rothschild discovers additional information that requires disclosure, Rothschild promptly will file a supplemental disclosure with the Court as required by Bankruptcy Rule 2014.

32.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Dated: February 12, 2010
        New York, New York              /s/ Neil A. Augustine
                                        Neil A. Augustine
                                        Managing Director
                                        Rothschild Inc.
                                        1251 Avenue of the Americas,
                                        New York, New York 10020

<u>**SCHEDULE 1 TO THE DECLARATION**</u>

**Potential Parties in Interest**

<u>**Debtors**</u>

Duke Communications International, Inc.
Duke Investments, Inc.
DVGM & Associates
Internet World Media, Inc.
Penton Business Media Holdings, Inc.
Penton Business Media Internet, Inc.
Penton Business Media Publications, Inc.
Penton Business Media, Inc.
Penton Media, Inc.

<u>**Nondebtor Affiliates**</u>

Canadian Red Book, Inc.
Penton Business Media Holdings LLC
Penton Media Asia Limited (Hong Kong)
Penton Media Australia Pty Ltd.
Penton Media Canada, Inc.
Penton Media France (SAS)
Penton Media Holdings Limited (UK)
Penton Media, S. de R.L. de C.V. (Mexico)
Penton Communications Europe Limited (UK)

<u>**Trade Names and Publication Names**</u>

Air Transport World and IndustryWeek Sales
ASP/VS Connections Fall
ASP/VS Connections Spring
Baking Management
Contractor (publication)
Convenience Store Decisions
Donohue Meehan Publishing Company
Duke Communications Europe Ltd.
Exchange Connections Fall
Exchange Connections Spring
Expansion Management (publication)
Food Management (publication)
Functional Food & Nutraceuticals (publication)
Healthwell.com, Inc.
IP Mirror Pte Ltd.
Logistics Today (publication)
Material Handling Management (publication)
MCV Group LLC
Metal Producing & Processing (publication)
Modern Baking (publication)
Natural Foods Merchandiser (publication)
Natural Products Expo East
Natural Products Expo West

Nutritional Business Journal
One, Inc.
PBI Media, Inc.
Penton Internet, Inc.
Penton IT Media Group
PMI Three, Inc.
PMI Two, Inc.
SQL Server Magazine
SQL Server Magazine LIVE Fall
SQL Server Magazine LIVE Spring
Stardust.com, Inc.
Supply Expo
Tech Conferences, Inc.

<u>**Directors, Officers and Senior Management**</u>

Anup Bagaria
Barrett Gilmer
Beverly Chell
Bob MacArthur
Dan Bagan
Elise Zealand
Fred Linder
Jean Clifton
Kurt Nelson
Michael Struble
Sharon Rowlands
Tyler Zachem
William T. Kerr

<u>**Former Directors**</u>

Andrew Spring
George Majoros
Jesse DuBey
John French
Tim Billings

<u>**Major Business Affiliates of Directors, Officers and Senior Management**</u>

Meredith Corporation
MidOcean Partners
Providence Equity, Inc.
Wasserstein & Company

## Equity Security Holders

Apollo Investment Corporation
BlackRock Kelso Capital Corporation
Don Soetar
GE Capital Equity Investments, Inc.
Lexington Partners
Margaret Pederson
MidOcean-Penton, L.P.
MidOcean Partners III, L.P.
MidOcean Partners III-A, L.P.
MidOcean Partners III-D, L.P.
Plainfield Offshore Holdings IV Inc.
U.S. Equity Partners II, L.P.
U.S. Equity Partners II (Offshore), L.P.
U.S. Equity Partners II (U.S. Parallel), L.P.
USEP II Co-Investment Partners LLC

## Counterparties to Material Contracts with the Debtors

A to Z [Billing software license]
Accela
Advantage Computing Systems
ADP Payroll Processing Services
Aequor Technologies, Inc.
Anaheim Convention Center
Anaheim CVB
Bleuchip International Corporation
Brown Printing Company
Boston CVB
Cadmus Communications
Cadmus Specialty Publications
Catalog Vision
Ceridian Corporation
CompareNetworks, Inc.
Computer Sciences Corporation
Convention Data Services, Inc.
Copyright Clearance Center
Data Depth Corporation
Delta Printing Solutions
DemandBase, Inc.
EBSCO Casias, Inc.
EMedia Asia Limited
EPrize LLC
Factiva
Foster Printing Services, Inc.
Freeman Companies
Freeman Decorating Services, Inc.
Fry Communications, Inc.
GES Exposition Services, Inc.
Glasberg (Broadcast, Engineering, Millimeter, Video Systems)
Google, Inc.
Great Lakes Lithograph, Inc.
Hallmark Data Systems LLC

HP (Hewlett-Packard)
HUGE LLC
HW Wilson Company
iCopyright, Inc.
InfoUSA
InfoUSA Company
InfoUSA, Inc.
Intertec Publishing
Kontera Technologies, Inc.
JPMorgan Chase Bank, N.A.
Las Vegas Convention and Visitors Authority
LexisNexis Academic & Library Solutions
LexisNexis Group
Macrovision Corporation
Madison Logic
Marketwatch
Media Services Group
MediaBrains, Inc.
NAPC
National Archive Publishing Company
New Edge Corporation
NewCentury Marketing Services, Inc.
OfficeMax Incorporated
On24, Inc.
Open Systems (American Printer and PFFC)
Oxcyon, Inc.
PARTsolutions LLC
Premiere Global Conferencing
Proquest Information and Learning Company
Quebecor World (USA) Inc.
Quebecor World Book Services LLC
Responsive Database Services, Inc.
R.R. Donnelley & Sons Company
San Francisco Marketing Group, Inc.
ScreamingMedia Inc.
Smart Warehouse LLC
Smart Warehousing LLC
SmartSource
SR Music Company
SRM Company
The BBN Networks, Inc.
The Gale Group
The Pedowitz Group
Travel Planners, Inc.
Travel Technology Group, Ltd.
UBS, AG
United Parcel Service, Inc.
VM Ware
Walter Karl, Inc.
Yesmail, Inc.

