**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
In re                                                        :  Chapter 11
                                                             :
Penton Business Media Holdings, Inc.,[1]                     :  Case No. 10-10689 (AJG)
                                                             :
                          Debtor                             :
                                                             :
-------------------------------------------------------------x

## FINAL FEE APPLICATION OF ROTHSCHILD INC.
## AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS

| | |
|---|---|
| Name of Applicant: | Rothschild Inc. |
| Authorized to Provide Professional Services to: | The Debtors |
| Date of Retention: | February 10, 2009 |
| Period for Which Compensation and Reimbursement is Sought: | February 10, 2010 through March 09, 2010 |
| Amount of Compensation Requested: | $3,235,714.29 |
| Amount of Expense Reimbursement Requested:[2] | $16,274.91 |
| Total Compensation and Expenses Previously Requested and Awarded: | None |

This is a:    _____ Monthly    _____ Interim    __X__ Final Application

No previous fee applications have been filed by Applicant.

---

[1]    The last four digits of Penton Business Media Holdings, Inc.'s taxpayer identification number are 9837.

[2]    Rothschild has incurred $1,274.91 in expenses that have cleared Rothschild's internal expense reporting system.  Rothschild requests final approval of a reimbursement amount that includes an additional $15,000, which is Rothschild's estimate of the reimbursement required for expenses that have been incurred during the Compensation Period but which have not yet cleared Rothschild's internal expense reporting systems. Rothschild will request reimbursement from the Debtors only for expenses actually incurred.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re                                                       :     Chapter 11
                                                            :
Penton Business Media Holdings, Inc.,[1]                    :     Case No. 10-10689 (AJG)
                                                            :
                            Debtor                          :
                                                            :
------------------------------------------------------------x

## FINAL FEE APPLICATION OF ROTHSCHILD INC.
## AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS

TO THE HONORABLE ARTHUR J. GONZALEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

                Rothschild Inc. ("Rothschild"), Investment Banker and Financial Advisor to

Penton Business Media Holdings, Inc. (the "Lead Debtor") and eight of its domestic subsidiaries

(collectively, the "Subsidiary Debtors" and, together with the Lead Debtor, the "Debtors"),

hereby submits its Final Fee Application (the "Application") for allowance of compensation for

professional services rendered to the Debtors and for reimbursement of actual and necessary

expenses incurred in connection with such services from February 10, 2010, through and

including March 9, 2010 (the "Compensation Period"). In support of this Application,

Rothschild respectfully represents as follows:

                1.      The Application is made pursuant to (a) sections 330 and 331 of title 11 of

the United States Code (the "Bankruptcy Code"), (b) rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), (c) rule 2016-1 of the Local Rules for the

United States Bankruptcy Court for the Southern District of New York (the "Local Rules"),

---

[1]         The last four digits of the Lead Debtor's taxpayer identification number are 9837.

(d) the Retention Order (as defined below), including the engagement letter signed by the Lead Debtor and Rothschild (the "Engagement Letter"), attached hereto as Exhibit A, (e) the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "U.S. Trustee Guidelines"); and (f) Administrative Order M-389, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines and, collectively with the U.S. Trustee Guidelines, the "Guidelines").

2.       Pursuant to the Retention Order, the Debtors were authorized to employ and retain Rothschild pursuant to the terms of the Engagement Letter.  Under the Engagement Letter and pursuant to the Retention Order, Rothschild is entitled to, among other things, payment of a monthly cash advisory fee of $200,000.00 (the "Monthly Fee"), reimbursement of Rothschild's expenses, and a recapitalization fee of $3,500,000.00 (the "Recapitalization Fee") less credits in the amount of Monthly Fees paid for service rendered after January 1, 2010.

3.       Prior to commencing the Debtors' chapter 11 cases, the Debtors solicited and obtained the requisite votes to confirm a "pre-packaged" plan of reorganization (the "Plan"). On January 21, 2010, the Debtors distributed the Plan and related disclosure statement (the "Disclosure Statement") and commenced solicitation of votes on the Plan from their first lien lenders, Classes 2 and 3 under the Plan, and their second lien lenders, Class 4 under the Plan. Classes 2, 3 and 4 are the only impaired classes under the Plan that are entitled to vote.  As previously disclosed to the Court, the Debtors received overwhelming support for the Plan from the classes entitled to vote.

4.	On February 11, 2010, the Court entered an order (a) scheduling the combined hearing to confirm the Plan and approve the Disclosure Statement on March 10, 2010 and (b) establishing March 3, 2010 as the deadline to object to the Plan.

5.	On February 12, 2010, the Debtors filed the Application of Debtors to Retain and Employ Rothschild Inc. as Financial Advisor and Investment Banker <u>Nunc</u> <u>Pro</u> <u>Tunc</u> as of the Petition Date (Docket No. 48) (the "<u>Retention Application</u>").

6.	On March 5, 2010, the Court entered an Order Authorizing the Debtors to Employ and Retain Rothschild Inc. as Financial Advisor and Investment Banker <u>Nunc</u> <u>Pro</u> <u>Tunc</u> as of the Petition Date (Docket No. 83) (the "<u>Retention Order</u>").  A copy of the Retention Order is attached hereto as <u>Exhibit B</u>.   Pursuant to the Retention Order, Rothschild has provided financial advisory and investment banking services to the Debtors through March 9, 2010.

7.	Also on March 5, 2010, the Court entered an order confirming the Plan (Docket No. 85) (the "<u>Confirmation Order</u>").  On March 10, 2010 (the "<u>Effective Date</u>"), the Plan became effective in accordance with its terms, permitting the Debtors to emerge from chapter 11.[2]

8.	By this Application Rothschild seeks final allowance of compensation for services rendered during the Compensation Period, consisting of $3,235,714.29, which is Rothschild's Recapitalization Fee of $3,500,000.00, plus Monthly Fees of $193,778.80 less applicable credits on account of Monthly Fees of $458,064.51.  Rothschild also requests final

---

[2]	Pursuant to paragraph 37 of the Confirmation Order, the Subsidiary Debtors' cases were closed as of the Effective Date.  Only the Lead Debtor's chapter 11 case remains open.

allowance of reimbursement of reasonable and necessary expenses in the amount of $16,274.91

incurred or estimated to have been incurred by Rothschild during the Compensation Period.[3]

9.     By the Retention Order, this Court approved the appointment of

Rothschild as investment banker and financial advisor to the Debtors to provide assistance to the

Debtors in evaluating the complex financial and economic issues raised by the engagement as

retained by the Debtors to provide the following services if requested by the Debtors[4]:

    (a)    Identify and/or initiate potential Transactions;

    (b)    Review and analyze the Debtors' assets and the operating and financial strategies of the Debtors;

    (c)    Review and analyze the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those assumptions to historical trends of the Debtors and their industry;

    (d)    Evaluate the Debtors' debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Debtors;

    (e)    Assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

    (f)    Determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction;

    (g)    Advise the Debtors on the risks and benefits of considering a Transaction with respect to the Debtors' intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors;

---

[3]     Rothschild has incurred $1,274.91 in expenses that have cleared Rothschild's internal expense reporting system. Rothschild requests final approval of a reimbursement amount that includes an additional $15,000, which is Rothschild's estimate of the reimbursement required for expenses that have been incurred during the Compensation Period but which have not yet cleared Rothschild's internal expense reporting systems. Rothschild will request reimbursement from the Debtors only for expenses actually incurred.

[4]     Capitalized terms used in this paragraph and not otherwise defined have the meanings assigned to them in the Engagement Letter

(h)     Review and analyze any proposals the Debtors receive from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(i)     Assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction;

(j)     Advise the Company with respect to, and attend, meetings of the Debtors' Board(s) of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(k)     If requested by the Debtors, participate in hearings before this Court and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan; and

(l)     Render such other financial advisory and investment banking services customary for similar engagements as agreed upon by Rothschild and the Debtors.

10.     Senior level professionals with extensive experience in the area of investment banking and financial advisory services directed Rothschild's team. The investment banking services set forth above were performed primarily by Neil Augustine (Managing Director), Bill Shaw (Managing Director), Marc Strauss (Vice President), Rich Siegel (Associate) and Patty Piotrowicz (Analyst), as well as other professionals and paraprofessionals, as needed. Rothschild's general staffing policy is to assign senior bankers, experienced junior bankers and financial analysts to each restructuring assignment. The senior banker, Neil Augustine, had overall responsibility for the case. He was primarily responsible for developing strategy with respect to the case, directing negotiations and interfacing with the other senior professionals involved with the case. The second senior banker, Bill Shaw, assisted Neil with overall responsibility for the case. He assisted with the development of strategy and negotiations, and was responsible for working with the third senior banker and the junior bankers

on the case. The third senior banker, Marc Strauss, was responsible for day-to-day coordination of the case and the review of all financial analyses. The experienced junior banker, Richard Siegel, guided the financial analyses and worked closely with the financial analyst. The experienced junior banker and financial analyst coordinated their actions so as to not duplicate efforts.