## Real Property Lessors

330 N. Wabash Avenue LLC
45 Eisenhower Venture LLC
500 Lafayette Boulevard Partnership

61 Southward Street Limited
9800 Associates LLC
Alice Henderson Realty & Rentals
Arden Realty Finance IV LLC
ARI Powers Ferry Office Park LLC
BDN Brokerage LLC
Blair Office Building LLC
Boatmen's First National Bank of Kansas City and
    Mary Louise Greene
Branhaven Properties LLC
Bre/Southfield LLC
Bre/Wabash LLC
CB Richard Ellis Management Office
Continental Offices, Ltd.
Crystal Building LLC
Duane Street Venture
ECI Sunset LLC
Ethel Pronin
Fidelity National Information Solutions, Inc.
GF 47 LLC
H.F.H., Ltd.
Harper Construction & Leasing Company
Hillendale Associates
K/B Fund IV
Karbank-119 LLC
Matador-Orchard LLC
Metropolitan Life Insurance Company
New Boston Fawcett Limited Partnership
New York Life Insurance Company
Pine Associates, Inc.
Pine Associates LLC
Pine Realty, Inc.
Reed Elsevier, Inc.
River Bend Executive Center, Inc.
State of California Public Employees' Retirement
    Fund System
Sterling Superior LLC
The Concourse Limited Partnership
The Nielsen Company
Wabash Avenue LLC
Wade C. Boylan
Westbrook Development, Inc.
WHTRI Real Estate Limited Partnership
Woodland Investments, L.P.

**Depository and Disbursement Banks**

Bank of America, N.A.
CitiBank, N.A.
Deutsche Bank AG
First National Bank [of Loveland, Colorado]
Huntington Bank
JP Morgan Chase
LaSalle Bank, N.A.
National City Bank
Scotiabank (a/k/a The Bank of Nova Scotia)

UBS AG
UBS Financial Services LLC
Wells Fargo Bank, N.A.

**Utility Companies**

AT&T, Inc.
AT&T Mobility
Atmos Energy
Citizens Gas And Coke Utility
Clarksdale Public Utilities
Cleveland Thermal
Columbia Gas Of Virginia
Connecticut Light And Power
Dominion Virginia Power
Illuminating Company (Akron, Ohio)
Indianapolis Power And Light Company
Indianapolis Water Company
Kansas Gas
Kansas City Power & Light
Level 3-ICG
NSTAR Electric
Pacific Gas And Electric
Propane Corporation
Qwest
Sprint
The Illuminating Company
Verizon
Verizon Business
Verizon Wireless
Water District #1 (Kansas City, MO)

**Prepetition Secured Lenders**

ACK LLC(subsidiary of Allied Capital)
Aladdin Capital
Alcentra, Inc.
Allied Irish Banks, plc
Aozora Bank, Ltd.
Apidos Capital Management LLC
Apollo Investment Management, L.P.
Babson Capital
Black Diamond Capital Management LLC
BlackRock Financial Management
BlackRock Kelso Capital Advisors LLC
Callidus Capital Mangement LLC
Canaras Capital Management LLC
Cerberus Associates LLC
CIT Lending Services Corporation
Columbus Nova Credit Investments Management
    LLC
Credit Suisse Loan Funding LLC
CSFB
DiMaio Ahmad Capital LLC
Eaton Vance Corporation
First Interstate Bank of Fort Collins, N.A.

Fortis Investment Management USA, Inc.
General Electric Capital Corporation
Goldman Sachs Asset Manager, L.P.
GSC Partners
Halcyon Restructuring Fund, L.P.
Hartford Investment Management Company
Hillmark Capital Management, L.P.
IBM Credit LLC
ING Investments LLC
IOS Capital
Jefferies Capital Management
JP Morgan Chase Bank, N.A.
JPMorgan
Kayne Anderson
Levine Leichtman
Loomis, Sayles and Company, L.P.
MJX Asset Management LLC
Morgan Stanley Investment Management, Inc.
Natixis
Navigare Partners LLC
Navigator Funds
New York Life Insurance Company
Nomura Corporate Research and Asset Management,
    Inc.
Oppenheimer Funds
Ore Hill Partners LLC
ORIX Capital Markets LLC
Pennant SPV Company LLC
Pioneer Investment Management
Plainfield Asset Management
PPM America, Inc.
Primus Asset Management
Putnam Investments
Rabobank International
RiverSource Investments LLC
Satellite Asset Management
Stone Tower Capital
Symphony Asset Management
The Governor and Company of the Bank of Ireland
Toronto Dominion (Texas) LLC
UBS
UBS Loan Finance LLC
WhiteHorse Capital Partners, L.P.
Wells Fargo Foothill, Inc.
WS Partners LLC

**Other Secured Parties**

Cisco Systems Capital Corporation
First Interstate Bank of Fort Collins, N.A.
Xerox Capital Services LLC

**Insurers**

AIG
American Guarantee and Liability Insurance
    Company
Chubb Insurance
Continental Casualty Company
Executive Risk Specialty Insurance Company
Farmington Casualty Company
Federal Insurance Company
Great Northern Insurance Company
Hiscox, Inc.
John Buttine Inc.
Liberty Mutual Group
Lloyd's of London – Beazley Syndicate
Marsh USA, Inc.
National Union Fire Insurance Company
Ohio Casualty Insurance Company
Safety National Casualty Corporation
St. Paul Travelers
St. Paul Fire & Marine Insurance Company
State National Insurance Company
Travelers
Underwriters at Lloyd's London
Vigilant Insurance Company
Wells Fargo Ins. Serv. of MN, Inc.