11.  The amount of fees and expenses for which final approval is sought in this Application and Rothschild's billing processes are consistent with market practices for investment banking firms both in and out of the bankruptcy context. Rothschild does not bill its clients based on the number of hours expended by its professionals. It bills clients on a periodic basis (generally monthly), with one or more fees payable upon completion of a transaction. Accordingly, Rothschild does not have hourly rates for its professionals and Rothschild's professionals generally do not maintain time records for the work performed for its clients. Rothschild, however, maintained daily time logs detailing the activities and services performed by Rothschild on behalf of the Debtors during the Compensation Period. Attached hereto as Exhibit C is a schedule setting forth all Rothschild professionals who have performed services in these chapter 11 cases, the capacities in which each such individual is employed by Rothschild and a summary of professional hours worked by Rothschild on behalf of the Debtors during the Compensation Period, including the aggregate number of hours expended by each such individual in these cases. Pursuant to the Retention Order, Rothschild kept time records in half-hour increments.

12.  Given the size and complexity of this engagement, the complicated corporate and financial structure of the Debtors, the degree of activity during the term of the engagement and the high level of services rendered by Rothschild to the Debtors, Rothschild

believes that final approval of the compensation and reimbursement requested herein is fair and reasonable.

**Services Rendered**

13.    All services rendered by Rothschild during the Compensation Period were performed at the request or direction of the Debtors or Debtors' counsel. Rothschild provided a broad range of necessary financial advisory services during the term of its engagement. Major areas of effort may be summarized as follows:

*Financial Due Diligence*

14.    Rothschild's due diligence prior to and during the Compensation Period involved numerous meetings and telephone calls with officers of the Debtors. The subjects reviewed on these occasions included the reasonableness of the assumptions underlying the management's projections, the operating structure and financial results of the Debtors, financial reporting structure, legal and tax structure of the Debtors and numerous other subjects.

15.    Additionally, Rothschild assisted the Debtors' in coordinating the extensive due diligence process for the Debtors' constituencies. This process included numerous teleconference calls and in-person meetings to review the operating model, sales and costs assumptions, balance sheet and cash flow assumptions, as well as visits to the Debtors' headquarters. Rothschild also coordinated and facilitated the Debtors' responses to follow-on due diligence requests from the constituents and their advisors.

*Financial Analysis and Modeling*

16.    Rothschild worked extensively with the Debtors' management prior to filing of these cases to construct a detailed and comprehensive business plan including operating and financial projections through December 31, 2014 (the "Business Plan"), as well as

recapitalization scenarios. Rothschild reviewed and tested the assumptions underlying the Business Plan, and analyzed the projected performance, liquidity and covenants under various scenarios. During the Compensation Period, Rothschild assisted the Debtors in preparing various financial analyses.

***Negotiation and Documentation of the Plan of Reorganization and Disclosure Statement***

17. Rothschild, prior to the filing of these cases, assisted the Debtors in negotiating the reorganization plan with their various stakeholders and in the preparation of the Debtors' Disclosure Statement. This included soliciting, negotiating and analyzing numerous proposals from the equity sponsor, the Debtors' first lien lenders and the Debtors' second lien lenders, evaluating recoveries for the stakeholders and the capital structure of the Debtors based on these proposals and negotiating financial covenants with the first lien lenders. In addition to first lien lender negotiations, Rothschild contacted and negotiated with 23 different parties representing 60 individual second lien lenders to ensure broad support for the Plan among impaired parties.

18. Rothschild played an integral role in running the proposal process and negotiating the terms of the various proposals to maximize value for stakeholders and ultimately the Plan, which resulted in 100% cash recovery for unsecured creditors. Rothschild also assisted the Debtors in documenting the transaction and in preparing certain sections of the Disclosure Statement, including analyses and write-ups discussing the Business Plan and projections, transaction valuation, liquidation analysis and recoveries to various constituencies.

***Confirmation and Implementation of the Plan of Reorganization and Disclosure Statement***

19. During the Compensation Period, Rothschild assisted the Debtors with the preparation and closing of various other documents in support of the Plan, including the

Amended and Restated Credit Agreement and other documents required to implement the Plan. Rothschild was responsible for developing the funds flow memo, assisting the Debtors in calculating the various closing conditions, supporting the Debtors in the preparation of other closing schedules and assisting with other closing requirements. Rothschild participated in numerous calls in preparation of closing prior to the initiation of certain funds transfers under the Plan and affirmed that the financial conditions precedent to the effectiveness of the Plan were met. Rothschild also participated in numerous telephone conferences with the Debtors and the Debtors' other professionals regarding the status of the confirmation and implementation of the Plan.

### Internal Team Meetings and Calls

20.     During the term of its engagement, Rothschild participated in numerous meetings and calls with members of the Rothschild team, the Jones Day team, the Debtors' management team and board of directors and other agents of the Debtors. In general, given the complexity and nature of this reorganization, Rothschild professionals participated, sometimes several times daily, on such internal meetings and calls. These discussions were necessary throughout the course of Rothschild's engagement in order to synchronize efforts and determine the optimal course of action. Discussions included, among other things, the Debtors' overall reorganization strategy, development of negotiating strategy with the creditors, determining the appropriate liquidity infusion needed for the Debtors to have financial flexibility, appropriate steps and recommended timing of future actions, general preparation in anticipation of meetings with the Creditors, Board of Directors, meetings with other third parties and Court proceedings.

*Calls, Meetings and Discussions with Lender Groups*

21.     Rothschild, during the term of its engagement, spent significant time meeting with the Debtors' lenders and their advisors, coordinating and participating in both conference calls and in-person meetings with the creditors and their advisors and compiling diligence materials in order to provide the lenders with the information they sought concerning the Debtors and these chapter 11 cases.  This also included time spent attending meetings of lenders on behalf of the Debtors, and working through their issues related to the Debtors' Business Plan.  Rothschild often served as a conduit through which the lenders and their advisors discussed and negotiated various matters with members of the Debtors.  This arrangement ensured efficient correspondence among the various chapter 11 parties and its constituencies.

*Court Hearings and Filings*

22.     Rothschild's professionals were available in Court and were prepared to provide testimony when required in its capacity as financial advisor and investment banker to the Debtors.  Rothschild prepared and submitted a declaration in support of confirmation of the Debtors' plan of reorganization.

23.     Rothschild respectfully submits that the compensation requested for the Compensation Period for services rendered by Rothschild to the Debtors is fully justified and reasonable based on the following: (a) the degree of activity during the Compensation Period and prior to the Petition Date, and also the high level of services rendered by Rothschild to the Debtors; (b) the complexity of the issues presented; (c) the skill necessary to perform the investment banking services properly; (d) the preclusion of other employment; (e) customary fees charged in non-bankruptcy situations for similar services rendered; (f) time constraints required by the exigencies of the case; and (g) the experience, reputation and ability of the

professionals rendering services. Rothschild respectfully submits that the services it rendered to the Debtors were necessary and in the best interest of the Debtors and their estates and have furthered the goals of all parties in interest in the chapter 11 cases.

## Expenses Incurred

24. Rothschild has incurred and recorded as of the date of this application reasonable and necessary out-of-pocket expenses aggregating $1,274.91 during the Compensation Period. Rothschild submits that all such expenses were necessarily incurred, are reasonable in amount and represent only the actual costs incurred. Annexed hereto as Exhibit D is a schedule specifying categories of expenses for which Rothschild is seeking reimbursement, the total amount of expenses requested in each such expense category, as well as an itemized breakdown of such expenses. In addition, Rothschild requests an additional $15,000 for necessary and reasonable expenses that Rothschild estimates it has incurred during the Compensation Period, but which have not yet cleared Rothschild's internal expense reporting system.

25. Rothschild's charges for expenses to the Debtors were determined in the same manner as for clients in non-bankruptcy matters. Out-of-pocket expenses incurred by Rothschild are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. Rothschild does not factor general overhead expenses into disbursements charged to clients in connection with Chapter 11 cases. Rothschild followed its general internal policies (as in effect during the Compensation Period) with respect to out-of-pocket expenses billed to the Debtors as set forth below, with any exceptions fully explained.

(a) Rothschild's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide

services to the client during such mealtime due to extreme time constraints. Rothschild's employees are permitted to order meals in the office if Rothschild's employee is required to work after 8:00 p.m. on weekdays or more than five (5) consecutive hours on weekends or holidays. Meal expenses incurred during meetings which employees and other meeting participants are required to attend are billed at cost.