**Parties in Litigation with the Debtors**

CE Design, Ltd.

**Major Vendors and Customers**

9800 Associates LLC
A T Clayton and Company, Inc.
A2Z
American Express Company
American Pacesetters Enterprises LLC
AMR International Consulting, Inc.
Arlington Industries, Inc.
Arpin Associates
Automation Direct
Baldor Electric Company
Bamboo Cricket (Email Response Systems, Inc.)
BleuChip International
Bock and Associates
BPA Worldwide Inc.
Butterflies and Castles, Inc.
CB Richard Ellis Management Office
Ceridian Benefit Services
CDW Corporation
Clickability
CIGNA Healthcare
Cisco Systems Capital Corporation
Cisco Systems, Inc.
City of Cleveland-Division of Water

City of Tampa
CompuSystems, Inc.
Contrino Direct Marketing
Consonus
Deere & Company
Dell, Inc.
Delta & Pine Land Company
Delta Printing Solutions, Inc.
Digi-Key
DoubleClick, Inc.
Eastridge Temp Service
Eloqua
ESP Computer Services
Fattai, Inc.
Fidelity Investments
Gaylord Resort and Convention Center
General Mills, Inc.
Hallmark Data Systems LLC
Helena Chemical Company
Hewlett-Packard Company
IBM Corporation - Commercial Desktop
Intelligent Data Services
Intellitarget Marketing, Inc.
Intervet, Inc.
Iron Mountain
Kraft Foods, Inc.
Lester, Inc.
List Strategies, Inc.
Mack Trucks, Inc.
Microsoft Corporation
Marriott International
Merit Direct
Monsanto
MSG
National Instruments
Neospire
New York Life Investment Management LLC
Numara
Omega Engineering, Inc.
Omniture
Oracle
Orange County Convention Center
Paris Hotel
Pomeroy
Prudential Financial
PricewaterhouseCoopers LLP
Publishers Advantage
Quebecor World
Quadgraphics, Inc.
R.R. Donnelley Receivables, Inc.
R2 Integrated
Reed Elsevier, Inc. (d/b/a Reed Business Information)
Royle Printing
Salesforce.com
Smart Warehousing LLC

Sperian Protection USA
Sprouts Farmers Market
Stellar Distribution Services, Inc.
Taxware
Texterity
The Cleveland Museum Of Art
U.S. Postal Service
Unisfair
United Parcel Service
Verizon
Verizon Business
Verizon Wireless
Wakefern Food Corporation
Wells Fargo Advisors
Worldcolor USA Corporation
ZMags Corporation

**Largest Unsecured Creditors**

A T Clayton and Company, Inc.
American Pacesetters Enterprises LLC
Arpin Associates
Biocompare
Bleuchip International
Bock and Associates
Brown Printing Company
California Marketing
CDW Direct LLC
Cigna Life Insurance Company of New York
Cisco Systems Capital Corporation
City of Anaheim, California
City of Tampa, Florida
CompuSystems, Inc.
Conde Nast Publications
Convention Data Systems
Curley Direct Mail
Deloitte Tax LLP
Email Response Systems, Inc.
eMediaAdvantage LLC
ePrize LLC
Foster Printing Services, Inc.
Graven Austin and Drake, In.c
Hallmark Data Systems LLC
InfoUSA
Inquiry Management Systems, Inc.
Lester, Inc.
Mandalay Bay Resort and Casino
Massachusetts Convention Center Authority
Moose Direct Marketing
Neospire, Inc.
On24, Inc.
Print Time
PSAV Presentation Services
Quadgraphics, Inc.
R.R. Donnelley Receivables, Inc.
Reed Elsevier Inc. (d/b/a Reed Business Information)

Riverbend Executive Center, Inc.
Smart Source Computer & Audio Visual
Synergetic Audio Concepts, Inc.
TechWeb
Telelinx, Inc.
Three Z Printing Company
TMS – Transportation Management Services
Unisfair
United Parcel Service, Inc.
Walter Karl, Inc.
Worldcolor USA Corporation
YesMail Canada
ZippyDogs, LLC

Deloitte Tax LLP
Duff & Phelps
Flaster/Greenberg, P.C.
Gideon & Associates, Inc.
JIW Consulting
John M. Schmarr
Karaahmetoglu, Luz & Greenberg Firm, LLP
Law Offices of Rumi Engineer
New York Life Investment Management LLC
Plante & Moran PLLC
PricewaterhouseCoopers LLP
Thompson Coburn LLP
Zion, Synek & Associates, Inc.

**<u>Debtors' Professionals and Consultants</u>**

Axiom Law
Brune & Richard LLP
Davis and Gilbert

**<u>SCHEDULE 2 TO THE DECLARATION</u>**

**Relationships With Potential Parties in Interest**

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| AIG | AIG | Former RINC Client on matters unrelated to Penton. |
| Alcentra, Inc. | Alcentra | RINC affiliate was involved in a transaction unrelated to Penton where Alcentra was an interested party. |
| Allied Irish Banks, PLC | Allied Irish Banks | Client pitch by RINC on matters unrelated to Penton. |
| American Express Company | American Express Company | RINC Vendor. |
| Apollo Investment Management L.P.; Apollo Investment Corporation | Apollo Advisors; Apollo Management | Apollo Advisors was a former client of RINC on matters unrelated to Penton.

Client pitches by RINC to Apollo Management on matters unrelated to Penton. |
| AT & T Inc. | AT &T | Client pitches by RINC on matters unrelated to Penton.