(b)     Messengers and couriers are used by Rothschild to deliver hard copy documents relating to a client matter, which require receipt on an expedited basis; otherwise, Rothschild uses the regular postal system. Any charges for either messengers or couriers are billed to the client at cost.

(c)     All airfare and other transportation charges incurred by Rothschild's employees directly in connection with services to the client are billed to client at cost.

(d)     The research/database category consists of the cost of using databases to which Rothschild subscribes to search for and obtain information used in Rothschild's financial analyses. Rothschild pays the vendor's standard rate for such database services. In certain instances, Rothschild has determined that paying a flat annual or monthly fee for such services is less costly than contracting for such services on a per use basis. Such annual or monthly services are allocated to clients based on such clients' use of each service. The research category also consists of charges from outside services, which supply, for a fee, financial documents from regulatory agencies, which cannot be obtained from databases subscribed to by Rothschild.

(e)     Rothschild bills photocopying charges at the rate of $.10 per page for black and white copies and $1.00 per page for color copies.

(f)     With respect to local travel, Rothschild's general policy enables employees to travel by taxi or, in certain circumstances, by private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. This policy is based on Rothschild's determination that travel by taxi or private car service is the most efficient use of a professional's time. Rothschild's employees are not permitted to charge personal commuting expenses to a client unless the employee is traveling after 9:00 p.m. and has been required to work late as a result of the time exigencies of that client's matters.

(g)     Telephone expenses are charged based on Rothschild's actual cost of telephone charges with respect to client matters. Cellular phone charges are based on vendor's actual invoices.

(h)     Word processing charges represent actual costs incurred by Rothschild's in-house vendor and actual cost of overtime secretarial support in connection with client matters.

## Conclusion

26.     The services summarized by this Application and rendered by Rothschild to the Debtors during the Compensation Period and throughout the engagement were substantial, highly professional and instrumental to the Debtors' performance in the chapter 11 cases. They were reasonable and necessary to the Debtors' performance of their duties and maximization of its value.

27.     Except as permitted under Section 504 of the Bankruptcy Code, Rothschild has not entered into any agreement, express or implied, with any party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

## Notice

28.     Notice of this Application has been provided to: (a) the United States Trustee for the Southern District of New York; (b) counsel to the agent for the Debtors' first lien lenders; (c) counsel to the agent for the Debtors' second lien lenders; (d) those creditors holding the 50 largest unsecured claims against the Debtors' estates; and (e) all parties that have timely filed requests for notice under Bankruptcy Rule 2002. Rothschild submits that no other or further notice need be provided.

WHEREFORE, Rothschild respectfully requests that the Court enter an order substantially in the form attached hereto as <u>Exhibit E</u>:  (a) granting this Application; (b) allowing on a final basis compensation in the amount of $3,235,714.29 for services rendered in connection with these chapter 11 cases during the Compensation Period; (c) allowing the reimbursement of reasonable and necessary expenses in the amount of $16,274.91 incurred by Rothschild during the Retention Period; (d) directing the Debtors to satisfy any amount owing to Rothschild under the Engagement Letter or Retention Order; and (e) granting such other and further relief to Rothschild as is just.

[Signature Page Follows]