RINC was involved in several unrelated transactions where AT & T was listed as a participant all of which were unrelated to Penton. |
| Bank of America, N.A. | Bank of America Capital Investors | Client pitch by RINC on matters unrelated to Penton. |
| Bank of Nova Scotia; Scotia Bank | Bank of Nova Scotia | Client pitches by RINC on matters unrelated to Penton. |
| BlackRock Financial Management; BlackRock Kelso Capital Corporation | BlackRock; BlackRock Financial Management Inc. | Client pitch by RINC to BlackRock on matters unrelated to Penton. |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| | | RINC is representing an Ad Hoc Committee of Bondholders where BlackRock Financial Management Inc. is listed as a participant. The matter is unrelated to Penton. |
| CDW Corporation | CDW | RINC Vendor. |
| Cerberus Associates LLC | Cerberus Capital Management LP; Cerberus Group LP; Cerberus US | Cerberus Capital Management LP has been a client of RINC on matters unrelated to Penton.

Cerberus Group LP has been a client of RINC on matters unrelated to Penton.

Client pitch by RINC to Cerberus US on a matter unrelated to Penton. |
| Ceridian Benefit Services; Ceridian Corporation | Ceridian Benefit Services | RINC Vendor. |
| Chubb Insurance | Chubb | Former Client of RINC affiliate on matters unrelated to Penton.

RINC Vendor |
| CitiBank, N.A. | Citibank | Client pitches by RINC on matters unrelated to Penton. |
| CIT Lending Services Corporation | CIT Lending Services Corporation | CIT Group Inc. is a client of RINC on a matter unrelated to Penton.

An officer of RINC serves as a Board member of CIT Group Inc. |
| Computer Sciences Corporation | Computer Sciences Corporation | Client pitches by RINC on matters unrelated to |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| | | Penton.<br><br>Former Client of RINC affiliate on matters unrelated to Penton. |
| Conde Nast Publications | Conde Nast Publications, Inc. | Client pitch by RINC on matters unrelated to Penton. |
| CSFB; Credit Suisse Loan Funding LLC | CSFB | Former RINC Client on matters unrelated to Penton. |
| Dell, Inc. | Dell | RINC Vendor. |
| Deloitte Tax LLP | Deloitte Consulting<br><br>Deloitte & Touche | Client pitch by RINC on matters unrelated to Penton.<br><br>RINC Vendor. |
| Deutsche Bank AG | Deutsche Bank; Deutsche Bank Asset Management | Client pitches to Deutsche Bank and Deutsche Bank Asset Management on matters unrelated to Penton. |
| DoubleClick, Inc. | DoubleClick, Inc. | Client pitches by RINC on matters unrelated to Penton . |
| Factiva | Factiva | RINC Vendor. |
| Fidelity Investments | Fidelity Investments | RINC is representing an Ad Hoc Committee of Bondholders where Fidelity Investments is listed as a participant. The matter is unrelated to Penton. |
| Fortis Investment Management USA, Inc. | Fortis | RINC was involved in a transaction where Fortis was listed as a participant on a matter unrelated to Penton. |
| GE Capital Equity Investments, Inc.; General Electric Capital Corporation | GE Capital; General Electric Corp. | Client pitches by RINC on matters unrelated to Penton. |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| | | RINC is representing an Ad Hoc Committee of Bondholders where GE is listed as a participant. The matter is unrelated to Penton. |
| Factiva | Factiva | RINC Vendor. |
| General Mills, Inc. | General Mills | Former Client of RINC affiliate on matters unrelated to Penton. |
| Goldman Sachs Asset Manager, L.P.; GSC Partners | Goldman Sachs; GSC Partners | Client pitches by RINC to Goldman Sachs on matters unrelated to Penton. RINC was involved in several transactions unrelated to Penton where Goldman Sachs is listed as a participant.<br><br>RINC was involved in a transaction where GSC Partners was listed as a participant. The matter was unrelated to Penton. |
| Google, Inc. | Google | Client pitch by RINC on matters unrelated to Penton. |
| HP (Hewlet-Packard) | Hewlett Packard – Europe | Client pitches by RINC affiliate on matters unrelated to Penton. RINC affiliate was involved in a transaction unrelated to Penton where HP was listed as a participant. |
| Hiscox, Inc. | Hiscox | Client pitch by RINC on matters unrelated to Penton. |
| ING Investments LLC | ING | Client pitches by RINC affiliate on matters |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| | | unrelated to Penton. RINC was involved in several transactions unrelated to Penton where ING was listed as a participant. |
| Iron Mountain | Iron Mountain | RINC Vendor. |
| JPMorgan Chase Bank, N.A.; JPMorgan Chase | JPMorgan; JPMorgan Asset Management; JP Morgan Asset Management – Infrastructure | JPMorgan and JPMorgan Asset Management are former RINC clients on matters unrelated to Penton.<br><br>Client pitches by RINC to JPMorgan Asset Management – Infrastructure on matters unrelated to Penton.<br><br>JP Morgan is a RINC Vendor. |
| Kraft Foods, Inc. | Kraft Foods | Client pitches by RINC on matters unrelated to Penton. |
| Level 3 – ICG | Level 3 Communications Inc. | Client pitches by RINC on matters unrelated to Penton. |
| Marriott International | Marriot International | Client pitch by RINC on matters unrelated to Penton. |
| Metropolitan Life Insurance Company | Metropolitan Life Insurance Company; Metlife | RINC was involved in a transaction unrelated to Penton where Metropolitan Life Insurance was listed as a participant.<br><br>RINC is representing an Ad Hoc Committee of Bondholders where MetLife is listed as a participant. The matter is |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| | | unrelated to Penton. |
| MidOcean Partners | MidOcean Partners | Former Client of RINC on matters unrelated to Penton. |
| Morgan Stanley Investment Management, Inc. | Morgan Stanley; Morgan Stanley & Co; Morgan Stanley Capital | Client pitches by RINC to Morgan Stanley; Morgan Stanley & Co; Morgan Stanley Capital and Morgan Stanley Infrastructure Fund on matters unrelated to Penton. |
| Natixis | Natixis | Former client of RINC affiliate on matters unrelated to Penton. |
| New York Life Investment Management LLC; New York Life Insurance Company | New York Life | RINC Vendor. |
| Nomura Corporate Research & Asset Management, Inc. | Nomura Asset Management Co. Ltd. | Client pitches by RINC affiliate on matters unrelated to Penton. |
| NSTAR Electric | Nstar | RINC was involved in a transaction where Nstar was listed as a participant in a matter unrelated to Penton. |
| Orix Capital Markets LLC | Orix | Client pitches by RINC affiliate on matters unrelated to Penton. |
| Pacific Gas & Electric | Pacific Gas & Electric Company | Former Client of RINC on matters unrelated to Penton. |
| Pioneer Investment Management | Pioneer Investment Management | RINC is representing an Ad Hoc Committee of Bondholders where Pioneer Investment Management is listed as a participant. The Matter is unrelated to Penton. |
| PricewaterhouseCoopers LLC | PricewaterhouseCoopers LLC | RINC Vendor. |
| Primus Asset Management | Primus | Client pitches by RINC on matters unrelated to |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| | | Penton. |
| Providence Equity, Inc. | Providence Equity | Client pitches by RINC on matters unrelated to Penton. |
| Quebecor World (USA) Inc.; Quebecor World Book Services LLC | Quebecor World Inc. | Client pitches by RINC on matters unrelated to Penton. |
| Qwest | Qwest Communications International | Former Client of RINC on matters unrelated to Penton. |
| Reed Elsevier Inc. (d/b/a Reed Business Information) | Reed Elsevier; Reed Business Information | RINC affiliate was involved in transaction unrelated to Penton where Reed Elsevier was an interested party.<br><br>RINC affiliate was involved in a transaction where Reed Business Information was a target. The matter was unrelated to Penton |
| Rabobank International | Rabobank; Rabobank Group | Former Client of RINC affiliate on matters unrelated to Penton.<br><br>Rabobank Group and Rothschild Group have established a global co-operation agreement in the food and agricultural sectors and are involved in several transactions unrelated to Penton. |
| Sprint | Sprint Corp. | Client pitches by RINC on matters unrelated to Penton. |
| St. Paul Travelers; St. Paul Fire & Marine Insurance Company | St. Paul Companies | RINC affiliate was involved in a transaction where St. Paul Companies was a target. The matter was unrelated to Penton. |
| Toronto Dominion (Texas) LLC | Toronto Dominion | Client pitch by RINC on matters unrelated to |