Dated:  March 16, 2010
        New York, New York

Respectfully submitted,

Neil A. Augustine
Managing Director
Rothschild Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11
                                            :
Penton Business Media Holdings, Inc.,[1]    :    Case No. 10-10689 (AJG)
                                            :
                     Debtor                 :
                                            :
-------------------------------------------------------------x
```

## <u>CERTIFICATION OF NEIL A. AUGUSTINE</u>

NEIL A. AUGUSTINE, after being duly sworn according to law, deposes and says:

1. I am a Managing Director with the applicant firm, Rothschild Inc. ("<u>Rothschild</u>"), which firm maintains offices at 1251 Avenue of the Americas, New York, NY 10020.  Rothschild acted as investment banker to and rendered professional services on behalf of the Debtors.  I submit this Certification with respect to the Final Fee Application of Rothschild Inc. as Financial Advisor and Investment Banker to the Debtors (the "<u>Application</u>").[2]

2. I make this certification in accordance with General Order M-389, the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the United States Bankruptcy Court for the Southern District of New York on November 25, 2009 (the "<u>Local Guidelines</u>").

3. I personally performed many of the financial advisory and investment banking services rendered by Rothschild as investment banker to the Debtors and am thoroughly familiar with all other work performed on behalf of the Debtors by the professionals in the firm.

---

[1] The last four digits of the Lead Debtor's taxpayer identification number are 9837.

[2] Unless otherwise defined herein, all capitalized terms have the meanings given to them in the Application.

4.     I have reviewed the Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.

5.     I have reviewed the United States Trustee Guidelines For Reviewing Applications For Compensation And Reimbursement Of Expenses Filed Under 11 U.S.C. Section 330 (the "Trustee Guidelines") and the Application substantially complies with the Trustee Guidelines.

6.     Except to the extent that fees or disbursements are prohibited by the Local Guidelines or the Trustee Guidelines, the fees and disbursements sought are billed in accordance with practices customarily employed by Rothschild and generally accepted by Rothschild's clients.

7.     In providing reimbursable service, Rothschild does not make a profit on that service, whether the service is performed by Rothschild in house or through a third party.

8.     The U.S. Trustee and the Debtors will each be provided with a copy of the Application simultaneously with the filing thereof, and will have at least 14 days to review such Application prior to any hearing with respect thereto.

[Signature Page Follows]

_____

Neil A. Augustine, Managing Director


SWORN AND SUBSCRIBED before me this _16_ day of March 2010.


_____

Notary Public
My Commission Expires:

DONNA GRASSO SHANDLEY
Notary Public, State Of New York
No.01GR6058322
Qualified In Westchester County
Commission Expires May 7, 20 _11_

# EXHIBIT A

## Engagement Letter

As of August 1, 2009

Ms. Sharon Rowlands
Chief Executive Officer
Penton Media, Inc.
249 West 17th Street
New York, New York 10011



Dear Ms. Rowlands:

This letter (the "Agreement") will confirm the terms and conditions of the agreement between Penton Media, Inc. (collectively with its direct and indirect subsidiaries, the "Company") and Rothschild Inc. ("Rothschild") regarding the retention of Rothschild as financial advisor and investment banker to the Company in connection with a possible Transaction (as defined below) involving the Company.

Section 1    Services to be Rendered. In connection with the formulation, analysis and implementation of various options for a Transaction or any series or combination of Transactions, Rothschild will perform the following services to the extent Rothschild reasonably deems customary and feasible and as reasonably requested by the Company:

(a)    identify and/or initiate potential Transactions;

(b)    review and analyze the Company's assets and the operating and financial strategies of the Company;

(c)    review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(d)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(e)    assist the Company and its other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(f)    determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Transaction;

(g)    advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(h)    review and analyze any proposals the Company receives from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Neil A. Augustine
Managing Director
Telephone 212 403-5411
Facsimile 212 403-3734
Email neil.augustine@rothschild.com



(i)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction;

(j)     advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(k)     in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(l)     render such other financial advisory and investment banking services customary for similar engagements as agreed upon by Rothschild and the Company.

As used herein, the term "Transaction" shall mean any one or more of the following, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code") or otherwise: (a) any transaction or series of transactions that effects or proposes to effect material changes in any of the Company's outstanding indebtedness held by any party other than the Sponsors (as defined below) for borrowed money ("Indebtedness") and which also involves (i) the payment, retirement or discharge of such Indebtedness at a discount, (ii) the extension of maturity of such Indebtedness beyond its current maturity date, or (iii) the exchange of Indebtedness for equity or gives the Company the right to pay Indebtedness or interest thereon at the current contract rate in equity or other securities instead of cash (collectively, a "Debt Compromise"), including, without limitation, pursuant to any exchange, equitization, payment of interest in kind, repurchase, tender offer or forgiveness involving any portion thereof (other than a transaction that solely involves an amendment to any of the financial or other covenants (excluding covenants pertaining to the payment of principal or interest) of the Company's First Lien Credit Agreement (the "Credit Facility Agreement") dated as of February 1, 2007 among Penton Media, Inc., Prism Business Media Inc., General Electric Capital Corporation, as administrative agent, UBS Securities LLC and TD Securities (USA) LLC, as co-syndication agents, and JPMorgan Chase Bank, N.A. and CIT Lending Services Corporation, as co-documentation agents and Second Lien Credit Agreement dated as of February 1, 2007 among Penton Media, Inc., Prism Business Media Inc., General Electric Capital Corporation, as administrative agent, UBS Securities LLC, as syndication agent and JPMorgan Chase Bank, N.A., as documentation agent (a "Credit Facility Amendment")); (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an

☀ R

"Acquirer") in a Transaction which requires and has received approval of lenders holding the requisite amount of the Indebtedness outstanding under the Credit Facility Agreement required for such approval; or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions, of (x) other than in the ordinary course of business, any material portion of the assets or operations of the Company or (y) any outstanding or newly issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company whether or not pursuant to a transaction involving a Debt Compromise; (c) any restructuring, reorganization, exchange offer, tender offer, refinancing or similar transaction whether or not pursuant to a Plan and whether or not pursuant to a transaction involving a Debt Compromise; or (d) any transaction similar to any of the foregoing whether or not involving a Debt Compromise, provided, however, that any such transaction that affects only the rights of the holders of equity securities of the Company or affiliates of such holders (collectively, the "Sponsors"), whether in their capacity as such, as debtholders or otherwise, will not be deemed to be a "Transaction" hereunder.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

#### Section 2    Information Provided by the Company.

(a)    The Company will furnish to, or cause to be furnished to, Rothschild any and all information as is reasonably available to the Company and as Rothschild reasonably deems appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same, (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the knowledge of its executive officers, will be true and correct in all material respects, will be prepared in good faith and will not contain any material misstatement of fact or omit to state any material fact. The

🌾 R

Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b)     The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission arising from or in connection with: (i) the electronic communication of information to the Company or (ii) the Company's reliance on such information; provided that Rothschild acts in good faith and employs customary procedures in connection with the foregoing.

(c)     Rothschild covenants that all Information furnished or made available to it by the Company or its representatives that is designated or marked as confidential, and the financial terms of this Agreement, will be kept in confidence by Rothschild and its employees or other agents pursuant to customary confidentiality procedures and, except as provided in Section 3 hereof, will not knowingly be furnished to any third person without the Company's prior written consent, given or withheld in its sole discretion.

Section 3     Application for Retention of Rothschild. In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 6 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use reasonable best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use reasonable best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Upon written notice to the Company, Rothschild shall have no obligation to provide any services under this Agreement after a Bankruptcy Case has been commenced unless Rothschild's retention under the terms of this

Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects. During any period in which Rothschild has given such notice and such notice remains operative, Rothschild shall not be entitled to Monthly Fees hereunder and, if such period continues for more than 60 calendar days, the Company may terminate this Agreement without further liability to Rothschild hereunder except under Sections 6, 7 and 8 hereof. Any submission or testimony made by or on behalf of Rothschild in good faith relating to the matters referred to in this Section 3 will not constitute a breach of Rothschild's obligations under Section 2(c) hereof.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.

In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee, the Recapitalization Fee, the Credit Facility Amendment Fee and the New Capital Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4    Fees of Rothschild.  As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)    Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $200,000 per month. The initial Monthly Fee shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

⁂ R

(b)     A recapitalization fee (the "Recapitalization Fee") payable upon the consummation of a Transaction equal to $4.5 million; provided, that (i) the Recapitalization Fee shall equal $3.5 million, in the event that such Transaction is consummated "out-of-court" or as part of a "prepackaged" Plan in which the necessary votes were solicited and obtained in order to confirm a Plan prior to the commencement of a Bankruptcy Case, (ii) the Recapitalization Fee shall equal $4.0 million in the event that such transaction is effected as part of a "prearranged" Plan in which (x) the necessary votes were solicited and obtained in order to confirm a Plan after the commencement of a Bankruptcy Case but prior to commencement, (y) the Plan was supported by written undertakings by key stakeholders of the Company, and (z) the Plan is confirmed within 150 days after commencement of the Bankruptcy Case, and (iii) except as expressly provided in Section 4(d) hereof, Rothschild shall be entitled to only a single Recapitalization Fee if more than one Transaction is consummated and no Credit Facility Amendment Fee will be payable in respect of any Transaction for which a Recapitalization Fee is payable.