| Party in Interest | Entity with which Rothschild has a Connection | Nature of Connection |
|---|---|---|
| | | Penton. |
| UBS, AG; UBS; UBS Loan Finance LLC | UBS, AG | Client pitch by RINC on matters unrelated to Penton. |
| United Parcel Service; United Parcel Service Inc. | UPS | Client pitches by RINC on matters unrelated to Penton<br><br>RINC Vendor. |
| U.S. Postal Service | U.S. Postal Service | RINC Vendor. |
| Verizon; Verizon Wireless; Verizon Business | Verizon | Client pitches by RINC on matters unrelated to Penton. |
| Wells Fargo Bank, N.A.; Wells Fargo Foothill, Inc.; Wells Fargo Advisors | Wells Fargo; Wells Fargo Leasing | RINC was involved in a transaction where Wells Fargo Leasing was listed as client and Wells Fargo was listed as a participant in the same matter. The matter was unrelated to Penton. |

**EXHIBIT D**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                        :

In re                                 :     Chapter 11
                                          :

Penton Business Media Holdings, Inc., *et al.*,[1]   :     Case No. 10-10689 (AJG)
                                          :

                      Debtors         :     (Jointly Administered)
                                          :

------------------------------------------------------------x

**ORDER AUTHORIZING THE DEBTORS**
**TO EMPLOY AND RETAIN ROTHSCHILD INC. AS FINANCIAL ADVISOR**
**AND INVESTMENT BANKER *NUNC PRO TUNC* AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above captioned debtors and

debtors in possession (collectively, the "Debtors") for an order, pursuant to sections 327 and

328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended,

the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules for the United States

Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing the

Debtors to employ and retain Rothschild Inc. ("Rothschild") as their financial advisor and

investment banker effective *nunc pro tunc* to May 27, 2009 (the "Petition Date"), pursuant to

the terms of the engagement letter between the Debtors and Rothschild, dated as of August 1,

2009 (the "Engagement Letter"), including the indemnification provisions contained in Exhibit

---

[1]     The Debtors are the following nine entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Penton Business Media Holdings, Inc. (9837); Penton Media, Inc. (5386); Penton Business Media, Inc. (1277); Duke Communications International, Inc. (7904); Duke Investments, Inc. (2160); DVGM & Associates (5363); Internet World Media, Inc. (5519); Penton Business Media Internet, Inc. (8290); and Penton Business Media Publications, Inc. (8292).

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application or the Augustine Declaration.

A thereto), attached to this Order as Exhibit 1; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C § 157(b); and venue being proper before this Court pursuant to 28 U.S.C § 1408 and 1409; and the Court being satisfied that notice of the Application and opportunity for a hearing on the Application was appropriate under the particular circumstances and that no other or further notice need be provided; and the Court having reviewed the Application and determined that the employment of Rothschild by the Debtors is necessary and in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the terms of the Engagement Letter are reasonable terms for purposes of section 328(a) of the Bankruptcy Code; and the Court having considered the declaration of Neil A. Augustine, a Managing Director of Rothschild (the "Augustine Declaration") filed in support of the Application; and the Court being satisfied that Rothschild neither holds nor represents any interest adverse to the Debtors' estates with respect to the matters upon which it is to be employed; and the Court having determined that Rothschild is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND THAT:

1.     The Application is granted as set forth herein, nunc pro tunc to the Petition Date.

2.	The Debtors are authorized, pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, to employ and retain Rothschild as their financial advisor and investment banker in accordance with the terms and conditions set forth in the Engagement Letter, effective nunc pro tunc.