(c)     A credit facility amendment fee (the "Credit Facility Amendment Fee") equal to $0.75 million payable upon the consummation of any Credit Facility Amendment. For avoidance of doubt, (i) no Recapitalization Fee shall be payable solely upon the consummation of a Credit Facility Amendment, (ii) only one Credit Facility Amendment Fee shall be payable hereunder regardless of the number of Credit Facility Amendments, (iii) in the event that a Recapitalization Fee is triggered, only a Recapitalization Fee shall be payable, and (iv) in the event that a New Capital Fee of not less than $2.0 million is triggered, no Credit Facility Amendment Fee will be payable.

(d)     A new capital fee (the "New Capital Fee") equal to (i) 1.0% of the face amount of any senior secured debt raised by the Company including, without limitation, any debtor-in-possession financing raised; (ii) 2.0% of the face amount of any junior secured debt raised by the Company; (iii) 3.0% of the face amount of any unsecured debt raised by the Company and (iv) 5.0% of any equity capital, or capital convertible into equity, raised by the Company (each, a "New Capital Raise"). The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, (i) the term "raised" shall include the amount committed or otherwise made available to the Company pursuant to definitive documentation providing therefor, whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company and (ii) Rothschild shall only be entitled to a New Capital Fee if it acts as an underwriter, placement agent or arranger of, or manages an organized process for, a New Capital Raise. Without limiting the generality or effect of the foregoing, the New Capital Fee shall not be earned or payable for (a) any new capital provided by existing equity holders, lenders or other creditors (including, without limitation, the Sponsors) or (b) any debt, equity or other securities issued to existing stakeholders pursuant to a Plan or rolled into new debt in an out-of-court transaction (i.e., the New Capital Fee shall only be payable on

※ R

debt where the Company receives new liquidity from parties (or their affiliates) who are not currently existing equity holders, lenders or other creditors of the Company).

(e)     It shall be a condition to Rothschild's obligation to provide additional services not specified in this Agreement that the Company and Rothschild shall have entered into an agreement as to the additional fees to which Rothschild shall be entitled therefor.

(f)     For the avoidance of doubt, the parties agree that Rothschild shall not be entitled to a Recapitalization Fee, Credit Facility Amendment Fee or New Capital Fee as a result of (i) a waiver or forbearance (for a period not longer than 91 calendar days at any one time) of any default in respect of any Indebtedness that does not also involve a material amendment of the terms of such Indebtedness or a Debt Compromise or (ii) any payment, retirement or discharge of Indebtedness out of the Company's cash, cash equivalents, capital resources or proceeds of sale of any business or asset that is not part of a Transaction.

The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

Section 5     Credit. Rothschild shall credit against the Recapitalization Fee: (a) 100% of the Monthly Fees paid for periods commencing on January 1, 2010 and thereafter (the "Monthly Fee Credit"); (b) 50% of any New Capital Fees paid (the "New Capital Fee Credit"); and (c) 100% of any Credit Facility Amendment Fee paid (the "Credit Facility Amendment Fee Credit"), provided that the sum of any Monthly Fee Credit, New Capital Fee Credit and Credit Facility Amendment Fee Credit shall not exceed the Recapitalization Fee. The Monthly Fee Credit, to the extent not otherwise credited hereunder, shall be applied to any New Capital Fee, provided that no credits contemplated hereby will reduce the fee otherwise payable hereunder below zero.

Section 6     Expenses. Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its customary and reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel(without the requirement that the retention of such counsel be approved by the Bankruptcy Court), provided, however, that Counsel Charges prior to commencement of any Bankruptcy Case in excess of $25,000 (the "Counsel Amount") shall be subject to the Company's prior approval, not to be unreasonably withheld or delayed (except that, in the event that the Company commences a Bankruptcy Case, up to $25,000 of reasonable Counsel Charges for the preparation of papers supporting Rothschild's retention as herein contemplated shall not count against the Counsel Amount). Customary and reasonable expenses shall also include, but not be limited to, reasonable expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services. If a

Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.

Section 7    Indemnity. The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons. Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8    Term. The term of Rothschild's engagement shall commence on the date hereof and shall extend until the consummation of a Transaction. This Agreement may be terminated by either party at any time by thirty (30) days advance notice in writing. If terminated, (a) Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 6 and (b) Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(a) hereof); provided, that the final Monthly Fee will be pro-rated to the termination date for any incomplete monthly period of service. Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A. Without limiting any of the foregoing, the Recapitalization Fee, the Credit Facility Amendment Fee and the New Capital Fee shall be payable in the event that (a) as applicable, a Transaction, a Credit Facility Amendment or a New Capital Raise, is consummated at any time prior to the expiration of nine (9) months after such termination, or (b) a letter of intent or definitive agreement with respect thereto is executed at any time prior to nine (9) months after such termination (which letter of intent or definitive agreement subsequently results in the consummation of a Transaction, Credit Facility Amendment or a New Capital Raise, as applicable, at any time), in each case (x) as to which Rothschild advised the Company hereunder prior to the termination of this Agreement or (y) which involves a party identified to the Company by Rothschild or with whom the Company had discussions regarding a Transaction, a Credit Facility Amendment or a New Capital Raise, as applicable, in each case during the term of Rothschild's engagement hereunder, provided, however, that no Recapitalization Fee, Credit Facility Amendment Fee or New Capital Fee shall be payable under this Section 8 if Rothschild terminates its engagement hereunder for any reason other than the Company's material breach hereof or if the Company terminates Rothschild's engagement hereunder for Rothschild's bad faith or gross negligence.

Section 9    Miscellaneous.

(a)    *Administrative Expense Priority*. In a Bankruptcy Case of the Company or any of its direct or indirect subsidiaries, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and

indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use reasonable best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)     *Survival, Successors & Assigns.* Sections 4 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns. The Company shall use reasonable best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)     *Benefit of Agreement; No Reliance by Third Parties; Etc.* The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild. In addition, the Company agrees that it will not, and will not permit any of its affiliates to, make any public reference to Rothschild except with the prior consent of Rothschild or as otherwise provided in this Agreement. No person other than the Company (or its successors or assigns), including without limitation the Present Shareholders or any of their respective affiliates or representatives, will have any liability or obligation to Rothschild or any Indemnified Party hereunder.

(d)     *Nature of Relationship.* The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary



capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e)     *Rothschild Affiliates.*     Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities"). None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby. The Affiliated Entities are involved in a wide range of investment banking and other activities. Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities. Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's responsibilities to the Company hereunder. None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f)     *Required Information.*     Since Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may request, to enable it to comply with applicable law. For your information, Rothschild may also screen the Company against various databases to verify its identity.

(g)     *Public Announcements.*     The Company acknowledges that Rothschild may at its option and expense, after public announcement of a Transaction, a Credit Facility Amendment or a New Capital Raise, place announcements and advertisements or otherwise publicize the Transaction or the New Capital Raise in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the Company in connection with such transaction. The Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities.

(h)     *CHOICE OF LAW: JURISDICTION.*     THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICT OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL



PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT ITS GENERAL COUNSEL SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF AT THE ADDRESS INDICATED ON PAGE 1 HEREOF.

(i)     *Waiver of Jury Trial*. Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(j)     *Entire Agreement*. This Agreement, including the exhibit(s) hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(k)     *Authority*. Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A attached hereto and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given



by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

(l)  *Counterparts.*  This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

(m)  *Notices.*  Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth on Page 1 above, Attn: General Counsel, and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Neil A. Augustine with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: General Counsel.

\*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*



If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _____

Neil A. Augustine
Managing Director

Date:_____

Accepted and Agreed to as of
the date first written above on
behalf of itself and its direct
and indirect subsidiaries:

PENTON MEDIA, INC.

By: _____

Sharon Rowlands
Chief Executive Officer

Date: 2.03.10

## Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction or other transaction; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose because of the gross negligence, willful misconduct or fraud of any Indemnified Party. If multiple claims are brought against an Indemnified Party, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or award against such Indemnified Party shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that it, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of an Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such Action or

(b) unless and only to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses. The Company shall, if requested by Rothschild, and in all events may (subject to the limitations set forth herein) assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use reasonable best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

**<u>EXHIBIT B</u>**

**Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                        :

In re                       :   Chapter 11
                        :

Penton Business Media Holdings, Inc., *et al.*,[1]  :   Case No. 10-10689 (AJG)
                        :

              Debtors    :   (Jointly Administered)
                        :
---------------------------------------------------------------x

## ORDER AUTHORIZING THE DEBTORS
## TO EMPLOY AND RETAIN ROTHSCHILD INC. AS FINANCIAL ADVISOR
## AND INVESTMENT BANKER *NUNC PRO TUNC* AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the above captioned debtors and

debtors in possession (collectively, the "Debtors") for an order, pursuant to sections 327 and

328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended,

the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules for the United States

Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing the

Debtors to employ and retain Rothschild Inc. ("Rothschild") as their financial advisor and

investment banker effective nunc pro tunc to February 10, 2010 (the "Petition Date"), pursuant

to the terms of the engagement letter between the Debtors and Rothschild, dated as of

August 1, 2009 (the "Engagement Letter"), including the indemnification provisions contained