3.	All of Rothschild's compensation set forth in the Engagement Letter, including, without limitation, the Monthly Fee, the Recapitalization Fee, the Credit Facility Amendment Fee and the New Capital Fee, is approved pursuant to section 328(a) of the Bankruptcy Code and Rothschild shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court.

4.	None of the fees payable to Rothschild shall constitute a "bonus" or fee enhancement under applicable law.

5.	The terms of the Engagement Letter are approved in all respects except as limited or modified herein.

6.	Rothschild shall include in its fee applications, among other things, time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-half hour increments, but Rothschild shall be excused from keeping time in one-tenth of an hour increments.

7.     Rothschild is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested in the Application.

8.     In the event Rothschild seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Rothschild's own application and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code.

9.     The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Engagement Letter and will indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (collectively, the "Indemnified Persons"), pursuant to the Engagement Letter and, during the pendency of these chapter 11 cases, subject to the following conditions:

(a)     All requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the Engagement Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court provided, however, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim or expense has resulted from the gross negligence, willful misconduct or fraud on the part of that or any other Indemnified Person; and

(b)     In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Letter if the Debtors, their estates or the official committee of

unsecured creditors assert a claim, to the extent that the Court determines by final order that such claim resulted from the gross negligence, willful misconduct or fraud on the part of that or any other Indemnified Person.

10.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

11.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062 or 9014.

12.    The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

13.    To the extent that this Order is inconsistent with the Engagement Letter, the terms of this Order shall govern.

14.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.


Dated: _____, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

## Engagement Letter

As of August 1, 2009

Ms. Sharon Rowlands
Chief Executive Officer
Penton Media, Inc.
249 West 17th Street
New York, New York 10011



Dear Ms. Rowlands:

This letter (the "Agreement") will confirm the terms and conditions of the agreement between Penton Media, Inc. (collectively with its direct and indirect subsidiaries, the "Company") and Rothschild Inc. ("Rothschild") regarding the retention of Rothschild as financial advisor and investment banker to the Company in connection with a possible Transaction (as defined below) involving the Company.

Section 1    Services to be Rendered. In connection with the formulation, analysis and implementation of various options for a Transaction or any series or combination of Transactions, Rothschild will perform the following services to the extent Rothschild reasonably deems customary and feasible and as reasonably requested by the Company:

(a)    identify and/or initiate potential Transactions;

(b)    review and analyze the Company's assets and the operating and financial strategies of the Company;

(c)    review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(d)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(e)    assist the Company and its other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(f)    determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Transaction;

(g)    advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(h)    review and analyze any proposals the Company receives from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

Rothschild Inc.                                    Neil A. Augustine
1251 Avenue of the Americas                        Managing Director
New York, NY 10020                                 Telephone 212 403-5411
www.rothschild.com                                 Facsimile 212 403-3734
                                                   Email neil.augustine@rothschild.com



(i)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction;

(j)     advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(k)     in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(l)     render such other financial advisory and investment banking services customary for similar engagements as agreed upon by Rothschild and the Company.

As used herein, the term "Transaction" shall mean any one or more of the following, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code") or otherwise: (a) any transaction or series of transactions that effects or proposes to effect material changes in any of the Company's outstanding indebtedness held by any party other than the Sponsors (as defined below) for borrowed money ("Indebtedness") and which also involves (i) the payment, retirement or discharge of such Indebtedness at a discount, (ii) the extension of maturity of such Indebtedness beyond its current maturity date, or (iii) the exchange of Indebtedness for equity or gives the Company the right to pay Indebtedness or interest thereon at the current contract rate in equity or other securities instead of cash (collectively, a "Debt Compromise"), including, without limitation, pursuant to any exchange, equitization, payment of interest in kind, repurchase, tender offer or forgiveness involving any portion thereof (other than a transaction that solely involves an amendment to any of the financial or other covenants (excluding covenants pertaining to the payment of principal or interest) of the Company's First Lien Credit Agreement (the "Credit Facility Agreement") dated as of February 1, 2007 among Penton Media, Inc., Prism Business Media Inc., General Electric Capital Corporation, as administrative agent, UBS Securities LLC and TD Securities (USA) LLC, as co-syndication agents, and JPMorgan Chase Bank, N.A. and CIT Lending Services Corporation, as co-documentation agents and Second Lien Credit Agreement dated as of February 1, 2007 among Penton Media, Inc., Prism Business Media Inc., General Electric Capital Corporation, as administrative agent, UBS Securities LLC, as syndication agent and JPMorgan Chase Bank, N.A., as documentation agent (a "Credit Facility Amendment")); (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an

※ R

"Acquirer") in a Transaction which requires and has received approval of lenders holding the requisite amount of the Indebtedness outstanding under the Credit Facility Agreement required for such approval; or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions, of (x) other than in the ordinary course of business, any material portion of the assets or operations of the Company or (y) any outstanding or newly issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company whether or not pursuant to a transaction involving a Debt Compromise; (c) any restructuring, reorganization, exchange offer, tender offer, refinancing or similar transaction whether or not pursuant to a Plan and whether or not pursuant to a transaction involving a Debt Compromise; or (d) any transaction similar to any of the foregoing whether or not involving a Debt Compromise, provided, however, that any such transaction that affects only the rights of the holders of equity securities of the Company or affiliates of such holders (collectively, the "Sponsors"), whether in their capacity as such, as debtholders or otherwise, will not be deemed to be a "Transaction" hereunder.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

Section 2    Information Provided by the Company.