---

[1]    The Debtors are the following nine entities (the last four digits of their respective taxpayer
identification numbers follow in parentheses):  Penton Business Media Holdings, Inc. (9837);
Penton Media, Inc. (5386); Penton Business Media, Inc. (1277); Duke Communications
International, Inc. (7904); Duke Investments, Inc. (2160); DVGM & Associates (5363); Internet
World Media, Inc. (5519); Penton Business Media Internet, Inc. (8290); and Penton Business
Media Publications, Inc. (8292).

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the
Application or the Augustine Declaration.



in Exhibit A thereto), attached to this Order as <u>Exhibit 1</u>; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C § 157(b); and venue being proper before this Court pursuant to 28 U.S.C § 1408 and 1409; and the Court being satisfied that notice of the Application and opportunity for a hearing on the Application was appropriate under the particular circumstances and that no other or further notice need be provided; and the Court having reviewed the Application and determined that the employment of Rothschild by the Debtors is necessary and in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the terms of the Engagement Letter are reasonable terms for purposes of section 328(a) of the Bankruptcy Code; and the Court having considered the declaration of Neil A. Augustine, a Managing Director of Rothschild (the "<u>Augustine Declaration</u>") filed in support of the Application; and the Court being satisfied that Rothschild neither holds nor represents any interest adverse to the Debtors' estates with respect to the matters upon which it is to be employed; and the Court having determined that Rothschild is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND THAT:

1.     The Application is granted as set forth herein, <u>nunc pro tunc</u> to the Petition Date.

2.     The Debtors are authorized, pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1, to employ and retain Rothschild as their financial advisor and investment banker in accordance with the terms and conditions set forth in the Engagement Letter, effective nunc pro tunc.

3.     All of Rothschild's compensation set forth in the Engagement Letter, including, without limitation, the Monthly Fee, the Recapitalization Fee, the Credit Facility Amendment Fee and the New Capital Fee, is approved pursuant to section 328(a) of the Bankruptcy Code and Rothschild shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court; provided however, that upon the effectiveness of the Debtors' First Amended Joint Prepackaged Plan of Reorganization the Debtors shall be authorized to pay any compensation earned by Rothschild pursuant to the terms of the Engagement Letter.

4.     None of the fees payable to Rothschild shall constitute a "bonus" or fee enhancement under applicable law.

5.     The terms of the Engagement Letter are approved in all respects except as limited or modified herein.

6.     Rothschild shall include in its fee applications, among other things, time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering

3

services on behalf of the Debtors in one-half hour increments, but Rothschild shall be excused from keeping time in one-tenth of an hour increments.

7.      Rothschild is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested in the Application.

8.      In the event Rothschild seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Rothschild's own application and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code.

9.      The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Engagement Letter and will indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (collectively, the "Indemnified Persons"), pursuant to the Engagement Letter and, during the pendency of these chapter 11 cases, subject to the following conditions:

(a)      All requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the Engagement Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the orders of this Court provided, however, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim or expense has resulted

4

from the gross negligence, willful misconduct or fraud on the part of that or any other Indemnified Person; and

(b)    In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Letter if the Debtors, their estates or the official committee of unsecured creditors assert a claim, to the extent that the Court determines by final order that such claim resulted from the gross negligence, willful misconduct or fraud on the part of that or any other Indemnified Person.

10.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

11.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062 or 9014.

12.    The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

13.    To the extent that this Order is inconsistent with the Engagement Letter, the terms of this Order shall govern.

14.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated:  March 5, 2010
        New York, New York

      **s/Arthur J. Gonzalez**
      CHIEF UNITED STATES BANKRUPTCY JUDGE

CHI-1742997

# **EXHIBIT C**

## **Rothschild Hours Worked**

## Summary of Hours Worked

| Professional | Job Description | Title | Hours worked from Feb-10-2010 to Mar-10-2010 |
|---|---|---|---|
| Neil Augustine | Investment Banker | Managing Director | 24.0 |
| William Shaw | Investment Banker | Managing Director | 32.0 |
| Marc Strauss | Investment Banker | Vice President | 67.5 |
| Richard Siegel | Investment Banker | Associate | 99.0 |
| Patty Piotrowicz | Investment Banker | Analyst | 97.0 |
| | | **Total** | **319.5** |

# Detail of Hours Worked – Augustine

| Professional | Date | Hours | # | Category | Explanation |
|---|---|---|---|---|---|
| Augustine | 2/11/2010 | 1.0 | 9 | Internal Meetings/Calls | Internal discussion re: first days |
| Augustine | 2/11/2010 | 1.0 | 9 | Internal Meetings/Calls | Weekly call with Management |
| Augustine | 2/12/2010 | 1.5 | 3 | Fee Applications / Monthly Invoice | Review Retention application |
| Augustine | 2/12/2010 | 0.5 | 9 | Internal Meetings/Calls | Internal call re: Retention application |
| Augustine | 2/12/2010 | 0.5 | 9 | Internal Meetings/Calls | Call with JD re: Retention application |
| Augustine | 2/17/2010 | 0.5 | 2 | Court Hearings/Filings | Review Supplemental Declaration |
| Augustine | 2/17/2010 | 1.0 | 10 | Bank Group - Calls/Meetings/Discussions | Call with Creditor re: plan treatment |
| Augustine | 2/18/2010 | 1.0 | 9 | Internal Meetings/Calls | Weekly case strategy call with Management |
| Augustine | 2/19/2010 | 1.0 | 9 | Internal Meetings/Calls | Call with Management re: impact from Chapter 11 on OPS |
| Augustine | 2/23/2010 | 1.0 | 9 | Internal Meetings/Calls | Call with JD and Management re: solvency certificate |
| Augustine | 2/23/2010 | 1.0 | 9 | Internal Meetings/Calls | Internal call re: Retention application |
| Augustine | 2/25/2010 | 1.0 | 9 | Internal Meetings/Calls | Weekly case strategy call with Management and JD |
| Augustine | 2/25/2010 | 1.0 | 2 | Court Hearings/Filings | Review Declaration in support of confirmation |
| Augustine | 2/25/2010 | 3.0 | 7 | Valuation | Review preliminary valuation works |
| Augustine | 2/25/2010 | 1.0 | 9 | Internal Meetings/Calls | Internal discussion re: preliminary valuation work |
| Augustine | 2/26/2010 | 0.5 | 2 | Court Hearings/Filings | Review revised declaration in support of confirmation |
| Augustine | 3/2/2010 | 2.5 | 7 | Valuation | Review Preliminary Valuation Materials |
| Augustine | 3/3/2010 | 1.0 | 9 | Internal Meetings/Calls | Communications with internal team re preliminary valuation work |
| Augustine | 3/3/2010 | 1.0 | 7 | Valuation | Review revised valuation materials |
| Augustine | 3/4/2010 | 1.5 | 7 | Valuation | Review Revised Valuation Materials |
| Augustine | 3/5/2010 | 0.5 | 9 | Internal Meetings/Calls | Internal Discussion re Confirmation Hearing |
| Augustine | 3/9/2010 | 1.0 | 8 | General Presentation Preparation | Review Rating Agency Presentation |
| **TOTAL** | | **24.0** | | | |

## Detail of Hours Worked – Shaw

| Professional | Date | Hours | # | Category | Explanation |
|---|---|---|---|---|---|
| Shaw | 2/11/2010 | 2.0 | 2 | Court Hearings/Filings | Participation in first day hearing and prep |
| Shaw | 2/11/2010 | 1.0 | 9 | Internal Meetings/Calls | Internal worksession regarding first day filings/hearing |
| Shaw | 2/11/2010 | 1.0 | 9 | Internal Meetings/Calls | Weekly update call with management and sponsors |
| Shaw | 2/12/2010 | 0.5 | 9 | Internal Meetings/Calls | Internal call regarding retention application |
| Shaw | 2/15/2010 | 0.5 | 9 | Internal Meetings/Calls | Internal worksession regarding retention application |
| Shaw | 2/18/2010 | 1.0 | 9 | Internal Meetings/Calls | Weekly update call with management and sponsors |
| Shaw | 2/19/2010 | 0.5 | 9 | Internal Meetings/Calls | Internal call regarding status of closing documentation |
| Shaw | 2/22/2010 | 1.0 | 2 | Court Hearings/Filings | Review of draft Rothschild declaration |
| Shaw | 2/22/2010 | 1.0 | 1 | Case Administration | Review and response to emails |
| Shaw | 2/23/2010 | 1.0 | 9 | Internal Meetings/Calls | Call with management and Jones Day regarding solvency certificate |
| Shaw | 2/23/2010 | 0.5 | 9 | Internal Meetings/Calls | Internal worksession regarding solvency certificate valuation work |
| Shaw | 2/24/2010 | 0.5 | 3 | Fee Applications / Monthly Invoice | Work on supplemental disclosure filing |
| Shaw | 2/24/2010 | 1.5 | 7 | Valuation | Work on solvency certificate valuation work |
| Shaw | 2/25/2010 | 1.0 | 9 | Internal Meetings/Calls | Weekly update call with management and sponsors |
| Shaw | 2/25/2010 | 1.0 | 9 | Internal Meetings/Calls | Internal discussion regarding solvency certificate valuation work |
| Shaw | 2/25/2010 | 1.0 | 7 | Valuation | Work on solvency certificate valuation work |
| Shaw | 3/2/2010 | 1.0 | 10 | Bank Group - Calls/Meetings/Discussions | Call with GE, Management and advisors regarding closing checklist and status |
| Shaw | 3/2/2010 | 1.5 | 6 | Financial Analysis/Modeling | Review of draft funds flow analysis, including internal sessions |
| Shaw | 3/2/2010 | 0.5 | 9 | Internal Meetings/Calls | Call with Penton and Jones Day regarding closing checklist |
| Shaw | 3/3/2010 | 3.0 | 7 | Valuation | Work on solvency certificate valuation work |
| Shaw | 3/3/2010 | 1.0 | 6 | Financial Analysis/Modeling | Review of draft funds flow analysis, including internal sessions |
| Shaw | 3/4/2010 | 0.5 | 10 | Bank Group - Calls/Meetings/Discussions | Call with CDG and preparation of closing open items |
| Shaw | 3/4/2010 | 1.5 | 6 | Financial Analysis/Modeling | Review of draft funds flow analysis, including internal sessions |
| Shaw | 3/4/2010 | 1.0 | 9 | Internal Meetings/Calls | Call with Penton and Jones Day regarding closing checklist |
| Shaw | 3/4/2010 | 0.5 | 9 | Internal Meetings/Calls | Calls with Jones Day regarding confirmation hearing |
| Shaw | 3/5/2010 | 2.0 | 2 | Court Hearings/Filings | Participation in confirmation hearing including prep |
| Shaw | 3/5/2010 | 1.0 | 9 | Internal Meetings/Calls | Calls with management and team regarding outstanding closing documentation |
| Shaw | 3/8/2010 | 2.0 | 3 | Fee Applications / Monthly Invoice | Preparation of fee application |
| Shaw | 3/10/2010 | 1.0 | 2 | Court Hearings/Filings | Final Fee Application |
| Shaw | 3/10/2010 | 0.5 | 9 | Internal Meetings/Calls | Final Fee Application call |
| **TOTAL** | | **32.0** | | | |

# Detail of Hours Worked – Strauss

| Professional | Date | Hours | # | Category | Explanation |
|---|---|---|---|---|---|
| Strauss | 2/11/2010 | 2.0 | 2 | Court Hearings/Filings | Work on retention application, review of precedents |
| Strauss | 2/11/2010 | 2.0 | 2 | Court Hearings/Filings | Additional work on retention application |
| Strauss | 2/11/2010 | 1.0 | 6 | Financial Analysis/Modeling | Cash Flow / Liquidity review |
| Strauss | 2/12/2010 | 6.5 | 2 | Court Hearings/Filings | Preparation of retention application and associated supporting schedules |
| Strauss | 2/15/2010 | 2.0 | 2 | Court Hearings/Filings | Updates to retention app, additional screening and preparation of supplemental application |
| Strauss | 2/16/2010 | 1.0 | 2 | Court Hearings/Filings | Finalize supplemental application |
| Strauss | 2/16/2010 | 1.0 | 8 | General Presentation Preparation | Review of presentation summarizing terms of final agreement |
| Strauss | 2/17/2010 | 1.0 | 2 | Court Hearings/Filings | Finalize supplemental application |
| Strauss | 2/18/2010 | 2.0 | 9 | Internal Meetings/Calls | Group conference calls re: liquidity / closing |
| Strauss | 2/18/2010 | 1.0 | 13 | General | Funding documentation |
| Strauss | 2/19/2010 | 1.0 | 10 | Bank Group - Calls/Meetings/Discussions | Call with Wells re: closing mechanics |