(a)    The Company will furnish to, or cause to be furnished to, Rothschild any and all information as is reasonably available to the Company and as Rothschild reasonably deems appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same, (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the knowledge of its executive officers, will be true and correct in all material respects, will be prepared in good faith and will not contain any material misstatement of fact or omit to state any material fact. The

Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b)     The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission arising from or in connection with: (i) the electronic communication of information to the Company or (ii) the Company's reliance on such information; provided that Rothschild acts in good faith and employs customary procedures in connection with the foregoing.

(c)     Rothschild covenants that all Information furnished or made available to it by the Company or its representatives that is designated or marked as confidential, and the financial terms of this Agreement, will be kept in confidence by Rothschild and its employees or other agents pursuant to customary confidentiality procedures and, except as provided in Section 3 hereof, will not knowingly be furnished to any third person without the Company's prior written consent, given or withheld in its sole discretion.

Section 3     Application for Retention of Rothschild. In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 6 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use reasonable best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use reasonable best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Upon written notice to the Company, Rothschild shall have no obligation to provide any services under this Agreement after a Bankruptcy Case has been commenced unless Rothschild's retention under the terms of this

Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects. During any period in which Rothschild has given such notice and such notice remains operative, Rothschild shall not be entitled to Monthly Fees hereunder and, if such period continues for more than 60 calendar days, the Company may terminate this Agreement without further liability to Rothschild hereunder except under Sections 6, 7 and 8 hereof. Any submission or testimony made by or on behalf of Rothschild in good faith relating to the matters referred to in this Section 3 will not constitute a breach of Rothschild's obligations under Section 2(c) hereof.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.

In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee, the Recapitalization Fee, the Credit Facility Amendment Fee and the New Capital Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4   Fees of Rothschild.  As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)   Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $200,000 per month. The initial Monthly Fee shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

❄ R

(b)      A recapitalization fee (the "Recapitalization Fee") payable upon the consummation of a Transaction equal to $4.5 million; provided, that (i) the Recapitalization Fee shall equal $3.5 million, in the event that such Transaction is consummated "out-of-court" or as part of a "prepackaged" Plan in which the necessary votes were solicited and obtained in order to confirm a Plan prior to the commencement of a Bankruptcy Case, (ii) the Recapitalization Fee shall equal $4.0 million in the event that such transaction is effected as part of a "prearranged" Plan in which (x) the necessary votes were solicited and obtained in order to confirm a Plan after the commencement of a Bankruptcy Case but prior to commencement, (y) the Plan was supported by written undertakings by key stakeholders of the Company, and (z) the Plan is confirmed within 150 days after commencement of the Bankruptcy Case, and (iii) except as expressly provided in Section 4(d) hereof, Rothschild shall be entitled to only a single Recapitalization Fee if more than one Transaction is consummated_and no Credit Facility Amendment Fee will be payable in respect of any Transaction for which a Recapitalization Fee is payable.

(c)      A credit facility amendment fee (the "Credit Facility Amendment Fee") equal to $0.75 million payable upon the consummation of any Credit Facility Amendment. For avoidance of doubt, (i) no Recapitalization Fee shall be payable solely upon the consummation of a Credit Facility Amendment, (ii) only one Credit Facility Amendment Fee shall be payable hereunder regardless of the number of Credit Facility Amendments, (iii) in the event that a Recapitalization Fee is triggered, only a Recapitalization Fee shall be payable, and (iv) in the event that a New Capital Fee of not less than $2.0 million is triggered, no Credit Facility Amendment Fee will be payable.

(d)      A new capital fee (the "New Capital Fee") equal to (i) 1.0% of the face amount of any senior secured debt raised by the Company including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any junior secured debt raised by the Company; (iii) 3.0% of the face amount of any unsecured debt raised by the Company and (iv) 5.0% of any equity capital, or capital convertible into equity, raised by the Company (each, a "New Capital Raise"). The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, (i) the term "raised" shall include the amount committed or otherwise made available to the Company pursuant to definitive documentation providing therefor, whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company and (ii) Rothschild shall only be entitled to a New Capital Fee if it acts as an underwriter, placement agent or arranger of, or manages an organized process for, a New Capital Raise. Without limiting the generality or effect of the foregoing, the New Capital Fee shall not be earned or payable for (a) any new capital provided by existing equity holders, lenders or other creditors (including, without limitation, the Sponsors) or (b) any debt, equity or other securities issued to existing stakeholders pursuant to a Plan or rolled into new debt in an out-of-court transaction (i.e., the New Capital Fee shall only be payable on

debt where the Company receives new liquidity from parties (or their affiliates) who are not currently existing equity holders, lenders or other creditors of the Company).

(e)     It shall be a condition to Rothschild's obligation to provide additional services not specified in this Agreement that the Company and Rothschild shall have entered into an agreement as to the additional fees to which Rothschild shall be entitled therefor.

(f)     For the avoidance of doubt, the parties agree that Rothschild shall not be entitled to a Recapitalization Fee, Credit Facility Amendment Fee or New Capital Fee as a result of (i) a waiver or forbearance (for a period not longer than 91 calendar days at any one time) of any default in respect of any Indebtedness that does not also involve a material amendment of the terms of such Indebtedness or a Debt Compromise or (ii) any payment, retirement or discharge of Indebtedness out of the Company's cash, cash equivalents, capital resources or proceeds of sale of any business or asset that is not part of a Transaction.