| Strauss | 2/22/2010 | 2.0 | 9 | Internal Meetings/Calls | Group conference calls re: closing |
| Strauss | 2/23/2010 | 1.5 | 9 | Internal Meetings/Calls | Weekly closing checklist group conference calls |
| Strauss | 2/23/2010 | 2.0 | 7 | Valuation | Review of valuation work |
| Strauss | 2/25/2010 | 2.5 | 9 | Internal Meetings/Calls | Weekly group conference calls - general and closing exhibit group |
| Strauss | 2/25/2010 | 2.0 | 13 | General | Funds flow memo |
| Strauss | 2/28/2010 | 2.0 | 8 | General Presentation Preparation | Board presentation materials for Company |
| Strauss | 3/1/2010 | 0.5 | 13 | General | Review of funds flow memo |
| Strauss | 3/1/2010 | 0.5 | 9 | Internal Meetings/Calls | Funds flow memo call |
| Strauss | 3/2/2010 | 4.0 | 9 | Internal Meetings/Calls | Closing checklist group conference calls |
| Strauss | 3/2/2010 | 2.0 | 13 | General | Review of closing checklist documents |
| Strauss | 3/3/2010 | 2.0 | 7 | Valuation | Review of valuation work |
| Strauss | 3/3/2010 | 4.0 | 9 | Internal Meetings/Calls | Closing checklist document calls |
| Strauss | 3/4/2010 | 1.5 | 9 | Internal Meetings/Calls | Closing checklist document call |
| Strauss | 3/4/2010 | 1.0 | 9 | Internal Meetings/Calls | Weekly group conference call |
| Strauss | 3/4/2010 | 1.5 | 9 | Internal Meetings/Calls | Closing checklist group conference calls |
| Strauss | 3/4/2010 | 1.0 | 13 | General | Review of funds flow memo |
| Strauss | 3/5/2010 | 1.0 | 13 | General | Finalize funds flow memo, internal review |
| Strauss | 3/8/2010 | 3.0 | 13 | General | Funds flow memo preparation |
| Strauss | 3/8/2010 | 2.5 | 6 | Financial Analysis/Modeling | PF balance sheet |
| Strauss | 3/8/2010 | 2.0 | 8 | General Presentation Preparation | Presentation to ratings agency |
| Strauss | 3/9/2010 | 2.0 | 13 | General | Funds flow memo preparation |
| Strauss | 3/9/2010 | 2.0 | 9 | Internal Meetings/Calls | Weekly group closing checklist calls |
| Strauss | 3/9/2010 | 1.0 | 6 | Financial Analysis/Modeling | Closing exhibits analysis |
| Strauss | 3/10/2010 | 1.0 | 13 | General | Funds flow memo review |
| Strauss | 3/10/2010 | 2.0 | 3 | Fee Applications / Monthly Invoice | Final Fee Application |
| Strauss | 3/10/2010 | 0.5 | 9 | Internal Meetings/Calls | Final Fee Application call |
| **TOTAL** | | **67.5** | | | |

## Detail of Hours Worked – Siegel

| Professional | Date | Hours | # | Category | Explanation |
|---|---|---|---|---|---|
| Siegel | 2/10/2010 | 0.5 | 13 | General | General emails |
| Siegel | 2/11/2010 | 0.5 | 9 | Internal Meetings/Calls | Discussion with Sponsor on cash/equity election |
| Siegel | 2/11/2010 | 1.0 | 6 | Financial Analysis/Modeling | Cash Flow / Liquidity review |
| Siegel | 2/12/2010 | 0.5 | 3 | Fee Applications / Monthly Invoice | Time sheet file |
| Siegel | 2/12/2010 | 1.0 | 8 | General Presentation Preparation | Presentation on final agreement |
| Siegel | 2/12/2010 | 0.5 | 14 | POR Analysis | Equity ownership calculation |
| Siegel | 2/16/2010 | 1.0 | 8 | General Presentation Preparation | Presentation on final agreement |
| Siegel | 2/17/2010 | 1.0 | 13 | General | Document organization / general emails |
| Siegel | 2/18/2010 | 2.0 | 9 | Internal Meetings/Calls | Group conference calls |
| Siegel | 2/18/2010 | 1.0 | 13 | General | Funding documentation |
| Siegel | 2/19/2010 | 1.0 | 10 | Bank Group - Calls/Meetings/Discussions | Call with Wells |
| Siegel | 2/22/2010 | 2.0 | 9 | Internal Meetings/Calls | Group conference calls |
| Siegel | 2/23/2010 | 1.5 | 9 | Internal Meetings/Calls | Weekly closing checklist group conference calls |
| Siegel | 2/23/2010 | 5.0 | 7 | Valuation | Valuation work |
| Siegel | 2/24/2010 | 12.0 | 7 | Valuation | Valuation work |
| Siegel | 2/25/2010 | 4.0 | 7 | Valuation | Valuation work |
| Siegel | 2/25/2010 | 2.0 | 13 | General | Funds flow memo |
| Siegel | 2/25/2010 | 2.5 | 9 | Internal Meetings/Calls | Weekly group conference call - general and closing exhibit group |
| Siegel | 2/28/2010 | 2.0 | 8 | General Presentation Preparation | Board presentation materials for Company |
| Siegel | 3/1/2010 | 3.0 | 9 | Internal Meetings/Calls | Funds flow memo call |
| Siegel | 3/1/2010 | 3.0 | 13 | General | Funds flow memo |
| Siegel | 3/2/2010 | 4.0 | 9 | Internal Meetings/Calls | Closing checklist group conference calls |
| Siegel | 3/2/2010 | 3.0 | 13 | General | Closing checklist document preparation |
| Siegel | 3/2/2010 | 3.0 | 13 | General | Funds flow memo preparation |
| Siegel | 3/3/2010 | 4.0 | 13 | General | Funds flow memo preparation |
| Siegel | 3/3/2010 | 4.0 | 9 | Internal Meetings/Calls | Closing checklist document calls |
| Siegel | 3/4/2010 | 1.5 | 9 | Internal Meetings/Calls | Closing checklist document call with Company |
| Siegel | 3/4/2010 | 1.0 | 9 | Internal Meetings/Calls | Weekly group conference call |
| Siegel | 3/4/2010 | 1.5 | 9 | Internal Meetings/Calls | Closing checklist group conference calls |
| Siegel | 3/4/2010 | 2.0 | 13 | General | Closing checklist document preparation |
| Siegel | 3/4/2010 | 3.0 | 13 | General | Funds flow memo preparation |
| Siegel | 3/8/2010 | 1.0 | 6 | Financial Analysis/Modeling | Advisor fee analysis call with Company |
| Siegel | 3/8/2010 | 4.0 | 13 | General | Funds flow memo preparation |
| Siegel | 3/8/2010 | 3.0 | 6 | Financial Analysis/Modeling | PF balance sheet and liquidity |
| Siegel | 3/8/2010 | 3.0 | 8 | General Presentation Preparation | Presentation to ratings agency |
| Siegel | 3/9/2010 | 4.0 | 13 | General | Funds flow memo preparation |
| Siegel | 3/9/2010 | 2.0 | 9 | Internal Meetings/Calls | Weekly group closing checklist calls |
| Siegel | 3/9/2010 | 4.0 | 6 | Financial Analysis/Modeling | Liquidity and fee analysis |
| Siegel | 3/9/2010 | 2.0 | 6 | Financial Analysis/Modeling | Closing exhibits analysis |
| Siegel | 3/10/2010 | 2.0 | 13 | General | Funds flow memo preparation |
| Siegel | 3/10/2010 | 2.0 | 3 | Fee Applications / Monthly Invoice | Final Fee Application |
| Siegel | 3/10/2010 | 0.5 | 9 | Internal Meetings/Calls | Final Fee Application call |
| **TOTAL** | | **99.0** | | | |

## Detail of Hours Worked – Piotrowicz

| Professional | Date | Hours | # | Category | Explanation |
|---|---|---|---|---|---|
| Piotrowicz | 2/10/2010 | 0.5 | 13 | General | Emails |
| Piotrowicz | 2/10/2010 | 1.0 | 13 | General | Fee app - log set up |
| Piotrowicz | 2/12/2010 | 1.0 | 8 | General Presentation Preparation | Presentation on final agreement |
| Piotrowicz | 2/12/2010 | 1.0 | 14 | POR Analysis | Equity ownership calculation |
| Piotrowicz | 2/17/2010 | 1.0 | 13 | General | Document organization / general emails |
| Piotrowicz | 2/18/2010 | 2.0 | 9 | Internal Meetings/Calls | Group conference calls |
| Piotrowicz | 2/19/2010 | 1.0 | 10 | Bank Group - Calls/Meetings/Discussions | Call with Wells |
| Piotrowicz | 2/22/2010 | 2.0 | 9 | Internal Meetings/Calls | Group conference calls |
| Piotrowicz | 2/23/2010 | 1.5 | 9 | Internal Meetings/Calls | Weekly closing checklist group conference calls |
| Piotrowicz | 2/23/2010 | 5.0 | 7 | Valuation | Valuation work |
| Piotrowicz | 2/24/2010 | 12.0 | 7 | Valuation | Valuation work |
| Piotrowicz | 3/2/2010 | 4.0 | 9 | Internal Meetings/Calls | Closing checklist group conference calls |
| Piotrowicz | 3/2/2010 | 3.0 | 13 | General | Closing checklist document preparation |
| Piotrowicz | 3/2/2010 | 2.0 | 13 | General | Funds flow memo preparation |
| Piotrowicz | 3/3/2010 | 5.0 | 7 | Valuation | Valuation work |
| Piotrowicz | 3/3/2010 | 3.0 | 13 | General | Funds flow memo preparation |
| Piotrowicz | 3/3/2010 | 4.0 | 9 | Internal Meetings/Calls | Closing checklist document calls |
| Piotrowicz | 3/4/2010 | 1.5 | 9 | Internal Meetings/Calls | Closing checklist document call |
| Piotrowicz | 3/4/2010 | 1.0 | 9 | Internal Meetings/Calls | Weekly group conference call |
| Piotrowicz | 3/4/2010 | 1.5 | 9 | Internal Meetings/Calls | Closing checklist group conference calls |
| Piotrowicz | 3/4/2010 | 2.0 | 13 | General | Closing checklist document preparation |
| Piotrowicz | 3/4/2010 | 3.0 | 13 | General | Funds flow memo preparation |
| Piotrowicz | 3/5/2010 | 2.0 | 9 | Internal Meetings/Calls | Funds flow memo discussions |
| Piotrowicz | 3/5/2010 | 4.0 | 13 | General | Funds flow memo preparation |
| Piotrowicz | 3/5/2010 | 1.0 | 1 | Case Administration | Document organization |
| Piotrowicz | 3/7/2010 | 3.5 | 13 | General | Funds flow memo preparation / fee application work |
| Piotrowicz | 3/8/2010 | 5.0 | 13 | General | Funds flow memo preparation |
| Piotrowicz | 3/8/2010 | 3.5 | 6 | Financial Analysis/Modeling | PF balance sheet and liquidity |
| Piotrowicz | 3/8/2010 | 2.5 | 8 | General Presentation Preparation | Presentation to ratings agency |
| Piotrowicz | 3/9/2010 | 4.0 | 13 | General | Funds flow memo preparation |
| Piotrowicz | 3/9/2010 | 2.0 | 9 | Internal Meetings/Calls | Weekly group closing checklist calls |
| Piotrowicz | 3/9/2010 | 4.0 | 6 | Financial Analysis/Modeling | Liquidity analysis |
| Piotrowicz | 3/9/2010 | 2.0 | 6 | Financial Analysis/Modeling | Closing exhibits analysis |
| Piotrowicz | 3/9/2010 | 1.0 | 13 | General | Fee analysis |
| Piotrowicz | 3/10/2010 | 2.0 | 13 | General | Funds flow memo preparation |
| Piotrowicz | 3/10/2010 | 2.0 | 3 | Fee Applications / Monthly Invoice | Final Fee Application |
| Piotrowicz | 3/10/2010 | 0.5 | 9 | Internal Meetings/Calls | Final Fee Application calls |
| **TOTAL** | | **97.0** | | | |

# **EXHIBIT D**

## **Schedule of Final Invoice and Expenses Incurred**

# Final Invoice

**Invoice:**   0310 NAA PBM1

**Date:**   11 March 2010

Penton Media, Inc.
249 West 17th Street
New York, New York 10011

**For the attention of:**   Jean B. Clifton
Chief Financial Officer

| | |
|---|---:|
| Monthly advisory fee: March 1, 2010 – March 9, 2010 | $ 58,064.51 |
| Transaction Fee: | 3,500,000.00 |
| Less fee credit: January 2010 | (200,000.00) |
| February 2010 | (200,000.00) |
| March 2010 | (58,064.51) |
| Net Transaction Fee: | $3,100,000.00 |
| Out-of-Pocket expenses actual: | 1,274.91 |
| Expense estimate: | 15,000.00 |
| Total expenses: | 16,274.91 |
| Less expense advancement balance: [1] | (13,141.86) |
| Outstanding expense balance | 3,133.05 |
| **Total due** | **$3,103,133.05** |

The disbursements and charges reflected on this statement are only those that have been booked at the end of this billing period. Disbursements and charges received and booked after the closing date of this statement will be billed subsequently.

Please transfer funds to:

| | | |
|---|---|---|
| JP Morgan Chase | Account Name: | Rothschild Inc. |
| 500 Stanton Christiana Road | Account Number: | 0 045 42 212 |
| Newark, DE 19713 | ABA: | 021000021 |

(1) Represents $25,000 expense deposit less $11,858.14 in pre-petition expenses incurred as of this date.

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Telephone: (212) 403-3500
Fax: (212) 403-3501

## Summary of Out-of-Pocket Expenses

| | |
|---|---|
| Miscellaneous | 64.61 |
| Word Processing | 776.23 |
| Copies | 370.20 |
| Research/Database | 50.00 |
| Courier Services | 13.87 |
| **Total** | 1,274.91 |

# Miscellaneous Expense Breakdown

| Date Incurred | Description | City | Cost | Method of Computation | Incurred By |
|---|---|---|---|---|---|
| Feb-10 | Presentation materials | New York, NY | $64.61 | Vendor | Various |
| **Total** | | | $64.61 | | |

## Word Processing Expense Breakdown

| Date Incurred | Description | City | Cost | Method of Computation | Incurred By |
|---|---|---|---|---|---|
| Feb-10 | Word processing charge | New York, NY | $776.23 | Vendor | Various |
| **Total** | | | $776.23 | | |

## Copy Expense Breakdown

| Date Incurred | Description | City | Cost | Method of Computation | Incurred By |
|---|---|---|---|---|---|
| Feb-10 | Black, white & color copies | New York, NY | $370.20 | $0.10/page for BW & $1.00/page for Color | Various |
| **Total** | | | $370.20 | | |

## Research/Database Expense Breakdown

| Date Incurred | Description | City | Cost | Method of Computation | Incurred By |
|---|---|---|---|---|---|
| 02/24/10 | Research material | New York, NY | $50.00 | Vendor | Various |
| **Total** | | | $50.00 | | |

## Courier Expense Breakdown

| Date Incurred | Description | City | Cost | Method of Computation | Incurred By |
|---|---|---|---|---|---|
| 02/22/10 | Federal Express | New York, NY | $13.87 | Vendor | R. Siegel |
| **Total** | | | $13.87 | | |

**EXHIBIT E**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :     Chapter 11
                                          :
Penton Business Media Holdings, Inc.,[9]  :     Case No. 10-10689 (AJG)
                                          :
                    Debtor                :
                                          :
-------------------------------------------------------------x
```