The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

Section 5    Credit.  Rothschild shall credit against the Recapitalization Fee: (a) 100% of the Monthly Fees paid for periods commencing on January 1, 2010 and thereafter (the "Monthly Fee Credit"); (b) 50% of any New Capital Fees paid (the "New Capital Fee Credit"); and (c) 100% of any Credit Facility Amendment Fee paid (the "Credit Facility Amendment Fee Credit"), provided that the sum of any Monthly Fee Credit, New Capital Fee Credit and Credit Facility Amendment Fee Credit shall not exceed the Recapitalization Fee.  The Monthly Fee Credit, to the extent not otherwise credited hereunder, shall be applied to any New Capital Fee, provided that no credits contemplated hereby will reduce the fee otherwise payable hereunder below zero.

Section 6    Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its customary and reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel(without the requirement that the retention of such counsel be approved by the Bankruptcy Court), provided, however, that Counsel Charges prior to commencement of any Bankruptcy Case in excess of $25,000 (the "Counsel Amount") shall be subject to the Company's prior approval, not to be unreasonably withheld or delayed (except that, in the event that the Company commences a Bankruptcy Case, up to $25,000 of reasonable Counsel Charges for the preparation of papers supporting Rothschild's retention as herein contemplated shall not count against the Counsel Amount).  Customary and reasonable expenses shall also include, but not be limited to, reasonable expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.  If a

Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.

Section 7    Indemnity.  The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons.  Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein.  Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8    Term.  The term of Rothschild's engagement shall commence on the date hereof and shall extend until the consummation of a Transaction.  This Agreement may be terminated by either party at any time by thirty (30) days advance notice in writing.  If terminated, (a) Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 6 and (b) Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(a) hereof); provided, that the final Monthly Fee will be pro-rated to the termination date for any incomplete monthly period of service.  Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A.  Without limiting any of the foregoing, the Recapitalization Fee, the Credit Facility Amendment Fee and the New Capital Fee shall be payable in the event that (a) as applicable, a Transaction, a Credit Facility Amendment or a New Capital Raise, is consummated at any time prior to the expiration of nine (9) months after such termination, or (b) a letter of intent or definitive agreement with respect thereto is executed at any time prior to nine (9) months after such termination (which letter of intent or definitive agreement subsequently results in the consummation of a Transaction, Credit Facility Amendment or a New Capital Raise, as applicable, at any time), in each case (x) as to which Rothschild advised the Company hereunder prior to the termination of this Agreement or (y) which involves a party identified to the Company by Rothschild or with whom the Company had discussions regarding a Transaction, a Credit Facility Amendment or a New Capital Raise, as applicable, in each case during the term of Rothschild's engagement hereunder, provided, however, that no Recapitalization Fee, Credit Facility Amendment Fee or New Capital Fee shall be payable under this Section 8 if Rothschild terminates its engagement hereunder for any reason other than the Company's material breach hereof or if the Company terminates Rothschild's engagement hereunder for Rothschild's bad faith or gross negligence.

Section 9    Miscellaneous.

(a)    *Administrative Expense Priority.*  In a Bankruptcy Case of the Company or any of its direct or indirect subsidiaries, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and

indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use reasonable best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)     *Survival, Successors & Assigns.*  Sections 4 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns. The Company shall use reasonable best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)     *Benefit of Agreement; No Reliance by Third Parties; Etc.*  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild. In addition, the Company agrees that it will not, and will not permit any of its affiliates to, make any public reference to Rothschild except with the prior consent of Rothschild or as otherwise provided in this Agreement. No person other than the Company (or its successors or assigns), including without limitation the Present Shareholders or any of their respective affiliates or representatives, will have any liability or obligation to Rothschild or any Indemnified Party hereunder.

(d)     *Nature of Relationship.*  The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary



capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e)     *Rothschild Affiliates.*     Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities").     None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby. The Affiliated Entities are involved in a wide range of investment banking and other activities.  Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities.  Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's responsibilities to the Company hereunder.  None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f)     *Required Information.*     Since Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may request, to enable it to comply with applicable law.  For your information, Rothschild may also screen the Company against various databases to verify its identity.

(g)     *Public Announcements.*     The Company acknowledges that Rothschild may at its option and expense, after public announcement of a Transaction, a Credit Facility Amendment or a New Capital Raise, place announcements and advertisements or otherwise publicize the Transaction or the New Capital Raise in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the Company in connection with such transaction.  The Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities.

(h)     *CHOICE OF LAW: JURISDICTION.*     THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICT OF LAWS.  REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL



PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT ITS GENERAL COUNSEL SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF AT THE ADDRESS INDICATED ON PAGE 1 HEREOF.

(i)     *Waiver of Jury Trial.*  Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(j)     *Entire Agreement.*  This Agreement, including the exhibit(s) hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(k)     *Authority.*  Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A attached hereto and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given

Penton Media, Inc.
As of August 1, 2009
Page 12



by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

      (l)    *Counterparts.* This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

      (m)    *Notices.* Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth on Page 1 above, Attn: General Counsel, and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Neil A. Augustine with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: General Counsel.

***** ***** *****

Penton Media, Inc.
As of August 1, 2009
Page 13



  If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _____

Neil A. Augustine
Managing Director

Date: _____

Accepted and Agreed to as of
the date first written above on
behalf of itself and its direct
and indirect subsidiaries:

PENTON MEDIA, INC.

By: _____

Sharon Rowlands
Chief Executive Officer

Date: 2.03.10

#393491

## Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction or other transaction; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose because of the gross negligence, willful misconduct or fraud of any Indemnified Party. If multiple claims are brought against an Indemnified Party, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or award against such Indemnified Party shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that it, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of an Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such Action or

(b) unless and only to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses. The Company shall, if requested by Rothschild, and in all events may (subject to the limitations set forth herein) assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

Penton Media, Inc.
As of August 1, 2009
Exhibit A - Page 3


The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use reasonable best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.