### ORDER GRANTING APPLICATION OF PROFESSIONALS FOR ALLOWANCE OF FINAL COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES

Upon consideration of the Application of Rothschild Inc., as financial advisor and investment banker to the debtor in the above captioned case (the "Debtor") for the period commencing February 10, 2010 through March 9, 2010, seeking allowance of final compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in connection therewith in the above-captioned chapter 11 case (the "Application"); and a hearing having been held before this Court to consider the Application on March 30, 2010; and notice having been given pursuant to Federal Rules of Bankruptcy Procedure 2002(a)(7) and (c)(2); and no objections having been received:

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     The Court has jurisdiction to consider the Application and the relief requested therein in accordance with sections 157 and 1334 of title 28 of the United States Code (the "Judicial Code").

B.     Notice of the Application was sufficient.

C.     This is a core proceeding pursuant to section 157(b)(2) of the Judicial Code.

---

[9]     The last four digits of Penton Business Media Holdings, Inc.'s taxpayer identification number are 9837.

D.        Venue for proceedings on the Application is proper pursuant to section 1409 of the Judicial Code.

E.        The compensation requested in the Application is reasonable.

F.        The reimbursement for expenses detailed in the Application represent reimbursements for actual and necessary expenses incurred by the professionals in connection with the case.

G.        The legal and factual bases set forth in the Application and at the hearing establish just cause for the relief granted herein.

IT IS HEREBY ORDERED THAT:

1.        The Application is GRANTED on a final basis.

2.        The Debtor is authorized to pay the applicants promptly the sums set forth in Schedule 1 under the column headings "Fees Awarded" and "Expenses Awarded" to the extent such amounts have not been paid previously.

Dated: New York, New York
        _____, 2010

_____
CHIEF UNITED STATES BANKRUPTCY JUDGE

CURRENT FEE PERIOD: February 10, 2010 through March 9, 2010 for the Applicant
CASE NUMBER: 10-10-689 (AJG)
CASE NAME:  Penton Business Media Holdings, Inc.

| APPLICANT | DATE/ DOCUMENT NO. OF APPLICATION | FEES REQUESTED | FEE REDUCTION | FEES AWARDED | EXPENSES REQUESTED | EXPENSE REDUCTION | EXPENSES AWARDED |
|---|---|---|---|---|---|---|---|
| Rothschild Inc. | 3/16/10 No. __ | $3,235,714.29 | -- | $3,235,714.29 | $16,274.91 | -- | $16,274.91 |

Initials: _____ USBC          Date: _____, 2010